**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| JUSTIN BLAKE | |
| Plaintiff, | Case No: 22 CV 970 |
| v. | |
| DAVID BETH in his individual capacity and official capacity, COUNTY OF KENOSHA a municipal corporation, KYLE BISSONNETTE in his individual and official capacity, JACOB DiCELLO in his individual and official capacity, GLORIA GALVAN in her individual and official capacity, DEREEMEYUN HAYNES in his individual and official capacity, JEREMY MAY in his individual and official capacity, JESSICA BERGMANN in her individual and official capacity, NAPHCAREJOHN DOE OFFICERS in the Kenosha County Sheriff's Department 1-10, WISCONSIN COUNTY MUTUAL INSURANCE COMPANY, ABC INSURANCE COMPANY, and XYZ Insurance Company, | JURY TRIAL DEMANDED |
| Defendants. | |

**SECOND AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys Kimberley Cy. Motley and Nathaniel Cade, Jr., respectfully allege for their Complaint and Jury Demand as follows:

**<u>INTRODUCTION</u>**

1.      Plaintiff was tortured, suffered severe pain, and unlawfully arrested at the hands of Defendants, whether directly or indirectly.

2.      Defendants' actions were deliberate and unreasonable.

3.	This case is the story of how failures in police accountability, failures in leadership, and a county steeped in racial inequities created the conditions which would lead to state sponsored torture against Justin Blake who stood up against these injustices by peacefully protesting for change.

## JURISDICTION AND VENUE

4.	This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) and (4) (civil rights jurisdiction), 28 U.S.C. §§2201, 2202 (declaratory judgment jurisdiction), and 28 U.S.C. §1367 (supplemental jurisdiction).

5.	This action also arises under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiff's' claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

6.	Plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a) over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

7.	Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. §1391(b)(1) and (2) because defendants (including entities) are therein located, and because the actions or omissions giving rise to the claims herein occurred in this judicial district.

## <u>THE PARTIES TO THIS COMPLAINT</u>

8.      Plaintiff Justin Blake is an adult citizen of the State of Illinois residing in Cook County.

9.      Defendant David Beth was the Sheriff during all the dates relevant to this complaint for the Kenosha Sheriff's Department ("KSD") located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, Beth is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant Beth was in charge of the Kenosha County Sheriffs' Department for Kenosha and in that capacity had final responsibility for the policies and procedures within the Kenosha County Detention Facility and the Kenosha County Pretrial Facility. Beth is named in his individual capacity and official capacity. At all times pertinent and material to this Complaint, Defendant Beth was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

10.     Defendant Kenosha County ("County") is a municipal entity in the State of Wisconsin and is located at 1010 56th Street, Kenosha, WI 53140. Kenosha County, through the Kenosha County Sheriff's Department ("KSD"), manages, oversees and operates the Kenosha County Jail ("Jail"), including the responsibility to provide medical care to prisoners and others in the custody of KSD. Further, the Department was responsible for the confinement, maintenance and medical care of all persons confined at the Jail. Kenosha County is responsible for the training, supervising and disciplining of all Jail employees, contracted employees and companies, and Department employees,

3

adopting, implementing and enforcing KSD Departmental procedures, policies and practices, and ensuring proper jail conditions and treatment of detainees comply with United States Constitution and other federal, state and local laws, as well as written jail policies and policies of KSD. Kenosha County is liable for the KSD policies, practices and customs that caused the harm alleged herein. Pursuant to Wis. Stat. § 895.46(1)(a), Kenosha County is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that that may be awarded against its officials, employees and agents.

11.     Defendant Kyle Bissonnette was an officer during all the dates relevant to this complaint for the Kenosha Sheriff's Department ("KSD") located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, Bissonnette is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant Bissonnette was an officer with the Kenosha County Sheriffs' Department for Kenosha.  At all times pertinent and material to this Complaint, Defendant Bissonette was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

12.     Defendant Jacob DiCello was an officer during all the dates relevant to this complaint for the Kenosha Sheriff's Department ("KSD") located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, DiCello is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant DiCello was working as an officer with the Kenosha County Sheriffs'

4

Department for Kenosha. At all times pertinent and material to this Complaint, Defendant DiCello was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

13. Defendant Gloria Galvan was an officer during all the dates relevant to this complaint for the Kenosha Sheriff's Department ("KSD") located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, Galvan is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant Galvan was working as an officer with the Kenosha County Sheriffs' Department for Kenosha. At all times pertinent and material to this Complaint, Defendant Galvan was acting within the scope of her employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

14. Defendant Jeremy May was an officer during all the dates relevant to this complaint for the Kenosha Sheriff's Department ("KSD") located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, May is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant May was working as an officer with the Kenosha County Sheriffs' Department for Kenosha. At all times pertinent and material to this Complaint, Defendant May was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

15. Defendant Dereemeyun Haynes during all the dates relevant to this complaint was an officer for the Kenosha Sheriff's Department ("KSD") located at 1000

55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, Haynes is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. Defendant Haynes was an officer with the rank of a Sergeant with the Kenosha County Sheriffs' Department for Kenosha. At all times pertinent and material to this Complaint, Defendant Haynes acting within the scope of his employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

16. Defendant Jessica Bergmann ("Bergmann") is a medical professional who was employed by NaphCare during all the dates relevant to this complaint and was working at the Kenosha Secure Detention Facility located at 1000 55th Street, Kenosha, WI 53140 in the County of Kenosha, State of Wisconsin, with a phone number of 262-605-5100. Upon information and belief, Bergmann is an adult citizen of the State of Wisconsin residing in Kenosha County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, Defendant Bergmann was acting within the scope of her employment and under color of the statutes, ordinances, customs, policies, and usages of the State of Wisconsin.

17. NaphCare is contracted by Kenosha County to provide healthcare services to persons in custody at the Kenosha Secure Detention Facility whose corporate offices are located at 2090 Columbiana Road, Suite 4000; Birmingham, AL 35216 with a phone number of (205)536-8400. NaphCare is a partner with the Kenosha County Sheriff's Department ("KSD"), that helps to manage and provide medical care to prisoners and others in the custody of KSD. Further, KSD was responsible for the confinement, maintenance and medical care of all persons confined at the Jail and NaphCare helped

6

to provide medical assistance. Kenosha County is responsible for the training, supervising and disciplining of all Jail employees, contractors, and Department employees, adopting, implementing and enforcing KSD Departmental procedures, policies and practices, and ensuring proper jail conditions and treatment of detainees comply with United States Constitution and other federal, state and local laws, as well as written jail policies and policies of KSD. Kenosha County is liable for the KSD policies, practices and customs that caused the harm alleged herein. Pursuant to Wis. Stat. § 895.46(1)(a), Kenosha County is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that that may be awarded against its officials, employees and agents.

18.     John Does 1-10 are individual law enforcement officers and employees of the County of Kenosha who enabled, supported and/or effectuated Mr. Blake's arrest, caused bodily harm, illegally restrained him and/or charged him in this case. Their identities are currently unknown to Plaintiff's but are known to Defendant County of Kenosha. They are each public employees of Kenosha County who were operating under the color of state law. When their identities are determined, this Complaint will be amended to name each individual officer to the extent that they violated the rights contemplated or identified in this suit.

19.     Defendant Wisconsin County Mutual Insurance Company ("Wisconsin County Mutual") is a domestic insurance corporation authorized and licensed to do business in the State of Wisconsin for purposes of issuing insurance coverage policies, using David Bisek of Aegis Corporation as its registered agent, doing business at offices located at 18550 West Capitol Drive, Brookfield, Wisconsin 53045. Upon information and

7

belief, Wisconsin County Mutual issued a policy of liability insurance to County, Beth and John Does 1-10, and all their employees and/or agents thereof. By the terms of said policy, Wisconsin County Mutual agreed to pay any and all sums for which County, Beth, John Does 1-10 and/or their agents and employees might be held legally liable for injuries or damages caused by County, Beth, John Does 1-10 and/or their employees and agents. Upon information and belief, said Wisconsin County Mutual insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, Wisconsin County Mutual is a proper party to this action.

20.     Defendant ABC Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, prior to and including all relevant times herein, ABC issued a policy of liability insurance to Kenosha County and all its employees and/or agents thereof. By the terms of said policy, ABC agreed to pay any and all sums for which Kenosha County and/or its agents and employees might be held legally liable for injuries or damages caused by Kenosha County and/or its employees and agents. Upon information and belief, said ABC insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, ABC is a proper party to this action.

21.     Defendant XYZ Insurance Company, upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, prior to and including all relevant times

herein, XYZ issued a policy of liability insurance to Defendants Bergmann or NaphCare and all its employees and/or agents thereof. By the terms of said policy, XYZ agreed to pay any and all sums for which Defendants Bergmann or NaphCare and/or its agents and employees might be held legally liable for injuries or damages caused by Kenosha County and/or its employees and agents. Upon information and belief, said XYZ insurance policy was in full force and effect during all time periods relevant here. Pursuant to Wis. Stat. § 803.04, XYZ is a proper party to this action.

## FACTS

22.     At all material times identified in this Complaint, each of the defendants acted under color of law.

23.     Plaintiff, Justin Blake is the uncle of Jacob Blake.

24.     On August 23, 2020 Jacob Blake was shot seven times, four of which were in his back, by Police Officer Rusten Shensky of the City of Kenosha Police Department.

25.     As a result of the near fatal shots to Jacob Blake, he is now paralyzed and will be under medical care for the rest of his life.

26.     After the Jacob Blake shooting, the City of Kenosha saw numerous days of protests.

27.     Although the protests from August 23, 2020 onwards were overwhelmingly peaceful, the Kenosha Police Department ("KPD"), Kenosha Sheriffs' Department ("KSD") and other officers often used violent crowd control tactics against peaceful protestors.

28.     On April 25, 2021, Justin Blake was silently peacefully protesting the shooting of his nephew, Jacob Blake in the City of Kenosha.

9

29.     As part of this protest, Justin Blake was not talking nor disturbing the public but was protesting with his silence outside of the Public Safety Building in the City of Kenosha.

30.     At around 10:00 P.M. Mr. Blake, along with two others, were arrested by KSD officers during his silent protest for disorderly conduct and obstructing/resisting an officer.

31.     Defendant John Doe officers knew who Mr. Blake was and they also knew that he is the uncle of Jacob Blake when they arrested him.

32.     Mr. Blake was not disorderly before, during, or after his arrest.

33.     Mr. Blake did not obstruct any officers before, during, or after his arrest.

34.     Mr. Blake did not resist any officers before, during, or after his arrest.

35.     Mr. Blake was given his Miranda warnings at the time of his arrest.

36.     When the KSD officers could not force Mr. Blake to speak or answer any questions, another John Doe officer said, "Put him in the damn chair!"

37.     Because Mr. Blake exercised his right to remain silent, as he was advised when given his Miranda warnings, he was punished and forced into an Emergency Restraint Chair ("ERC") by no less than eight KSD Officers and at least one Health Unit Services worker, which some of whom either put him in the ERC and others who stood idly by and watched Mr. Blake tightly strapped to the ERC by his chest, arms, and legs for ultimately almost seven hours.

38.     Defendant Jeremy May was the on-duty shift supervisor when Mr. Blake was put in the ERC at the Kenosha Detention Facility.

Case 2:22-cv-00970-PP   Filed 02/15/23   Page 10 of 31   Document 20

39. Mr. Blake was put in the ERC as punishment for exercising his right to remain silent.

40. Mr. Blake was cooperative while sitting on the ERC and was placed there by Defendants Hayes, DiCello, Galvan, and May without incident.

41. Mr. Blake was cooperative while sitting on the ERC, he was immobile, and restraints were tightly tied to his legs, arms, and he had a horse like collar strap that went over his head and over his chest, secured by Defendants Bergmann, Hayes, DiCello, Galvan, Bergmann, and May, while four John Doe officers looked on or observed, but took no action, without incident.

42. The KSD officers knew who Mr. Blake was when they arrested him

43. The KSD officers knew who Mr. Blake was when they continued to detain him.

44. The KSD officers knew who Mr. Blake was when they put him in the ERC.

45. Mr. Blake was put in the chair as retaliation simply because he exercised his Fifth Amendment right to remain silent.

46. Mr. Blake was never a danger to himself or others while he was in the custody of the Defendant officers.

47. There were no medical, emergency, or safety reasons that justified restraining Mr. Blake to the ERC.

48. The Emergency Restraint Chair is meant to be used only to control a person who is physically resisting officers, trying to escape, or preventing injury to themselves or others.

49.     Mr. Blake never physically resisted officers, he never tried to escape, and he never tried to injure himself or others.

50.     Mr. Blake exercised his right to remain silent and was cooperative throughout the entire duration of his arrest.

51.     Mr. Blake should have never been arrested for exercising his First Amendment right by participating in a silent protest for the shooting of his nephew.

52.     It was unreasonable and unlawful for Mr. Blake to be put in the restraint chair at all.

53.     It was unreasonable and unlawful for Mr. Blake to be put in the restraint chair, strapped in for nearly seven hours.

54.     The excessive force by Defendants John Doe Officers against Mr. Blake by placing him in the ERC for nearly seven hours was objectively unreasonable in light of the facts and circumstances confronting them.

55.     Mr. Blake was put in the chair because Defendant officers and John Doe officers were punishing him for exercising his right to remain silent.

56.     As a result of the excessive force deployed by Defendant John Doe Officers, Defendant Officers and Defendant Bergmann Mr. Blake suffered permanent damage and substantial injuries throughout his body including to his neck, back, and shoulders.

### CLAIMS FOR RELIEF

#### FIRST CLAIM FOR RELIEF
#### 42 U.S.C. § 1983 - First Amendment Violation
#### (Against Defendant Beth and Kenosha County)

57.     Plaintiff's incorporate by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

12

58.     The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971).

59.     Organized political protest is a form of "classically political speech*." Boos v. Barry*, 485 U.S. 312, 318 (1988).

60.     "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014).

61.     The U.S. Supreme Court has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder because of "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *McCutcheon*, 572 U.S. at 203.

62.     Indeed, "it has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).

63.     Defendant Beth is the Sheriff and chief policymaker for the Kenosha County Sheriffs' Department.

64.     As the final policymaker, Beth knew that persons like Mr. Blake were protesting against the shooting of his nephew, Jacob Blake, and that people were protesting for accountability against violent police practices.

65.     Mr. Blake and others were engaged in a peaceful protest that did not infringe on any governmental interests.

66.     The arrest and citation of Plaintiff is a content-based or viewpoint-based restriction on speech, or both.

67.     Plaintiffs' arrest was a denial of his right to free speech guaranteed by the First Amendment to the Constitution of the United States.

68.     By arresting Plaintiff, Defendants prevented Plaintiff from engaging in a protest that was a matter of public concern.

69.     By charging, investigating, and prosecuting Plaintiff for his constitutionally protected expressive activity, Defendants have chilled Plaintiff from exercising his First Amendment right.

70.     The actions of Defendants occurred while each was acting under color of State law.

71.     Defendants' actions caused, directly and proximately, Plaintiff to suffer damages.

<u>**SECOND CLAIM FOR RELIEF**</u>
**42 U.S.C. § 1983 - First Amendment Retaliation**
**(Against Defendants Bissonnette, DiCello, Galvan, Hayes,**
**May, and John Doe Officers)**

72.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

73.     Plaintiff was engaged in political speech protected by the First Amendment when he was peacefully protesting on April 25, 2021.

74.     Plaintiff Justin Blake was forced into the Emergency Chair Restraint for nearly seven hours by Defendants May, DiCello, Galvan, Haynes and John Doe Officers. These actions were taken to in retaliation for his silent speech protesting police violence on April 25, 2021.

14

75.    Mr. Blake was subjected to excessive force by Defendant Officers May, DiCello, Galvan, Haynes and John Doe Officers on the basis of his political expression.

76.    Mr. Blake was in a traditional public forum engaging in classic political speech at the time that Defendant officers used such excessive force.

77.    Mr. Blake was not engaged in any violent, destructive, criminal, or other behavior which would warrant the use of such force.

78.    Such force was instead used for the specific purpose of denying Mr. Blake the opportunity to engage in political protest.

79.    Use of force would chill a person of ordinary firmness from engaging in future expressive activity.

80.    The content of Plaintiff's' speech and protest was the motivating factor for individual Defendant officers' decision to retaliate by use of force.

81.    Defendant Bissonnette and other John Doe officers issued disorderly conduct and obstruction/resisting an officer charges against Mr. Blake for his participation in a silent political protest. Blake's protest was the motivating factor for Defendant Bissonette, and other John Doe officers' decision to retaliate against him by charging him.

82.    Being subjected to a criminal citation would chill a person of ordinary firmness from engaging in future expressive activity.

83.    The content of Plaintiff's' speech and protest was the motivating factor for Defendant Bissonnette's decision to retaliate by issuing a citation.

84.    The content of Mr. Blakes's speech and protest was the motivating factor for Defendant Bissonnette's decision to retaliate by issuing a citation.

85.    Defendants Bissonnette May, DiCello, Galvan, Haynes and John Doe Officers engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

86.    At all times relevant to this Complaint, Defendants Bissonette, May, DiCello, Galvan, Haynes and John Doe officers were acting under color of state law.

87.    Defendants Bissonnette, May, DiCello, Galvan, Haynes and John Doe officers' actions caused Plaintiff to suffer damages.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. 1983 - Deliberate Indifference
### (Against Defendant Beth)

88.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

89.    Upon information and belief, by the morning of April 26, 2021, Defendant Beth had knowledge that the officers of the KSD were engaged in an effort to silence the voices of those who protested police violence in Kenosha.

90.    On April 25-26, 2021, Justin Blake was subjected to excessive force, which was covered extensively in the news media and Defendant Beth knew he had been harmed by officers.

91.    As Defendant Beth was aware, that KSD officers were using excessive force and were retaliating against Mr. Blake on the basis of his viewpoints and did nothing to stop it.

92.    As Sheriff, Defendant Beth had an obligation to address these constitutional violations and he did not address them.

16

93.     Defendant Kenosha County had an obligation to address these constitutional violations and did not address them.

94.     Defendant Beth was deliberately indifferent to the needs of Mr. Blake and the actions of Defendant occurred while acting under color of State law.

95.     Defendant's actions caused, directly and proximately, Plaintiff's to suffer damages.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 - First Amendment Violation (Excessive Force & Arrest)
### (Against Defendants May, DiCello, Galvan, Haynes,
### and John Doe Officers)

96.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

97.     Plaintiff was engaged in political speech protected by the First Amendment.

98.     Plaintiff Justin Blake was engaged in a nonviolent, peaceful, silent protest when he was forced into the Emergency Restraint Chair with his arms, legs, and body strapped in by Defendants May, DiCello, Galvan, Haynes, Bergmann, and John Doe Officers.

99.     These actions were taken to stop him from protesting police violence.

100.    The arrest and charging of Plaintiff was a content-based or viewpoint-based restriction on speech, or both.

101.    Plaintiff's' arrest was a denial of his right to free speech guaranteed by the First Amendment to the Constitution of the United States.

102.    By arresting Plaintiff, Defendants prevented Plaintiff from silently protesting a matter of public concern.

103.    Plaintiff was subjected to excessive force by Defendant Officers May, DiCello, Galvan, Haynes, and John Doe Defendants on the basis of his political expression.

104.    Plaintiff was not engaged in any violent, destructive, criminal, or other behavior which would warrant the use of such force.

105.    In fact, Plaintiff was engaged in the most peaceful form of protest through his silence.

106.    Such force was instead used for the specific purpose of denying Plaintiff the opportunity to engage in political protest.

107.    By charging, investigating, assaulting, and prosecuting Mr. Blake for his constitutionally protected expressive activity, Defendants have chilled Plaintiff from exercising his First Amendment rights.

108.    Defendant Beth, as head Sheriff for county of Kenosha, is the chief policymaker for the Kenosha County Sheriff's Department.

109.    The Kenosha Secure Detention Facility, where Mr. Blake was taken and detained on April 25 & 26, 2021 is under the jurisdiction of the Kenosha County Sheriff's Department.

110.    The actions of Defendant officers occurred while each was acting under color of State law.

111.    Defendants' actions caused, directly and proximately, Plaintiff to suffer damages.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 - Excessive Force (4th and 14th Amendments)**
**(Against Defendant Bergmann, Defendant Officers and John Doe Officers)**

18

112.    Plaintiff realleges and incorporates here all paragraphs of this Complaint as though fully set forth.

113.    At all relevant times herein, the above-named John Doe Officers were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Plaintiff of his constitutional rights.

114.    Between April 25, 2021 and April 26, 2021 Defendant Officers May, DiCello, Galvan, Haynes, Bergmann, and John Doe Officers used unnecessary excessive force, that was unjustified and objectively unreasonable in light of the facts and circumstances confronting them against Mr. Blake.

115.    Mr. Blake did not pose an immediate threat to the safety any of the officers or others.

116.    Defendant Officers May, DiCello, Galvan, Haynes and John Doe officers used objectively unreasonable excessive force against Mr. Blake between April 25, 2021 and April 26, 2021 and he was ultimately arrested for disorderly conduct and obstructing/resisting an officer.

117.    Defendant Bergmann and Defendant Officers May, DiCello, Galvan, Haynes and John Doe Officers actions of tying Mr. Blakes arms, legs, and body to the Emergency Restraint Chair and forcing him to sit in it for nearly seven hours was excessive force, unjustified, and objectively unreasonable in light of the facts and circumstances confronting them.

118.    While acting under color of state law, law enforcement deprived Plaintiff of his Fourth Amendment right for which Plaintiff's is entitled to damages proximately caused thereby.

19

119.    Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Kenosha County.

120.    At all times relevant to this Complaint, Defendants were acting under color of state law.

121.    Defendants' actions violated the 4th and 14th Amendments, as Blake, at all material times, was a detainee, and not a prisoner.

122.    Defendants' actions caused Plaintiff's to suffer damages.

<div align="center">

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Cruel and Unusual Punishment (8th and 14th Amendment )**
**(Against Defendants Bergmann, May, DiCello, Galvan,**
**Haynes and John Doe Officers)**

</div>

123.    Plaintiff realleges and incorporates here all paragraphs of this Complaint as though fully set forth.

124.    Defendant Bergmann, and Defendant Officers May, DiCello, Galvan, Haynes and John Doe Officers actions of tying Mr. Blakes' hands, legs, and chest to the Emergency Restraint Chair and forcing him to sit in it for nearly seven hours constitutes cruel and unusual punishment.

125.    Defendants Bergmann, May, DiCello, Galvan, Haynes and John Doe Officers had a duty of care to Mr. Blake while in custody, and by forcing him into the ERC, they caused unnecessary and wanton infliction of pain.

126.    While acting under color of state law, Defendants tortured Mr. Blake for which Plaintiff's is entitled to damages proximately caused thereby.

127. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to those detained in Kenosha.

128. At all times relevant to this Complaint, Defendants were acting under color of state law.

129. Defendants' actions caused Plaintiff's to suffer damages.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Failure to Intervene (8th and 14th Amendment)**
**(Against Defendants Bergmann, Bissonnette, DiCello, Galvan,**
**Hayes, May, John Doe Officers and Beth)**

</div>

130. Plaintiff realleges and incorporates here all paragraphs of this Complaint as though fully set forth.

131. Defendants Bergmann, Bissonnette, May, DiCello, Galvan, Haynes and John Doe Officers witnessed officers use excessive force against Mr. Blake.

132. Defendant Beth knew that officers were using excessive force against Mr. Blake by placing him in the Emergency Restraint Chair.

133. Defendant John Doe officers knew that officers were using excessive force against Mr. Bake by placing him in the Emergency Restraint Chair.

134. Defendant officers, Bergmann, John Doe officers, and Beth had a realistic opportunity to do something to prevent harm against Mr. Blake.

135. Defendants were aware that there was a strong likelihood that Mr. Blake would be harmed as a result of being placed in the ERC for nearly seven hours.

136. Defendant officers failed to take reasonable steps to prevent harm from occurring.

<div align="center">

21

</div>

137. Defendant officers, Beth, and John Doe officers failed to take reasonable steps to prevent harm from occurring and was acting under the color of state law when his failure caused harm to Mr. Blake.

138. Defendant officers, Beth, and John Doe officers were acting under the color of state law and their failure to act caused harm to Mr. Blake.

139. Defendant officers, Beth, and John Doe officers failure to act caused irreparable damage to Plaintiff for which Plaintiff's is entitled to damages proximately caused thereby.

140. Defendant Beth's failure to act caused irreparable damage to Plaintiff for which Plaintiff's is entitled to damages proximately caused thereby.

141. Defendant officers and John Doe officers failure to act caused irreparable damage to Plaintiff for which Plaintiff's is entitled to damages proximately caused thereby.

142. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to those detained in Kenosha.

143. At all times relevant to this Complaint, Defendants were acting under color of state law.

144. Defendants' actions caused Plaintiff's to suffer damages.

### EIGHTH CLAIM FOR RELIEF
**Excessive Detention (Less than 48 hours)**
**(Against Defendant John Doe Officers)**

145. Plaintiff realleges and incorporates here all paragraphs of this Complaint as though fully set forth.

146. Blake was arrested without an arrest warrant.

22

147. Defendant John Doe Officers delayed or caused to be delayed the release of Blake.

148. The delay was unreasonable. Defendant John Doe Officers were aware who Blake was, and there is no basis for a delay exceeding seven hours for him to be held in custody.

149. At all times relevant to this Complaint, Defendants were acting under color of state law.

150. Defendants' actions caused Plaintiff's to suffer damages.

**NINTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Officer Bergmann, Bissonnette, DiCello, Galvan,**
**Haynes, May, and John Doe Officers)**

151. Plaintiff's realleges and incorporate here all paragraphs of this Complaint as though fully set forth.

152. The above-listed Defendants intentionally aided and abetted in forcing and keeping Mr. Blake in the ERC for nearly seven hours with the intention of humiliating and punishing him for his "refusal" to answer questions and invoking his right to remain silent.

153. The above-listed Defendants' conduct caused Mr. Blake severe emotional distress.

154. The Defendants' conduct was not medically reasonable or necessary.

155. Defendants deprived Plaintiff of his Fourth Amendment right for which Plaintiff's is entitled to damages proximately caused thereby.

156. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Kenosha County.

23

157. At all times relevant to this Complaint, Defendants were acting under color of state law.

158. Defendants' actions caused Plaintiff's to suffer damages.

**TENTH CLAIM FOR RELIEF**
**State Law Indemnification**
**(Against Kenosha County)**

159. Plaintiff's realleges and incorporate here all paragraphs of this Complaint as though fully set forth

160. Pursuant to Wis. Stat. § 895.46, Defendant Kenosha County is obligated to pay any tort judgment for damages for which its employees are liable for acts occurring within the scope of their employment.

161. At all times material hereto, Defendants Kenosha County, Beth and John Does 1-10, as alleged herein, committed the acts under color of law and within the scope of their employment with Defendant Kenosha County.

**ELEVENTH CLAIM FOR RELIEF**
**Direct Action Statute – Wis. Stat. § 632.24**
**(Against Defendant Insurance Companies)**

162. Plaintiff's realleges and incorporate here all paragraphs of this Complaint as though fully set forth

163. At all material times and upon information and belief, all non-insurance defendants had in full force and effect one or more policies of insurance that provided coverage to each of them, insuring them against liability for their negligence and the negligence of their agents and employees, and agreeing to pay any and all amounts that Defendants and their agents and employees may become legally obliged to pay for the aforementioned damages.

164.    Pursuant to Wis. Stat. §803.04, Defendants Wisconsin County Mutual, ABC and XYZ are proper parties to this action.  Pursuant to Wisconsin's Direct-Action Statute, Wis. Stat. §632.24, Blake is allowed to maintain this lawsuit directly against Defendants Wisconsin County Mutual, ABC and XYZ.

<div align="center">

**TWELVTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING, TRAINING, AND SUPERVISION**
**(Against NaphCare and Kenosha County)**

</div>

165.    Plaintiff realleges and incorporates by reference the above paragraphs as if it were fully set forth herein.

166.    NaphCare hired Jessica Bergmann. At all material times, Bergman was an employee of NaphCare.

167.    Kenosha County hired NaphCare to perform its Health care services for the persons detained , jailed, or incarcerated by Kenosha County law enforcement officers.

168.    Kenosha County and NaphCare knew or reasonably should have known of Bergmann's propensity to approve the actions of law enforcement officers even if they go against the medical protocols of the facility and the medical interests of the Plaintiff.

169.    Despite this knowledge, NaphCare allowed Bergmann to have access to Plaintiff without direct supervision, oversight, and/or monitoring during the course of her employment with NaphCare while she was working at the Kenosha Secure Detention Facility.

170.    Given Bergmann's propensity to approve the actions of law enforcement officers even if they go against medical policies and the medical interests of Plaintiff,

Kenosha County and NaphCare had a duty to protect Plaintiff and to otherwise ensure his safety while at the Kenosha Secure Detention Facility.

171.    NaphCare and Kenosha County breached their duty of care to Plaintiff.

172.    But for the failure of Kenosha County and NaphCare to properly hire, train, and supervise Bergmann, Plaintiff would not have suffered injury, great conscious pain and suffering, emotional distress, and other forms of damages.

173.    As a result of the failure on the part of the agents, servants, and employees of Kenosha County and NaphCare to provide the necessary training, supervision, and hiring of Bergmann, Plaintiff has sustained damages in an amount to be determined at trial.

## THIRTEENTH CLAIM – RESPONDEAT SUPERIOR
## AGAINST NAPHCARE

174.    Plaintiff realleges and incorporates by reference the above paragraphs as if it were fully set forth herein.

175.    NaphCare is liable for the actions of Bergmann under a theory of respondeat superior.

176.    At all material times, Bergmann was an employee of NaphCare.

177.    At all material times, Bergmann was acting within the scope of her employment and authority as a Health Services Worker at the Kenosha Secure Detention Facility where Plaintiff was detained .

178.    At all material times, Bergmann, while acting as a Health Services Worker, also was guided by her desire to benefit her employer by providing medical assistance to Plaintiff in her job duties.

179. At all material times, NaphCare ,whether individually or collectively, had the ability to stop Bergmann from providing or not providing medical care to the Plaintiff.

180. In fact, NaphCare was aware that Bergmann failed to protect Plaintiff.

181. Under respondeat superior, NaphCare is strictly and/or vicariously liable for Bergmann's Bergmann failure to provide medical care and contribute to the excessive force imposed upon Plaintiff while detained at the Kenosha Secure Detention Facility.

182. Under respondeat superior, NaphCare is strictly and/or vicariously liable for Bergmann's violation Failure to Intervene, Infliction of Emotional Distress, and other violations upon Plaintiff while at the Kenosha Secure Detention Facility.

### FOURTEENTH CLAIM FOR RELIEF
### MONELL CLAIM (Against Kenosha County)

183. Plaintiff realleges and incorporates by reference the allegations in the

preceding paragraphs.

184. The acts of Defendants Bissonnette, DiCello, Galvan, Haynes, May, and John Doe Officers, including arresting and torturing Mr. Blake without any justification or reasonable suspicion, was done in accordance with the Kenosha County Sheriff's department de-facto policy, regulation, decision or custom condoning excessive force, failure to adequately discipline and failure to properly train John Doe Officers for such violations. That these respective de-facto policies were officially adopted, expressly or implicitly, or promulgated or practiced or ratified by Kenosha County, through its Sheriff's department, and as such constitute a de-facto governmental custom in such department, even though such custom may not have received written formal approval by the County,

27

and even though such de-facto policies are inconsistent with or even violate KSD's written policies.

185.    This official or de facto policy or custom of utilizing excessive force, and/or violating person's equal protection all in malicious or reckless disregard or with deliberate indifference to Mr. Blake's Fourth and Fourteenth Amendment Rights by, among others, the Defendant Beth's failure to adequately discipline Defendant officers and John Doe officers for their unlawful conduct and for Defendant Beth's failure to adequately supervise Defendant officers and John Doe Officers.

186.    That this official or de-facto policy and custom of utilizing excessive force and/or violating person's equal protection rights arose and/or was allowed to continue as a result of, among others, KSD's failure to adequately supervise, discipline, and/or train its employees namely Defendant officers and John Doe Officers. Upon information and belief, the individual Defendant officers had used excessive force resulting in injury to Mr. Blake.

187.    That the described conduct on the part of all the Defendant's was a cause of the plaintiff's injuries, losses and damages as set forth herein.

188.    The misconduct described in this count was objectively unreasonable and was undertaken intentionally with malice and knowing disregard for Plaintiffs constitutional rights.

189.    That the Defendant's conduct constituted a violation of the Fourteenth Amendment and/or Plaintiffs' equal protection rights guaranteed by that same Amendment.

190.    While acting under color of law, Defendant deprived Plaintiffs of their Fourteenth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby.

191.    Unless restrained by this Court, a real and immediate threat exists that the Fourteenth Amendment rights of the Plaintiffs' will be violated by KSD officers in the future and that Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the Plaintiff.

**WHEREFORE**, Plaintiff's respectfully pray that judgment be entered against Defendants, jointly and severally, and request that the Court award the following relief:

1.      An injunction barring the Kenosha County Sheriff's Department and the Kenosha County Detention Facility from using the Emergency Restraint Chair in any manner.

2.      An order finding that the Defendant's actions were unlawful and illegally;

3.      An order finding the actions of Defendants were unconstitutional;

4.      A declaration that Defendants' conduct violated the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution;

5.      An order requiring immediate cessation of law enforcement use of the restraint chair;

6.      An order that Defendants permanently delete any arrest records, booking photos, arrest information, fingerprint cards, and any and all data that they have regarding Plaintiff;

29

7.      Require Defendants to pay pre-judgment interest and post judgment interest;

8.      Damages compensating Plaintiff's for his injuries, including but not limited to compensatory, pecuniary, punitive and medical expense damages;

9.      An award of prejudgment interest;

10.     Grant any other relief that this Court determines is appropriate pursuant to 18 U.S.C. § 2724(4) and grant any other relief to which Plaintiff is entitled pursuant to Rule 54(c) of the Federal Rules of Civil Procedure;

11.     Award reasonable and actual attorney's fees and other litigation costs pursuant to 18 U.S.C. §2724(b)(3) and 42 U.S.C. §1988; and

12.     All other relief the Court deems just.

Respectfully submitted this 15th   day of February, 2023.

<div style="margin-left:40%">

**MOTLEY LEGAL SERVICES**

By:  *s/Kimberley Motley*
      Kimberley Motley, SBN: 1047193
      P.O. Box 1433
      Matthews, North Carolina 28106
      (704) 763-5413 (phone)
      (704) 582-6229 (fax)
      kmotley@motleylegal.com

**CADE LAW GROUP LLC**

By: *s/Nathaniel Cade, Jr.*
      Nathaniel Cade, Jr. SBN: 1028115
      Antonique C. Williams, SBN: 1051850
      Annalisa Pusick SBN: 1116379
      P.O. Box 170887
      Milwaukee, WI 53217
      (414) 255-3802 (phone)
      (414) 255-3804 (fax)
      nate@cade-law.com

</div>

30

annalisa@cade-law.com
antonique@cade-law.com


Attorneys for Plaintiffs


**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE**.