UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JUSTIN BLAKE,<br><br>      Plaintiff,<br>v.<br><br>DAVID BETH, et al.,<br><br>      Defendants. | Case No: 22-cv-0970 |
| **PLAINTIFF'S PROPOSED FINDINGS OF FACT DEFENDANTS' VNCC AND JESSICA BERGMANN** | |

    1.    On April 25, 2021 Justin Blake was peacefully protesting outside the Kenosha Public Safety Building (hereinafter "KPSB"). ECF 73-10.

    2.    Mr. Blake was arrested by Defendant Kyle Bissonnette the Officers became aware that Mr. Blake continued with his silent protest while in custody. ECF 73-7 at 15:22.

    3.    It was Nurse Bergmann's "domain" to check if the restraints were causing Mr. Blake harm and it was also her duty according to make sure he was taken out of the chair every two hours. ECF 74-16, at 73:9-15.

    4.    VNCC Contract requires that all of its employees, including Ms. Bergmann, was required to "comply with all rules and general regulations" of the Kenosha County Sheriff's Department. ECF 74-20, at 2.

    5.    According to the Kenosha County Sherriff's Department Use of Force Policy 300 it states that, "Any deputy present and observing another law enforcement officer or a member using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of

unreasonable force." See Kimberley Motley Declaration, (hereinafter "Motley Decl.) at **Exhibit 1** at 2.

6. According to the Kenosha County Sherriff's Department Use of Force Policy 300 it states that, "Any deputy who observes another law enforcement officer or a member use force that is potentially beyond that which is objectively reasonable under the circumstances should report these observations to a supervisor as soon as feasible." Motley Decl., **Exhibit 1** at 2.

7. According to the ERC Training Manual and on the chair itself it states that, an inmate is NOT to be in the chair for more than two hours as misuse of the chair without reading and thoroughly understanding the instructions may result in injury or death. Motley Decl., **Exhibit 2**, at 1 and Ex. 10.

8. Nurse Bergmann was required to be trained in the use of the ERC which she was not. Motley Decl., at Ex. 2, at 1.

9. Ms. Scott testified on behalf of VNCC, Bergmann should have been trained by Kenosha County on use of the ERC but VNCC never verified that Bergmann was trained. ECF 74-15, at 6:1, 13-16 and 23:16-21.

10. Despite being arrested for obstruction allegations, Kenosha County Officers never actually charged Mr. Blake with the civil or criminal violation of obstruction. Motley Decl. Kenosha Civil Court Case No. 2021 FO 000463 Wisconsin Circuit Court Access document at **Exhibit 3,** ECF 80-14 at 1.

11. On March 10, 2025, Mr. Blake was found *not guilty* of the civil violation of disorderly conduct by a jury. Motley Decl." at **Exhibit 4**.

12. According to VNCC, Bergmann had a duty of care to her patient, Mr. Blake, and has an obligation to report any harm to him. ECF 64:24-65:4

13. Defendants are aware that since Mr. Blake was in the custody of the Kenosha County Sheriffs Department, Defendant Officers had an obligation to address any medical or mental health concerns that they had regarding Blake pursuant to its Suicide Watch Procedure 413. Motley Decl., **Exhibit 5 at 1**.

14. At all times relevant, Kenosha County contracted with VNCC to provide medical and healthcare services for persons in custody at the Kenosha Secure Detention Facility. ECF 74-20, 74-21.

15. Mr. Blake had to pay a $450 bond total. Blake paid $150 for the disorderly conduct allegation and $300 for the obstruction allegation which he was never charged with, to be released from jail while Mr. Jonathan Cardinelli and Joseph Barker who were also arrested, both had to pay a $150 bond to be released from jail. ECF 80-27, Motley Decl. **Exhibits 6 and 7, ECF 80-27**.

16. Sgt. Ken Krentz at 10:20p.m. sent an email to Defendant Officers, almost an hour prior to Blake being placed in the ERC, informing them that "3 subjects were taken into custody, including Justin Blake, Joe Cardinali, and Jonathan Barker. All 3 were taken without incident." ECF. 73-10.

17. Jeremy May does not recall if Nurse Bergmann tried to conduct a medical assessment of Blake. ECF 73-8, at 114:6-10

18. Also, according to the ERC training and as displayed in a brightly fluorescent sticker on the chair, it states that persons are not supposed to be "in this

3
Case 2:22-cv-00970-PP    Filed 04/15/25    Page 3 of 10    Document 95

(ERC) chair for more than TWO hours." Motley Decl., at **Exhibits 2 and 8**; ECF 80-20, at 2.



19. Due to the overwhelming "extreme pain for a prolonged amount of time," that Mr. Blake was in during his silent protect in the ERC he said his name and was released from the ERC. ECF 73-7, at 96:13-14; 98:1-7

20. Linda Scott testified that Defendant Bergmann also had a "professional duty" (as a nurse) "to do no harm," to her patient, Mr. Blake. ECF 74-16, at 64:24-65:1.

21. According to VNCC, Bergmann had a duty of care to her patient, Mr. Blake, and has an obligation to report any harm to him. ECF 64:24-65:4

22. Linda Scott testified that, nurses have a professional duty to do no harm and "if Jessica witnessed harm that was, you know, outside the scope of anything, she would have, probably, felt a duty to make that phone call" to her supervisors. ECF 74-16 at 65:1-4.

23. Defendant Bergmann acknowledged that her supervisor on call on April 25, 2021 was either Dr. Kevin Kremms or the nurse practitioner Julie Haifman. ECF 74-15 at 18:22-24.

24. Ms. Scott admitted that as the representative for VNCC, she could not say for certain if Bergmann had completed any training as it relates to use of the ERC, she and by extension VNCC had not seen any documents to that effect, and she did not know if Bergmann was even competent in her role in relation to use of the chair. ECF 74-16, at 81:1-25.

25. Bergmann testified that this was her first job as a nurse, she "couldn't recall" being directed to read the ERC Manual as is a required part of the training, and that she had not received any training by Kenosha County regarding the use of restraints. ECF 74-15, at 6:1, 13-16, and 23:16-21.

26. According to Kenosha Sheriff's Department Operational Policy 407 on the use of an Emergency/Safety Restraint Chair it states:

> "The restraint chair will be used to temporarily restrain and/or transport combative inmates for safety reasons." ECF 80-20 at 1.

27. According to the training manual, "The Emergency Restraint Chair (E.R.C.) is intended to help control combative, self-destructive, or potentially violent detainees." Motley Decl. **Ex. 2**, at 1.

28. Per the ERC training manual **STEP ONE** states that officers are to,

> "Ensure that all of the detainee's personal property has been removed from them, to include jewelry, glasses, shoes, boots, socks, coat, hat, and belt. They should only be clothed in their shirt, pants, or dress."
> Motley Decl., Ex. 2 at 1.

5
Case 2:22-cv-00970-PP    Filed 04/15/25    Page 5 of 10    Document 95

29. Mr. Blake, a 56-year-old man, being restrained in the ERC by his shoulders, wrists, lap, and ankles while being forced to sit in an upright position for nearly seven hours was seriously harmed. ECF 73-7, at 96:13-14; 98:1-7; 79-2.

30. The visual evidence clearly shows Mr. Blake in pain while in the chair, and Bergmann assisting in that harm. At varying points while in the ERC, at timestamps of 12:02 a.m., 1:28 a.m., 2:07 a.m., 2:28 a.m., 2:58 a.m., 3:07 a.m., and 3:28 a.m., Blake can be seen in the chair in distress, trying to move some of the restrained parts of his body including his head as well as his shaky legs and hands. ECF 74-11 at 00:50-01:50, 37:19–37:32; 74-12 at 18:48-19:10, 31:13-31:40, 37:20–37:42; and 74-13 at 03:00-03:40, 11:22-12:00.

31. Upon his release, Mr. Blake immediately sought medical care and has had to endure two corrective surgeries to his left shoulder; has numerous epidermal injections for pain; his range of motion has been compromised; he has continuous aggravated pain in his neck, shoulder, and back for routine activities such as sleeping, walking, and standing; and he has had to undergo physical therapy treatments. ECF 73-7, at 132:10-15 and 22-23; 133:1-3; 139:20-22; 147:5-15; and 148:16-25.

32. As a former construction worker and carpenter, these employment opportunities are all but foreclosed on him because of the unwarranted serious injuries of sitting in the ERC for nearly seven hours caused by the Defendants. ECR 73-7, at 20-24.

33. Jessica Bergmann never objected to Mr. Blake being placed in the ERC because she felt that it "wouldn't have been (her) place to do that." ECF 74-15 at 59:13-18.

34. As a supervisor, May had an expectation that the nurse would ask Blake he was in pain, had injuries, or distress while in the ERC. ECF 73-9 at 29:5-11, 28:11-17.

35. Jessica Bergmann does not recall asking Blake one single medical question or any questions at all. ECF 73-2 at 56 & 57: 25-1.

36. According to VNCC's contract, its employees, including Bergmann, is required to "provid(e) the medical and dental care and services to jail prisoners and other inmates as required by the U.S. Constitution and other applicable laws and regulations." ECF 72, at ¶ 57.

37. All of the Defendant Officers, Jessica Bergmann, and the Kenosha County Representative agrees that Mr. Blake was never combative, self-destructive, or potentially violent before, during, or after he was placed in the ERC. ECF 73-3, at 35-36:21-3, 94:7; 73-4, at 41:12-21; 73-5, at 30:3-16; 73-6, at 59:1-3, 9-20; 73-8, at 61:21-62:13; 74-2, at 90:6-15, 91:19-22, 93:10-13; 74-15, at 51:7-9.

38. According to Douglas Simpson, the corporate representative for Kenosha County, there is nothing in the reports that suggests that Mr. Blake was uncooperative, combative, physically resisting, suicidal, self-destructive, or on any type of drugs. ECF 74-2 at 90:6-15; 91:19-22; 93:10-13.

39. Jessica Bergmann recalled and noted in her report, that on April 25 and 26th that Justin Blake's behavior was "quiet and calm." ECF 73-2 at 51:7-9.

40. Jessica Bergmann had a propensity to approve the actions of law enforcement even if they go against medical policies and the medical interests of Blake. ECF 82, at 39-40.

41. Jessica Bergmann testified that Blake was not placed in the chair for medical reasons. ECF 74-2, at 124:6-10.

42. Additionally, pursuant to the VNCC Contract, Ms. Bergmann was required to "comply with all rules and general regulations of the KPSD." ECF 74-20, at 2.

43. Ms. Scott testified that any trainings Bergmann received with regards to the ERC and Use of Force were "handled as a collaborative training" between Kenosha County Law Enforcement and nurses working at the jail. ECF 74-16, at 17:18-18:13.

44. Ms. Scott testified that VNCC had no training materials and/or manuals to provide as it relates to the Use of Force and ERC trainings that Defendant Bergmann should have participated in. ECF 74-16, at 19:1-14.

45. Ms. Scott testified that any such training documents and procedures required for VNCC employees working at the jail "were designed by them (Kenosha County), and the training and details of it would've come from them." ECF 74-16, at 19:1-14.

46. Ms. Scott further testified that such documents "are available to VNCC personnel at the Kenosha County Detention Center." ECF 74-16, at 19:1-14. Defendant Bissonnette first asked Mr. Blake for his name after he was transported to the Kenosha Detention Facility and while they were in the sally port. ECF 73-8, at 65:2-3.

47. Mr. Blake was arrested by Defendant Kyle Bissonnette; the Officers became aware that Mr. Blake continued with his silent protest while in custody. ECF 73-7 at 15:22.

48. In an email regarding Mr. Blake's arrest at 12:49 a.m. on April 26, 2021, Defendant May identified Justin Blake as "a community activist and uncle of Jacob Blake." Motley Decl., at **Exhibit 9.**

8
Case 2:22-cv-00970-PP    Filed 04/15/25    Page 8 of 10    Document 95

49. At 3:20 a.m., Sgt. Ryan Murkowski sent an email to Defendant Officers, positively identifying Justin Blake as the person that was in custody and "refus(ing) to talk." Motley Decl., at **Exhibit. 10.**

50. At 3:24 a.m. Defendant Jeremy May forwarded his email to Murkowski, where May identified the Plaintiff as "Justin Blake; a community activist and uncle of Jacob Blake." Motley Decl., at **Exhibit 11**.

51. Defendant Haynes knew who Mr. Blake was when he was arrested on the night of April 25, 2021 and also saw numerous news articles informing him of Mr. Blake's identity. ECF 73-4, at 104:5-10.

52. Before she worked at Kenosha County Jail, she had never taken any training programs in dealing with healthcare for inmates. ECF 74-15 at 6:13-16.

53. Gloria Galvan testified that she couldn't remember why Mr. Blake was put in the ERC and did not remember asking anyone. ECF 73-6, at 63:3-10.

54. Defendants Bissonnette, DiCello, Haynes, Bergmann, and Galvan None of the Defendant Officers and Jessica Bergmann never interceded nor complained about Mr. Blake being put and kept in the ERC. ECF 73-3, at 86:12-16; 73-5, at 65:11-14.; 73-4, at 71:21-23; 73-6, at 63:11-13; 73-2, at 59:17-18.

55. Defendant May directed his officers to, "Put (Blake's) ass in the damn chair!" ECF 73-7 at 77:2-3.

56. Jeremy May, Dereemeyun Haynes, Jacob DiCello, Kyle Bissonnette, and Gloria Galvan were involved with placing and keeping Mr. Blake in the ERC on April 25, 2021. Motley Decl. at **Exhibit 12,** Defendant's Response to Plaintiffs Interrogatory #11.

57. Mr. Blake was kept in the ERC for nearly seven total hours.  ECF 80-24, 80-25.

58. Mr. Blake was kept in the chair without being taken out of it from 1:53 a.m. until 5:40 a.m.  ECF 80-24.

59. Mr. Blake was wearing a hooded sweatshirt with ties, socks, watch, shoes with laces, and pants with a belt the entire time he was in the ERC.  ECF 74-2, at 32:5-11.

Dated this April 15, 2025.

**MOTLEY LEGAL SERVICES**

By: *s/Kimberley Cy. Motley*
Kimberley Cy. Motley, SBN 1047193
PO Box 1433
Matthews, NC 28106
(704) 763-5413 (phone)
kmotley@motleylegal.com

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com

Attorneys for Plaintiffs