# Use of Force

### 300.1 PURPOSE AND SCOPE

This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this Department is expected to use these guidelines to make such decisions in a professional, impartial, and reasonable manner.

In addition to those methods, techniques, and tools set forth below, the guidelines for the reasonable application of force contained in this policy shall apply to all policies addressing the potential use of force, including but not limited to the Control Devices and Techniques and Conducted Energy Device policies.

### 300.1.1 DEFINITIONS

Definitions related to this policy include:

**Carotid Control Hold** - a technique designed to control an individual by temporarily restricting blood flow through the application of pressure to the side of the neck and, unlike a chokehold, does not restrict the airway.

**Deadly force** - The intentional use of a firearm or other instrument that creates a high probability of death or great bodily harm.

**Feasible** - Reasonably capable of being done or carried out under the circumstances to successfully achieve the arrest or lawful objective without increasing risk to the deputy or another person.

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

**Imminent** - Ready to take place; impending. Note that imminent does not mean immediate or instantaneous.

**Respiratory Restraint** - A physical maneuver that restricts an individual's ability to breathe for the purpose of incapacitation.

**Totality of the circumstances** - All facts and circumstances known to the deputy at the time, taken as a whole, including the conduct of the deputy and the subject leading up to the use of force.

### 300.2 POLICY

The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Deputies are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 1 of 32    Document 98-13

Docs Produced by Kenosha Co.
011616
Blake v. Kenosha Co., et al.

Deputies must have an understanding of, and true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

The Kenosha County Sheriff's Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting deputies with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation, and a careful balancing of all interests.

### 300.2.1   DUTY TO INTERCEDE AND REPORT
Any deputy present and observing another law enforcement officer or a member using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force.

Any deputy who observes another law enforcement officer or a member use force that is potentially beyond that which is objectively reasonable under the circumstances should report these observations to a supervisor as soon as feasible.

### 300.2.2   PERSPECTIVE
When observing or reporting force used by a law enforcement officer, each deputy should take into account the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject.

### 300.3   USE OF FORCE
Deputies shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the deputy at the time of the event to accomplish a legitimate law enforcement purpose.

The reasonableness of force will be judged from the perspective of a reasonable deputy on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that deputies are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain and rapidly evolving.

Given that no policy can realistically predict every possible situation a deputy might encounter, deputies are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident.

It is also recognized that circumstances may arise in which deputies reasonably believe that it would be impractical or ineffective to use any of the tools, weapons or methods provided by this Department. Deputies may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP     Filed 04/15/25     Page 2 of 32     Document 98-13

Docs Produced by Kenosha Co.
011617
Blake v. Kenosha Co., et al.

## *Use of Force*

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires a deputy to retreat or be exposed to possible physical injury before applying reasonable force.

### 300.3.1   ALTERNATIVE TACTICS - DE-ESCALATION
When circumstances reasonably permit, deputies should use non-violent strategies and techniques to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance (e.g., summoning additional resources, formulating a plan, attempting verbal persuasion).

### 300.3.2   USE OF FORCE TO EFFECT AN ARREST
A law enforcement officer may use reasonable force to arrest a person or execute a warrant. Additionally, a law enforcement officer making a lawful arrest may command the aid of any person, and such person shall have the same power as that of the law enforcement officer (Wis. Stat. § 968.07; Wis. Stat. 968.14).

### 300.3.3   FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether a deputy has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit. These factors include but are not limited to:

(a)   Immediacy and severity of the threat to deputies or others.

(b)   The conduct of the individual being confronted, as reasonably perceived by the deputy at the time.

(c)   Deputy/subject factors (e.g., age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of deputies available vs. subjects).

(d)   The effects of suspected drug or alcohol use.

(e)   The individual's mental state or capacity.

(f)   The individual's ability to understand and comply with deputy commands.

(g)   Proximity of weapons or dangerous improvised devices.

(h)   The degree to which the individual has been effectively restrained and his/her ability to resist despite being restrained.

(i)   The availability of other reasonable and feasible options and their possible effectiveness.

(j)   Seriousness of the suspected offense or reason for contact with the individual.

(k)   Training and experience of the deputy.

(l)   Potential for injury to deputies, suspects, and others.

(m)   Whether the individual appears to be resisting, attempting to evade arrest by flight, or is attacking the deputy.

(n)   The risk and reasonably foreseeable consequences of escape.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 3 of 32   Document 98-13

Docs Produced by Kenosha Co.
011618
Blake v. Kenosha Co., et al.

(o)    The apparent need for immediate control of the individual or a prompt resolution of the situation.

(p)    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the deputy or others.

(q)    Prior contacts with the individual or awareness of any propensity for violence.

(r)    Any other exigent circumstances.

## 300.3.4   PAIN COMPLIANCE TECHNIQUES
Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Deputies may only apply those pain compliance techniques for which they have successfully completed Department-approved training. Deputies utilizing any pain compliance technique should consider:

(a)    The degree to which the application of the technique may be controlled given the level of resistance.

(b)    Whether the individual can comply with the direction or orders of the deputy.

(c)    Whether the individual has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the deputy determines that compliance has been achieved.

## 300.3.5   CAROTID CONTROL HOLD
A carotid control hold is a technique designed to control an individual by temporarily restricting blood flow through the application of pressure to the side of the neck and, unlike a chokehold, does not restrict the airway. The proper application of the carotid control hold may be effective in restraining a violent or combative individual. However, due to the potential for injury, the use of the carotid control hold is limited to those circumstances where deadly force is authorized and is subject to the following:

(a)    At all times during the application of the carotid control hold, the response of the individual should be monitored. The carotid control hold should be discontinued when circumstances indicate that the application no longer reasonably appears necessary.

(b)    Any individual who has had the carotid control hold applied, regardless of whether he/she was rendered unconscious, shall be promptly examined by paramedics or other qualified medical personnel and should be monitored until such examination occurs.

(c)    The deputy shall inform any person receiving custody, or any person placed in a position of providing care, that the individual has been subjected to the carotid control hold and whether the individual lost consciousness as a result.

(d)    Any deputy attempting or applying the carotid control hold shall promptly notify a supervisor of the use or attempted use of such hold.

(e)    The use or attempted use of the carotid control hold shall be thoroughly documented by the deputy in any related reports.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 4 of 32    Document 98-13

Docs Produced by Kenosha Co.
011619
Blake v. Kenosha Co., et al.

### 300.3.6 RESPIRATORY RESTRAINTS
The use of a respiratory restraint, also known as a chokehold, is limited to circumstances where deadly force is authorized and if applied, is subject to the same guidelines and requirements as a carotid control hold.

### 300.3.7 USE OF FORCE TO SEIZE EVIDENCE
In general, deputies may use reasonable force to lawfully seize evidence and to prevent the destruction of evidence. However, deputies are discouraged from using force solely to prevent a person from swallowing evidence or contraband. In the instance when force is used, deputies should not intentionally use any technique that restricts blood flow to the head, restricts respiration or which creates a reasonable likelihood that blood flow to the head or respiration would be restricted. Deputies are encouraged to use techniques and methods taught by the Kenosha County Sheriff's Department for this specific purpose.

## 300.4 DEADLY FORCE APPLICATIONS
When reasonable, the deputy shall, prior to the use of deadly force, make efforts to identify him/herself as a peace officer and to warn that deadly force may be used, unless the deputy has objectively reasonable grounds to believe the person is aware of those facts.

Use of deadly force is justified in the following circumstances involving imminent threat or imminent risk:

- (a) A deputy may use deadly force to protect him/herself or others from what he/she reasonably believes is an imminent threat of death or serious bodily injury.

- (b) A deputy may use deadly force to stop a fleeing subject when the deputy has probable cause to believe that the individual has committed, or intends to commit, a felony involving the infliction or threatened infliction of serious bodily injury or death, and the deputy reasonably believes that there is an imminent risk of serious bodily injury or death to any other person if the individual is not immediately apprehended. Under such circumstances, a verbal warning should precede the use of deadly force, where feasible.

Imminent does not mean immediate or instantaneous. An imminent danger may exist even if the suspect is not at that very moment pointing a weapon at someone. For example, an imminent danger may exist if a deputy reasonably believes that the individual has a weapon or is attempting to access one and intends to use it against the deputy or another person. An imminent danger may also exist if the individual is capable of causing serious bodily injury or death without a weapon, and the deputy believes the individual intends to do so.

### 300.4.1 MOVING VEHICLES
Shots fired at or from a moving vehicle involve additional considerations and risks, and are rarely effective.

When feasible, deputies should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 5 of 32    Document 98-13

Docs Produced by Kenosha Co.
011620
Blake v. Kenosha Co., et al.

A deputy should only discharge a firearm at a moving vehicle or its occupants when the deputy reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the deputy or others.

Deputies should not shoot at any part of a vehicle in an attempt to disable the vehicle.

## 300.5 REPORTING THE USE OF FORCE

Any use of force by a member of this Department shall be documented promptly, completely, and accurately in an appropriate report, depending on the nature of the incident. The deputy should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances.

To collect data for purposes of training, resource allocation, analysis, and related purposes, the Department may require the completion of additional report forms, as specified in Department policy, procedure, or law. See the Report Preparation Policy for additional circumstances that may require documentation.

### 300.5.1 NOTIFICATIONS TO SUPERVISORS

Supervisory notification shall be made as soon as practicable following the application of force in any of the following circumstances:

- (a) The application caused a visible injury.
- (b) The application would lead a reasonable deputy to conclude that the individual may have experienced more than momentary discomfort.
- (c) The individual subjected to the force complained of injury or continuing pain.
- (d) The individual indicates intent to pursue litigation.
- (e) Any application of the ECD or control device.
- (f) Any application of a restraint device other than handcuffs, shackles, or belly chains.
- (g) The individual subjected to the force was rendered unconscious.
- (h) An individual was struck or kicked.
- (i) An individual alleges unreasonable force was used or that any of the above has occurred.

## 300.6 MEDICAL CONSIDERATIONS

Once it is reasonably safe to do so, medical assistance shall be obtained for any person who exhibits signs of physical distress, has sustained visible injury, expresses a complaint of injury or continuing pain, or was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed. Individuals should not be placed on their stomachs for an extended period, as this could impair their ability to breathe.

Based upon the deputy's initial assessment of the nature and extent of the individual's injuries, medical assistance may consist of examination by an emergency medical services provider or

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 6 of 32    Document 98-13

Docs Produced by Kenosha Co.
011621
Blake v. Kenosha Co., et al.

medical personnel at a hospital or jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another deputy and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling deputy shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the deputy reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Individuals who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics, and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple deputies to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Deputies who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away.

See the Medical Aid and Response Policy for additional guidelines.

### 300.7 SUPERVISOR RESPONSIBILITIES

A supervisor should respond to a reported application of force resulting in visible injury, if reasonably available. When a supervisor is able to respond to an incident in which there has been a reported application of force, the supervisor is expected to:

(a) Obtain the basic facts from the involved deputies. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b) Ensure that any injured parties are examined and treated.

(c) When possible, separately obtain a recorded interview with the individual upon whom force was applied. If this interview is conducted without the individual having voluntarily waived his/her *Miranda* rights, the following shall apply:

1. The content of the interview should not be summarized or included in any related criminal charges.

2. The fact that a recorded interview was conducted should be documented in a property or other report.

3. The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.

(d) Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible injury or complaint of pain, as well as overall photographs of uninjured areas.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 7 of 32    Document 98-13

Docs Produced by Kenosha Co.
011622
Blake v. Kenosha Co., et al.

    1. These photographs should be retained until all potential for civil litigation has expired.

(e) Identify any witnesses not already included in related reports.

(f) Review and approve all related reports.

(g) Determine if there is any indication that the individual may pursue civil litigation.

    1. If there is an indication of potential civil litigation, the supervisor should complete and route a notification of a potential claim through the appropriate channels.

(h) Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy noncompliance or if for any reason further investigation may be appropriate.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

### 300.7.1 SHIFT COMMANDER RESPONSIBILITY
The Shift Commander shall review each use of force by any personnel within his/her command to ensure compliance with this policy and to address any training issues.

### 300.8 POLICY AVAILABILITY
This policy shall be made available to the public at no charge upon request (Wis. Stat. § 66.0511(2)).

### 300.9 TRAINING
Deputies will receive periodic training on this policy and demonstrate their knowledge and understanding.

Subject to available resources, deputies should receive periodic training on:

(a) Guidelines regarding vulnerable populations, including but not limited to children, elderly, pregnant persons, and individuals with physical, mental, or intellectual disabilities.

(b) De-escalation tactics, including alternatives to force.

### 300.10 USE OF FORCE ANALYSIS
At least annually, the Operations Division Commander should prepare an analysis report on use of force incidents. The report should be submitted to the Sheriff. The report should not contain the names of deputies, suspects, or case numbers, and should include:

(a) The identification of any trends in the use of force by members.

(b) Training needs recommendations.

(c) Equipment needs recommendations.

(d) Policy revision recommendations.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 8 of 32   Document 98-13

Docs Produced by Kenosha Co.
011623
Blake v. Kenosha Co., et al.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 9 of 32   Document 98-13

Docs Produced by Kenosha Co.
011624
Blake v. Kenosha Co., et al.

# Use of Force Review Boards

## 301.1  PURPOSE AND SCOPE
This policy establishes a process for the Kenosha County Sheriff's Department to review the use of force by its employees.

This review process shall be in addition to any other review or investigation that may be conducted by any outside or multi-agency entity having jurisdiction over the investigation or evaluation of the use of deadly force.

## 301.2  POLICY
The Kenosha County Sheriff's Department will objectively evaluate the use of force by its members to ensure that their authority is used lawfully, appropriately and is consistent with training and policy. All information and knowledge of the board shall remain confidential among the members of the board and is governed by the Protected Information Policy.

## 301.3  REMOVAL FROM LINE DUTY ASSIGNMENT
Generally, whenever an employee's actions or use of force in an official capacity, or while using Department equipment, results in death or very serious injury to another, that employee will be placed in a temporary administrative assignment pending an administrative review. The Sheriff may exercise discretion and choose not to place an employee in an administrative assignment in any case.

## 301.4  REVIEW BOARD
The Use of Force Review Board will be convened when the use of force by a member results in very serious injury or death to another.

The Use of Force Review Board will also investigate and review the circumstances surrounding every discharge of a firearm, whether the employee was on- or off-duty, excluding training or recreational use.

The Sheriff may request the Use of Force Review Board to investigate the circumstances surrounding any use of force incident.

The Chief Deputy will convene the Use of Force Review Board as necessary. It will be the responsibility of the Division Commander or supervisor of the involved employee to notify the Chief Deputy of any incidents requiring board review. The involved employee's Division Commander or supervisor will also ensure that all relevant reports, documents and materials are available for consideration and review by the board.

### 301.4.1  COMPOSITION OF THE BOARD
The Chief Deputy should select five Use of Force Review Board members from the following, as appropriate:

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Docs Produced by Kenosha Co.
011625
Blake v. Kenosha Co., et al.

- Representatives of each division

- Commanding officer in the involved member's chain of command

- Training Sergeant

- Non-administrative supervisor

- A P.E.E.R. deputy

- A sworn peace officer from an outside law enforcement agency

- Department instructor for the type of weapon, device or technique used

The senior ranking command representative who is not in the same division as the involved employee will serve as chairperson.

### 301.4.2 RESPONSIBILITIES OF THE BOARD

The Use of Force Review Board is empowered to conduct an administrative review and inquiry into the circumstances of an incident.

The board members may request further investigation, request reports be submitted for the board's review, call persons to present information and request the involved employee to appear. The involved employee will be notified of the meeting of the board and may choose to have a representative through all phases of the review process.

The board <u>does not</u> have the authority to recommend discipline.

The Chief Deputy will determine whether the board should delay its review until after completion of any criminal investigation, review by any prosecutorial body, filing of criminal charges, the decision not to file criminal charges or any other action. The board should be provided all relevant available material from these proceedings for its consideration.

The review shall be based upon those facts which were reasonably believed or known by the deputy at the time of the incident, applying any legal requirements, Department policies, procedures and approved training to those facts. Facts later discovered but unknown to the deputy at the time shall neither justify nor call into question a deputy's decision regarding the use of force.

Any questioning of the involved employee conducted by the board will be in accordance with the Department's disciplinary procedures, the Personnel Complaints Policy, the current collective bargaining agreement and any applicable state or federal law.

The board shall make one of the following recommended findings:

(a) The employee's actions were within Department policy and procedure.

(b) The employee's actions were in violation of Department policy and procedure.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 11 of 32    Document 98-13

Docs Produced by Kenosha Co.
011626
Blake v. Kenosha Co., et al.

A recommended finding requires a majority vote of the board. The board may also recommend additional investigations or reviews, such as disciplinary investigations, training reviews to consider whether training should be developed or revised, and policy reviews, as may be appropriate. The board chairperson will submit the written recommendation to the Chief Deputy.

The Chief Deputy shall review the recommendation, make a final determination as to whether the employee's actions were within policy and procedure and will determine whether any additional actions, investigations or reviews are appropriate. The Chief Deputy's final findings will be forwarded to the involved employee's Division Commander for review and appropriate action. If the Chief Deputy concludes that discipline should be considered, the applicable disciplinary process will be initiated.

At the conclusion of any additional reviews, copies of all relevant reports and information will be filed with the Sheriff, as any and all appeals of decisions are made to the Sheriff.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 12 of 32    Document 98-13

Docs Produced by Kenosha Co.
011627
Blake v. Kenosha Co., et al.

# Report Preparation

## 323.1 PURPOSE AND SCOPE

Report preparation is a major part of each employee's job. The purpose of reports is to document sufficient information to refresh the employee's memory and to provide sufficient information for follow-up investigation and successful prosecution. Report writing is the subject of substantial formalized and on-the-job training.

### 323.1.1 REPORT PREPARATION

Employees should ensure that their reports are sufficiently detailed for their purpose and reasonably free of errors prior to submission. It is the responsibility of the assigned employee to complete and submit all reports taken during the shift before going off-duty unless permission to delay submission of the report has been approved by a supervisor. Generally, reports requiring prompt follow-up action on active leads or arrest reports where the suspect remains in custody should not be delayed.

When applicable, handwritten reports must be prepared legibly. If the report is not legible, the submitting employee will be required by the reviewing supervisor to promptly make corrections and resubmit the report. Employees who generate reports on computers are subject to all requirements of this policy.

All reports shall accurately reflect the identity of the persons involved, witnesses, all pertinent information seen, heard, or assimilated by any other sense, and any actions taken. Employees shall not suppress, conceal, or distort the facts of any reported incident, nor shall any employee make a false report orally or in writing. Generally, the reporting employee's opinions should not be included in reports unless specifically identified as such.

If the Record Management System (New World) is temporarily unavailable, a paper report can be completed and submitted with the permission of the shift supervisor. KSD approved Incident Reports forms will be provided for such occurrences. When the RMS is restored, the supervisor will be responsible to coordinate the entry of the paper reports into the RMS system as soon as practicable.

## 323.2 REQUIRED REPORTING

Computer-generated, or written reports when applicable, are required in all of the following situations on the appropriate department-approved forms unless otherwise approved by a supervisor.

### 323.2.1 CRIMINAL ACTIVITY REPORTING

When a department member responds to a call for service, or as a result of self-initiated activity becomes aware of any activity where a crime has occurred, the department member shall document the incident regardless of whether a victim desires prosecution.

Activity to be documented in a written report includes:

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 13 of 32    Document 98-13

Docs Produced by Kenosha Co.
011628
Blake v. Kenosha Co., et al.

(a)     All arrests

(b)     All felony crimes

(c)     Non-felony incidents involving threats or stalking behavior

(d)     Situations covered by a separate policy. These include:

    1.     Use of Force Policy

    2.     Domestic Abuse Policy

    3.     Child Abuse Policy

    4.     Adult Abuse Policy

    5.     Bias-Motivated Crimes Policy

    6.     Suspicious Activity Reporting Policy

(e)     All misdemeanor crimes where the victim desires a report

(f)     Situations involving a suspected prescription drug law violation, opioid-related drug overdose, narcotics-related death, or control substance prescription theft (Wis. Stat. § 961.37).

Misdemeanor crimes where the victim does not desire a report shall be documented using an investigation report and a negative no-consent form.

## 323.2.2   NON-CRIMINAL ACTIVITY
The following incidents shall be documented using the appropriate approved report:

(a)     Anytime a deputy points a firearm at any person

(b)     Any use of force against any person by a member of this Department (see the Use of Force Policy)

(c)     Any firearm discharge (see the Firearms Policy)

(d)     Anytime a person is reported missing (regardless of jurisdiction) (see the Missing Person Reporting Policy)

(e)     Any found property or found evidence

(f)     Any traffic crashes above the minimum reporting level (see the Traffic Crash Response and Reporting Policy)

(g)     Suspicious incidents that may indicate a potential for crimes against children or that a child's safety is in jeopardy

(h)     All protective custody detentions

(i)     Whenever the employee believes the circumstances should be documented or at the direction of a supervisor

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP     Filed 04/15/25     Page 14 of 32     Document 98-13

Docs Produced by Kenosha Co.
011629
Blake v. Kenosha Co., et al.

### 323.2.3   DEATH CASES
Death investigations require specific investigation methods depending on circumstances and should be handled in accordance with the Death Investigation Policy. The handling deputy should notify and apprise a supervisor of the circumstances surrounding the incident to determine how to proceed. The following cases shall be appropriately investigated and documented:

   (a)   Sudden or accidental deaths

   (b)   Suicides

   (c)   Homicide or suspected homicide

   (d)   Unattended deaths (no physician or qualified hospice care during the period immediately preceding death)

   (e)   Found dead bodies or body parts

### 323.2.4   INJURY OR DAMAGE BY SHERIFF'S DEPARTMENT PERSONNEL
Reports shall be taken if any injury or damage to property occurs that is a result of an act of a department employee.

### 323.2.5   MISCELLANEOUS INJURIES
Any injury that is reported to this Department shall require a report when:

   (a)   The injury is a result of a drug overdose.

   (b)   There is an attempted suicide.

   (c)   The injury is major/serious, whereas death could result.

   (d)   The circumstances surrounding the incident are suspicious in nature and it is desirable to record the event.

The above reporting requirements are not intended to be all-inclusive. A supervisor may direct an employee to document any incident he/she deems necessary.

### 323.2.6   ALTERNATE REPORTING FOR VICTIMS
Members at the scene of one of the above incidents should not refer the reporting party to an alternate means of reporting without authorization from a supervisor, and in accordance with current procedures (see the Kenosha County Sheriff's Department Procedures Manual: Alternative Reporting For Victims Procedures). The use of alternative reporting methods (see   Citizen Self Reporting Form ) are typically used in high call volume incidents, (e.g., County Thunder and County Fair.) Members may refer  victims to online victim assistance programs (e.g., Federal Communications Commission FCC website for identity theft, Internet Crime Complaint Center (IC3) website for computer crimes).

### 323.3   GENERAL POLICY OF EXPEDITIOUS REPORTING
In general, all employees and supervisors shall act with promptness and efficiency in the preparation and processing of all reports. An incomplete report, unorganized reports or reports

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 15 of 32   Document 98-13

Docs Produced by Kenosha Co.
011630
Blake v. Kenosha Co., et al.

delayed without supervisory approval are not acceptable. Reports shall be processed according to established priorities or according to special priority necessary under exceptional circumstances.

## 323.4 REPORT CORRECTIONS

Supervisors shall review reports for content and accuracy. If a correction is necessary, the reviewing supervisor should complete the report correction form, stating the reasons for rejection. The original report and the correction form should be returned to the reporting employee for correction as soon as practicable. It shall be the responsibility of the originating employee to ensure that any report returned for correction is processed in a timely manner.

## 323.5 REPORT CHANGES OR ALTERATIONS

Reports that have been approved by a supervisor and submitted to the Records for filing and distribution shall not be modified or altered except by way of a supplemental report. Reviewed reports that have not yet been submitted to the Records may be corrected or modified by the authoring employee only with the knowledge and authorization of the reviewing supervisor.

### 323.5.1 REVIEW BY COURT OFFICER

If, while assembling the file for court, a court officer identifies any problem or deficiency with a report, the court officer will return the file to the officer's immediate supervisor with an explanation of the problem and a request to correct it.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 16 of 32    Document 98-13    Docs Produced by Kenosha Co.
011631
Blake v. Kenosha Co., et al.


**Use of Force Report Forms.pdf**

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP     Filed 04/15/25     Page 17 of 32     Document 98-13

Docs Produced by Kenosha Co.
011632
Blake v. Kenosha Co., et al.

# Kenosha County Sheriff's Department

## DEPUTY DEFENSIVE ACTION REPORT

| 1) DATE | 2) TIME | 3) LOCATION | | 4) Case # |
|---|---|---|---|---|
| / / | | | | |

**5) SUBJECT'S NAME** | **6) DATE OF BIRTH** / / | **7) HEIGHT** ' " | **8) WEIGHT** LBS | **9) RACE** | **10) ETH.** | **11) SEX**

**12) SUBJECT'S ADDRESS (NUMBER, CITY, STATE, ZIP)** | **13) PHONE NUMBER** - - | **14) PRIOR ARRESTS**
☐-1 ☐-2 ☐-3 ☐-4 ☐-5 ☐-6 ☐-7 ☐-8 ☐-9 ☐-10

**15) REASON THE USE OF FORCE WAS NECESSARY: Check all that apply**

☐ TO EFFECT AN ARREST ☐ TO DEFEND SELF ☐ TO RESTRAIN FOR SUBJECT'S SAFETY

☐ TO DEFEND ANOTHER OFFICER ☐ TO PREVENT A VIOLENT FELONY ☐ ASSIST OTHER AGENCY

☐ TO DEFEND ANOTHER PERSON ☐ TO PREVENT A VIOLENT MISDEMEANOR ☐ OTHER:

**16) WAS SUBJECT INJURED?**
☐ YES
☐ NO (go to block 22 UNLESS SUBJECT WAS STRUCK BY L.L. MUNITIONS)

**17) TRANSPORTED BY** | **18) DESTINATION** | **19) ATTENDING PHYSICIAN/ADMITTING NURSE** ☐ ADMITTED ☐ TREATED AND RELEASED | **20) PHOTOS BY**

**21) DESCRIBE SUBJECT'S INJURIES (ALL THAT APPLY):**
☐ BRUISING ☐ UNCONSCIOUSNESS ☐ OTHER MINOR ☐ OTHER MAJOR ☐ DEATH

**22) # SUBJECTS THAT RESISTED:** | **23) # OFFICERS PRESENT:** | **24) SUPERVISOR NOTIFIED/TIME** | **25) NOTIFIED SUPERVISOR'S SIGNATURE**

**26) AT THE TIME OF ARREST, THE SUBJECT WAS:**

☐ UNDER THE INFLUENCE OF ALCOHOL OR DRUGS ☐ MENTALLY IMPAIRED

☐ SUSPECTED UNDER THE INFLUENCE OF ALCOHOL OR DRUGS ☐☐☐☐ OTHER:

**27) LEVELS OF RESISTANCE:**

☐ PSYCHOLOGICAL INTIMIDATION (EXPLAIN): _____
(Non-verbal cues indicating the subject's attitude or physical readiness)

☐ VERBAL NON-COMPLIANCE (EXPLAIN): _____
(Verbal responses or threats of non-compliance to officer's directions)

☐ PASSIVE RESISTANCE (EXPLAIN): _____
(Dead weight or clinging to objects in an attempt to prevent the officer from gaining control)

☐ ESCAPE RESISTANCE (EXPLAIN): _____
(Pushing or pulling away from the officer to avoid control, however, not attempting to harm the officer)

☐ ACTIVE AGGRESSION (EXPLAIN): _____
(Physical actions of assault)

☐ DEADLY FORCE ASSAULTS (EXPLAIN): _____
(Assaults with the intent and apparent ability to cause death or great bodily harm)

**28) LEVELS OF CONTROL (OFFICER PRESENCE IS ASSUMED):**

☐ VERBAL DIRECTION (EXPLAIN): _____
(Commands of direction or of arrest)

☐ ACTIVE POINTING (EXPLAIN): _____

☐ EMPTY HAND CONTROL TECHNIQUES (EXPLAIN): _____

SOFT    Location: _____
☐ Escort
☐ Joint Locks
☐ Pressure Points

HARD
☐ Hand Strikes    Location: _____
☐ Leg Strikes    Location: _____

☐ INTERMEDIATE WEAPONS (EXPLAIN): _____
(Check all appropriate)
☐ OC Spray ☐ Expandable Baton ☐ FN303 Less Lethal Munitions
☐ Taser ☐ Other _____

☐ LETHAL FORCE (EXPLAIN): _____
(Firearms or other lethal force applied)

**29) RESTRAINT METHOD USED:**

☐ HANDCUFFS ☐ LEG RESTRAINTS ☐ FLEX CUFFS ☐ SPIT SHIELD ☐ OTHER: ☐ NONE

**30) Reporting Deputy**    # | **31) SUPERVISOR**    #

Docs Produced by Kenosha Co.
011633
Blake v. Kenosha Co., et al.

| 32) CONTROL POINT TARGET AREAS | 33) CHEMICAL SPRAY TARGET AREA |
|---|---|

**32) CONTROL POINT TARGET AREAS**

Infra-Orbital Nerve (P.P.)
Jugular Notch (P.P.)
Brachial Plexus Tie-in (H.E.H.)
Median Nerve (H.E.H./I.W.)
Mandibular Angle (P.P.)
Hypoglossal Nerve (P.P.)
Brachial Plexus (Origin) (H.E.H.)
Brachial Plexus (Cervical Notch) (P.P.)
Femoral Nerve (I.W., H.E.H.)
Tibial Nerve (Rear) (I.W.)
Radial Nerve (I.W./H.E.H.)
Common Peroneal (I.W., H.E.H.)
Superficial Peroneal (H.E.H.))

**P.P. – Pressure Point**
**H.E.H. – Hard Empty Hand**
**I.W. – Impact Weapon**

**VARIABLES AFFECTING LEVELS OF CONTROL**
1. Officer/Subject Size and Gender
2. Environmental Conditions
3. Reaction Time

**33) CHEMICAL SPRAY TARGET AREA**

**34) EFFECTS OF CHEMICAL SPRAY**

| What Effect did Chemical Spray Have? | Were Further Control Methods Needed? |
|---|---|
| | ☐ Yes ☐ No |
| | **Approximate Distance from Subject:** ft. |
| **Number of Times Sprayed:** | **Skin:** ☐ Redness ☐ Burning ☐ No Effect |
| **Eyes:** ☐ Closure ☐ Tears ☐ No Effect | **Chest:** ☐ Coughing ☐ Labored Breathing |
| **Nose:** ☐ Discharge ☐ Irritation ☐ No Effect | ☐ No Effect |

**35) POST INCIDENT OBSERVATION OF PHYSICAL AND MENTAL CONDITION OF SUBJECT**

A. Immediately Following Final Control Technique:

B. 15 Minutes Following Final Control Technique:

C. 30 Minutes Following Final Control Technique:

**36) NARRATIVE: (Tab for next line down. Do not push enter)**

**37) ☐ LESS LETHAL MUNITIONS IMPACT AREAS (Label with "LL")**

INDICATE IMPACT AREAS FOR LESS LETHAL MUNITIONS ON DIAGRAM

** BOXES # 15 THROUGH 20 REQUIRED FOR LESS LETHAL MUNITIONS DEPLOYMENT.

**38) EFFECT OF LESS LETHAL MUNITIONS**

| Effective? | Were Further Control Methods Needed? |
|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No |

Type of L.L projectile

Clear (CL), OC (OC), Taser (ECW) :

| Number of L.L. Rounds Deployed: | # Hits | # Misses |
|---|---|---|

| Approximate Distance from Subject: ft. | Number of L.L. Munitions Recovered and collected as evidence: |
|---|---|

Cover Officer Name and Number

Supervisor Taking Custody of L.L. System After Deployment:

| Supervisor | # | **ADDITIONAL REPORTS** ☐ Attached Addendum ☐ Investigative Report ☐ Supv. Report |
|---|---|---|

Docs Produced by Kenosha Co.
011634
Blake v. Kenosha Co., et al.

30) Reporting  Deputy                    #                        31) Supervisor                    #

Docs Produced by Kenosha Co.
011635
Blake v. Kenosha Co., et al.

# First Amendment Assemblies

## 430.1 PURPOSE AND SCOPE
This policy provides guidance for responding to public assemblies or demonstrations.

## 430.2 POLICY
The Kenosha County Sheriff's Department respects the rights of people to peaceably assemble. It is the policy of this Department not to unreasonably interfere with, harass, intimidate or discriminate against persons engaged in the lawful exercise of their rights, while also preserving the peace, protecting life and preventing the destruction of property.

## 430.3 GENERAL CONSIDERATIONS
Individuals or groups present on the public way, such as public facilities, streets or walkways, generally have the right to assemble, rally, demonstrate, protest or otherwise express their views and opinions through varying forms of communication, including the distribution of printed matter. These rights may be limited by laws or ordinances regulating such matters as the obstruction of individual or vehicle access or egress, trespass, noise, picketing, distribution of handbills and leafleting, loitering and disorderly conduct. However, deputies shall not take action or fail to take action based on the opinions being expressed.

Participant behavior during a demonstration or other public assembly can vary. This may include, but is not limited to:

- Lawful, constitutionally protected actions and speech.
- Civil disobedience (typically involving minor criminal acts).
- Rioting.

All of these behaviors may be present during the same event. Therefore, it is imperative that law enforcement actions are measured and appropriate for the behaviors deputies may encounter. This is particularly critical if force is being used. Adaptable strategies and tactics are essential. The purpose of a law enforcement presence at the scene of public assemblies and demonstrations should be to preserve the peace, to protect life and prevent the destruction of property.

Deputies should not:

(a) Engage in assembly or demonstration-related discussion with participants.

(b) Harass, confront or intimidate participants.

(c) Seize the cameras, cell phones or materials of participants or observers unless a deputy is placing a person under lawful arrest.

Supervisors should continually observe Department members under their commands to ensure that members' interaction with participants and their response to crowd dynamics is appropriate.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 21 of 32    Document 98-13

Docs Produced by Kenosha Co.
011636
Blake v. Kenosha Co., et al.

430.3.1  PHOTOGRAPHS AND VIDEO RECORDINGS

Photographs and video recording, when appropriate, can serve a number of purposes, including support of criminal prosecutions by documenting criminal acts; assistance in evaluating Department performance; serving as training material; recording the use of dispersal orders; and facilitating a response to allegations of improper law enforcement conduct.

Photographs and videos will not be used or retained for the sole purpose of collecting or maintaining information about the political, religious or social views of associations, or the activities of any individual, group, association, organization, corporation, business or partnership, unless such information directly relates to an investigation of criminal activities and there is reasonable suspicion that the subject of the information is involved in criminal conduct.

**430.4  UNPLANNED EVENTS**

When responding to an unplanned or spontaneous public gathering, the first responding deputy should conduct an assessment of conditions, including, but not limited to, the following:

- Location

- Number of participants

- Apparent purpose of the event

- Leadership (whether it is apparent and/or whether it is effective)

- Any initial indicators of unlawful or disruptive activity

- Indicators that lawful use of public facilities, streets or walkways will be impacted

- Ability and/or need to continue monitoring the incident

Initial assessment information should be promptly communicated to Dispatch, and the assignment of a supervisor should be requested. Additional resources should be requested as appropriate. The responding supervisor shall assume command of the incident until command is expressly assumed by another, and the assumption of command is communicated to the involved members. A clearly defined command structure that is consistent with the Incident Command System (ICS) should be established as resources are deployed.

**430.5  PLANNED EVENT PREPARATION**

For planned events, comprehensive, incident-specific operational plans should be developed. The ICS should be considered for such events. Planning for events may need to commence up to a year in advance of known event dates.

430.5.1  INFORMATION GATHERING AND ASSESSMENT

In order to properly assess the potential impact of a public assembly or demonstration on public safety and order, relevant information should be collected and vetted. This may include:

- Information obtained from outreach to group organizers or leaders.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 22 of 32    Document 98-13

Docs Produced by Kenosha Co.
011637
Blake v. Kenosha Co., et al.

- Information about past and potential unlawful conduct associated with the event or similar events.

- The potential time, duration, scope, and type of planned activities.

- Any other information related to the goal of providing a balanced response to criminal activity and the protection of public safety interests.

Information should be obtained in a transparent manner, and the sources documented. Relevant information should be communicated to the appropriate parties in a timely manner.

Information will be obtained in a lawful manner and will not be based solely on the purpose or content of the assembly or demonstration, or actual or perceived characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, economic status, age, cultural group, or disability of the participants (or any other characteristic that is unrelated to criminal conduct or the identification of a criminal subject).

### 430.5.2 OPERATIONAL PLANS
An operational planning team with responsibility for event planning and management should be established. The planning team should develop an operational plan for the event.

The operational plan will minimally provide for the following:

(a) Command assignments, chain of command structure, roles and responsibilities

(b) Staffing and resource allocation

(c) Management of criminal investigations

(d) Designation of uniform of the day and related safety equipment (e.g., helmets, shields)

(e) Deployment of specialized resources

(f) Event communications and interoperability in a multijurisdictional event

(g) Liaison with demonstration leaders and external agencies

(h) Liaison with County government and legal staff

(i) Media relations

(j) Logistics: food, fuel, replacement equipment, duty hours, relief and transportation

(k) Traffic management plans

(l) First aid and emergency medical service provider availability

(m) Prisoner transport and detention

(n) Review of policies regarding public assemblies and use of force in crowd control

(o) Parameters for declaring an unlawful assembly

(p) Arrest protocol, including management of mass arrests

(q) Protocol for recording information flow and decisions

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 23 of 32    Document 98-13

Docs Produced by Kenosha Co.
011638
Blake v. Kenosha Co., et al.

    (r)    Rules of engagement, including rules of conduct, protocols for field force extraction and arrests, and any authorization required for the use of force

    (s)    Protocol for handling complaints during the event

    (t)    Parameters for the use of body-worn cameras and other portable recording devices

### 430.5.3 MUTUAL AID AND EXTERNAL RESOURCES
The magnitude and anticipated duration of an event may necessitate interagency cooperation and coordination. The assigned Incident Commander should ensure that any required memorandums of understanding or other agreements are properly executed, and that any anticipated mutual aid is requested and facilitated (see the Outside Agency Assistance Policy).

### 430.6 UNLAWFUL ASSEMBLY DISPERSAL ORDERS
If a public gathering or demonstration remains peaceful and nonviolent, and there is no reasonably imminent threat to persons or property, the Incident Commander should generally authorize continued monitoring of the event.

Should the Incident Commander make a determination that public safety is presently or is about to be jeopardized, he/she or the authorized designee should attempt to verbally persuade event organizers or participants to disperse of their own accord. Warnings and advisements may be communicated through established communications links with leaders and/or participants or to the group.

When initial attempts at verbal persuasion are unsuccessful, the Incident Commander or the authorized designee should make a clear standardized announcement to the gathering that the event is an unlawful assembly, and should order the dispersal of the participants. The announcement should be communicated by whatever methods are reasonably available to ensure that the content of the message is clear and that it has been heard by the participants. The announcement should be amplified, made in different languages as appropriate, made from multiple locations in the affected area and documented by audio and video. The announcement should provide information about what law enforcement actions will take place if illegal behavior continues and should identify routes for egress. A reasonable time to disperse should be allowed following a dispersal order.

### 430.7 USE OF FORCE
Use of force is governed by current Department policy and applicable law (see the Use of Force, Handcuffing and Restraints, Control Devices and Techniques, and Conducted Energy Device policies).

Individuals refusing to comply with lawful orders (e.g., nonviolent refusal to disperse) should be given a clear verbal warning and a reasonable opportunity to comply. If an individual refuses to comply with lawful orders, the Incident Commander shall evaluate the type of resistance and adopt a reasonable response in order to accomplish the law enforcement mission (such as dispersal or arrest of those acting in violation of the law). Control devices should be considered only when the participants' conduct reasonably appears to present the potential to harm deputies, themselves

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP     Filed 04/15/25     Page 24 of 32     Document 98-13

Docs Produced by Kenosha Co.
011639
Blake v. Kenosha Co., et al.

or others, or will result in substantial property loss or damage. Any use of ECD must conform to the Electronic Control Devices Policy.

Force or control devices, including oleoresin capsaicin (OC), should be directed toward individuals and not toward groups or crowds, unless specific individuals cannot reasonably be targeted due to extreme circumstances, such as a riotous crowd.

Any use of force by a member of this Department shall be documented promptly, completely and accurately in an appropriate incident report. The type of report (e.g., Deputy Defensive Action Report, see attachment ) required may depend on the nature of the incident.

All use of force reports are internal department documents exclusively for administrative and training purposes, and will be completed in accordance with the Use of Force policy.

## 430.8 ARRESTS
The Kenosha County Sheriff's Department should respond to unlawful behavior in a manner that is consistent with the operational plan. If practicable, warnings or advisements should be communicated prior to arrest.

Mass arrests should be employed only when alternate tactics and strategies have been, or reasonably appear likely to be, unsuccessful. Mass arrests shall only be undertaken upon the order of the Incident Commander or the authorized designee. There must be probable cause for each arrest.

If employed, mass arrest protocols should fully integrate:

 (a) Reasonable measures to address the safety of deputies and arrestees.

 (b) Dedicated arrest, booking and report writing teams.

 (c) Timely access to medical care.

 (d) Timely access to legal resources.

 (e) Timely processing of arrestees.

 (f) Full accountability for arrestees and evidence.

 (g) Coordination and cooperation with the prosecuting authority, jail and courts (see Citation Releases Policy).

## 430.9 MEDIA RELATIONS
The Public Information Officer should use all available avenues of communication, including press releases, briefings, press conferences and social media to maintain open channels of communication with media representatives and the public about the status and progress of the event, taking all opportunities to reassure the public about the professional management of the event (see the Media Relations Policy).

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP Filed 04/15/25 Page 25 of 32 Document 98-13

Docs Produced by Kenosha Co.
011640
Blake v. Kenosha Co., et al.

## 430.10  DEMOBILIZATION
When appropriate, the Incident Commander or the authorized designee should implement a phased and orderly withdrawal of law enforcement resources. All relieved personnel should promptly complete any required reports, including use of force reports, and account for all issued equipment and vehicles to their supervisors prior to returning to normal operational duties.

## 430.11  POST EVENT
The Incident Commander should designate a member to assemble full documentation of the event, to include the following:

(a)  Operational plan

(b)  Any incident logs

(c)  Any assignment logs

(d)  Vehicle, fuel, equipment and supply records

(e)  Incident, arrest, use of force, injury and property damage reports

(f)  Photographs, audio/video recordings, Dispatch records/tapes

(g)  Media accounts (print and broadcast media)

### 430.11.1  AFTER-ACTION REPORTING
The Incident Commander should work with County legal counsel, as appropriate, to prepare a comprehensive after-action report of the event, explaining all incidents where force was used including the following:

(a)  Date, time and description of the event

(b)  Actions taken and outcomes (e.g., injuries, property damage, arrests)

(c)  Problems identified

(d)  Significant events

(e)  Recommendations for improvement; opportunities for training should be documented in a generic manner, without identifying individuals or specific incidents, facts or circumstances.

## 430.12  TRAINING
Department members should receive periodic training regarding this policy, as well as the dynamics of crowd control and incident management. The Department should, when practicable, train with its external and mutual aid partners.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 26 of 32   Document 98-13

Docs Produced by Kenosha Co.
011641
Blake v. Kenosha Co., et al.

# Temporary Custody of Adults

## 900.1 PURPOSE AND SCOPE

This policy provides guidelines to address the health and safety of adults taken into temporary custody by members of the Kenosha County Sheriff's Department for processing prior to being released or transferred to a housing or other type of facility.

Temporary custody of juveniles is addressed in the Temporary Custody of Juveniles Policy. Juveniles will not be permitted where adults are in custody are being held.

Custodial searches are addressed in the Custodial Searches Policy.

### 900.1.1 DEFINITIONS

Definitions related to this policy include:

**Holding cell/cell** - Any locked enclosure for the custody of an adult or any other enclosure that prevents the occupants from being directly visually monitored at all times by a member of the Department.

**Temporary custody** - The time period an adult is in custody at the Kenosha County Sheriff's Department prior to being released or transported to a housing or other type of facility.

## 900.2 POLICY

The Kenosha County Sheriff's Department is committed to releasing adults from temporary custody as soon as reasonably practicable, and to keeping adults safe while in temporary custody at the Department. Adults should be in temporary custody only for as long as reasonably necessary for investigation, processing, transfer or release.

## 900.3 GENERAL CRITERIA AND SUPERVISION

No adult should be in temporary custody for longer than four hours (Wis. Admin. Code § DOC 349.06).

### 900.3.1 INDIVIDUALS WHO SHOULD NOT BE IN TEMPORARY CUSTODY

Individuals who exhibit certain behaviors or conditions should not be in temporary custody at the Kenosha County Sheriff's Department, but should be transported to the jail facility, a medical facility or other type of facility as appropriate. These include:

(a) Any individual who is unconscious or has been unconscious while being taken into custody or while being transported.

(b) Any individual who has a medical condition, including pregnancy, or who may require medical attention, supervision or medication while in temporary custody.

(c) Any individual who is seriously injured.

(d) Individuals who are a suspected suicide risk (see the Emergency Detentions Policy).

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 27 of 32    Document 98-13    Docs Produced by Kenosha Co.
011642
Blake v. Kenosha Co., et al.

1. If the deputy taking custody of an individual believes that he/she may be a suicide risk, the deputy shall ensure continuous direct supervision until evaluation, release or a transfer to an appropriate facility is completed.

(e) Individuals who are obviously in crisis, as defined in the Crisis Intervention Incidents Policy.

(f) Individuals who are under the influence of alcohol, a controlled substance or any substance to the degree that may require medical attention, or who have ingested any substance that poses a significant risk to their health, whether or not they appear intoxicated.

(g) Any individual who has exhibited extremely violent or continuously violent behavior. Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple deputies to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Deputies who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

(h) Any individual who has claimed, is known to be afflicted with, or displays symptoms of any communicable disease that poses an unreasonable exposure risk.

(i) Any individual with a prosthetic or orthopedic device where removal of the device would be injurious to his/her health or safety.

Deputies taking custody of a person who exhibits any of the above conditions should notify a supervisor of the situation. These individuals should not be in temporary custody at the Department unless they have been evaluated by a qualified medical or mental health professional, as appropriate for the circumstances.

## 900.3.2   ENTRY RESTRICTIONS
Entry into any location where a person is held in custody should be restricted to:

(a) Authorized members entering for official business purposes.

(b) Emergency medical personnel when necessary.

(c) Any other person authorized by the Shift Commander.

When practicable, more than one authorized member should be present for entry into a location where a person is held in custody for security purposes and to witness interactions.

## 900.4   SAFETY, HEALTH AND OTHER PROVISIONS

## 900.4.1   FIREARMS AND OTHER SECURITY MEASURES
Firearms and other weapons and control devices shall not be permitted in secure areas where individuals are in custody or are processed. They should be properly secured outside of the secure area. An exception may occur only during emergencies, upon approval of a supervisor.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Docs Produced by Kenosha Co.
011643
Blake v. Kenosha Co., et al.

All perimeter doors to secure areas shall be kept locked at all times, except during routine cleaning, when no individuals in custody are present or in the event of an emergency, such as an evacuation.

## 900.5 SECURING TO FIXED OBJECTS

When a holding cell is not readily available, or as otherwise authorized by a supervisor, handcuffing one hand of an individual to a stationary object may be used as a means of temporary detention. An employee should be present at all times to ensure the individual's safety while secured to a stationary object. The stationary object must be designed and intended for such use.

Generally, individuals should not be secured to a stationary object for more than 60 minutes.

Supervisor approval should be obtained before securing an individual to a stationary object for longer than 60 minutes and every 30 minutes thereafter. Supervisor approval should be documented.

## 900.6 TRANSFER

When an individual is transferred from custody, the member transferring the individual should ensure the following:

    (a)    All proper reports, forms and logs have been completed prior to release.

    (b)    A check has been made to ensure that the individual is not reported as missing and does not have outstanding warrants.

    (c)    It has been confirmed that the correct individual is being transported.

    (d)    All property, except evidence, contraband or dangerous weapons, has been returned to, or sent with, the individual, if applicable.

    (e)    All pertinent documentation accompanies the individual being transported to another facility (e.g., copies of booking forms, medical records, an itemized list of his/her property, warrant copies).

    (f)    The individual is not permitted in any nonpublic areas of the Kenosha County Sheriff's Department unless escorted by a member of the Department.

    (g)    Any known threat or danger the individual may pose (e.g., escape risk, suicide potential, medical condition) is documented, and the documentation transported with the individual if he/she is being sent to another facility.

        1.    The deputy transporting the individual shall ensure such risks are communicated to intake personnel at the other facility.

    (h)    Generally, persons of the opposite sex, or adults and juveniles, should not be transported in the same vehicle unless they are physically separated by a solid barrier. If segregating individuals is not practicable, deputies should be alert to inappropriate physical or verbal contact and take appropriate action as necessary.

    (i)    Transfers between facilities or other entities, such as a hospital, should be accomplished with a custodial escort of the same sex as the person being transferred to assist with his/her personal needs as reasonable.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 29 of 32   Document 98-13

Docs Produced by Kenosha Co.
011644
Blake v. Kenosha Co., et al.

(j)  Documentation confirming the transfer of custody of an individual to another facility or entity shall be provided to the receiving entity. Written acknowledgement of receipt of custody of an individual shall be obtained from the receiving entity. All documentation of the transfer of custody of any individual should be retained in the individual's file.

(k)  All safety procedures designated by the receiving entity shall be followed by the transporting deputy.

## 900.7  TRAINING
Department members should be trained and familiar with this policy and any supplemental procedures.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 30 of 32    Document 98-13

Docs Produced by Kenosha Co.
011645
Blake v. Kenosha Co., et al.

# Custodial Searches

### 901.1 PURPOSE AND SCOPE

This policy provides guidance regarding searches of individuals in custody. Such searches are necessary to eliminate the introduction of contraband, intoxicants or weapons into the Kenosha County Sheriff's Department facility. Such items can pose a serious risk to the safety and security of Department members, individuals in custody, contractors and the public.

Nothing in this policy is intended to prohibit the otherwise lawful collection of evidence from an individual in custody.

### 901.1.1 DEFINITIONS

Definitions related to this policy include:

**Custody search** - An in-custody search of an individual and of his/her property, shoes and clothing, including pockets, cuffs and folds on the clothing, to remove all weapons, dangerous items and contraband.

### 901.2 POLICY

All searches shall be conducted with concern for safety, dignity, courtesy, respect for privacy and hygiene, and in compliance with policy and law to protect the rights of those who are subject to any search.

Searches shall not be used for intimidation, harassment, punishment or retaliation.

### 901.3 FIELD AND TRANSPORTATION SEARCHES

A deputy should conduct a custody search of an individual immediately after his/her arrest, when receiving an individual from the custody of another, and before transporting a person who is in custody in any Department vehicle.

Whenever practicable, a custody search should be conducted by a deputy of the same sex as the person being searched. If a deputy of the same sex is not reasonably available, a witnessing deputy should be present during the search.

### 901.4 SEARCHES OF PERSONS WITH PHYSICAL DISABILITIES

A search of a person who requires an assistive device for mobility including, but not limited to, a wheelchair, brace, crutch or artificial limb shall be conducted in a careful manner. If the search of a physically disabled person requires the removal of an assistive device or involves a person lacking sensation in some portion of his/her body, the search shall be conducted with extreme care by a member who has had training in handling physically disabled persons (Wis. Stat. § 968.256(2)).

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 31 of 32    Document 98-13    Docs Produced by Kenosha Co. 011646

Blake v. Kenosha Co., et al.

# Bond Requirements and Modifications

### 903.1 PURPOSE AND SCOPE
To provide a guideline for release without bond procedures and establish a procedure for modifying bonds during hours that a court is not in session, for bonds previously set by a court.

### 903.2 BOND REQUIREMENTS
All persons arrested on felony charges shall be held for court appearance unless bond, as set by a judge or commissioner, has been posted. Authorization for the bond must be received in writing before being honored.

All persons not released pursuant to forfeiture or misdemeanor shall be released upon compliance with the State Deposit or Misdemeanor Bail Schedules, unless bail is otherwise set by a court.

The officers written report shall indicate the specific reason(s) why the offender did not qualify for released under this policy.

### 903.3 BOND MODIFICATIONS

(a) Misdemeanor - State Statute

1. Persons arrested for a violation of a State Statute, for which the penalty is a fine and/or confinement in the County Jail for a term of less than one year, shall be released without bond if they meet the provisions of this policy. If they are not eligible for release underthis policy, they shall be held for a court appearance unless a cash bond, as shown in the current Misdemeanor Bail Bond Schedule, is posted.

(b) Felony - State Statute

1. Persons arrested for a violation of a State Statute, for which the penalty is imprisonment in a Wisconsin State Prison, shall be held for a court appearance until a bond that has been set by a court has been posted. The bond may only be set by a judge or court commissioner, and must be received in writing before being honored. It may be endorsed on the face of the warrant, set at the time the defendant makes his/her court appearance, or set by a judge or court commissioner outside of regular proceedmgs.

### 903.4 COURT LATITUDE
The court has wide latitude in setting and modifying bond. This can be done at any time day or night, by a Judge or a Court Commissioner.

Copyright Lexipol, LLC 2021/03/09, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 32 of 32    Document 98-13

Docs Produced by Kenosha Co.
011647
Blake v. Kenosha Co., et al.