# Response to Resistance and Aggression

## 511.1  PURPOSE AND SCOPE

This policy provides guidelines on the reasonable response to resistance and aggression. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every custody officer and custody supervisor is expected to use these guidelines to make such decisions in a professional, impartial, and reasonable manner.

In addition to those methods, techniques, and tools set forth below, the guidelines for the reasonable application of force contained in this policy shall apply to all policies addressing the potential use of force, including but not limited to the, Conducted Energy Weapon and Use of Restraints. (Wis. Admin. Code § DOC 350.22).

### 511.1.1  RATIONALE FOR THE RESPONSE TO RESISTANCE AND AGGRESSION

Officers are authorized to use physical force to accomplish legitimate correctional objectives including ensuring safety and security and maintaining order and control. Examples of legitimate objectives for the response to resistance and aggression are - but not limited to:

1. To gain control of a resistive or combative inmate;

2. To defend oneself from physical assault;

3. To defend others (e.g., other officers, inmates and visitors) from physical or sexual assault;

4. To prevent inmates from escaping;

5. To move an unwilling inmate from one location to another;

6. To prevent an inmate from harming him/herself;

7. To prevent the destruction of property.

Staff may only use the minimum amount of force reasonably necessary to achieve the objective for which force is used.

The response to resistance and aggression is not authorized as a form of discipline.

### 511.1.2  DEFINITIONS

Definitions related to this policy include:

**Deadly force** - The intentional use of a firearm or other instrument that creates a high probability of death or great bodily harm.

**Feasible** - Reasonably capable of being done or carried out under the circumstances to successfully achieve the lawful objective without increasing risk to the officer or another person.

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

Blake, Justin v. Kenosha County
000132

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 1 of 13   Document 98-20

**Force team technique** - The force team technique ordinarily involves trained officers clothed in protective gear who enter the inmate's area in tandem, each with a specific task, to achieve immediate control of the inmate.

**Imminent** - Ready to take place; impending. Note that imminent does not mean immediate or instantaneous.

**Totality of the Circumstances** - All facts and circumstances known to the officer at the time, taken as a whole, including the conduct of the officer and the individual leading up to the use of force.

## 511.2  POLICY
The use of force is a matter of critical concern, both to the public and to the public safety community. Officers are involved daily in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Officers must understand and have a true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance and aggression while engaged in the performance of public safety duties.

The Kenosha County Sheriff's Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation, and a careful balancing of all interests.

## 511.3  USE OF FORCE
Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate government purpose as to gain control of the individual; protect and ensure the safety of inmates, members, and others; prevent serious property damage; prevent escape; obtain compliance with facility rules and member orders; and ensure the institution's security and good order.

The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain, and rapidly evolving.

Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident.

It is also recognized that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the tools, weapons, or methods provided by this department. Officers may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised

Blake, Justin v. Kenosha County
000133

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 2 of 13    Document 98-20

device or method must nonetheless be reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate government purpose.

While the ultimate objective of every encounter is to avoid or minimize injury, nothing in this policy requires an officer to retreat or be exposed to possible physical injury before applying reasonable force.

Force shall never be used as punishment (Wis. Stat. § 302.08).

### 511.3.1 FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit. These factors include but are not limited to:

(a) Immediacy and severity of the threat to officers or others.

(b) The conduct of the individual being confronted, as reasonably perceived by the officer at the time.

(c) Officer/individual factors (e.g., age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, and/or the number of officers available vs. individuals).

(d) The effects of suspected drug or alcohol use.

(e) The individual's mental state or capacity.

(f) The individual's ability to understand and comply with officers commands.

(g) The proximity of weapons or dangerous improvised devices.

(h) The degree to which the individual has been effectively restrained and his/her ability to resist despite being restrained.

(i) The availability of other reasonable and feasible options and their possible effectiveness.

(j) The seriousness of the suspected offense or reason for contact with the individual.

(k) The training and experience of the officer.

(l) The potential for injury to officers, inmates, and others.

(m) Whether the individual appears to be resisting or is attacking the officer.

(n) The risk and reasonably foreseeable consequences of escape.

(o) The apparent need for immediate control of the individual or a prompt resolution of the situation to maintain or restore order.

(p) Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

(q) Prior contacts with the individual or awareness of any propensity for violence, and

(r) Any other exigent circumstances.

Blake, Justin v. Kenosha County
000134

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 3 of 13    Document 98-20

## 511.3.2 ALTERNATIVE TACTICS - DE-ESCALATION

When circumstances reasonably permit, officers should use nonviolent strategies and techniques to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance (e.g., summoning additional resources, formulating a plan, attempting verbal persuasion).

## 511.3.3 DUTY TO INTERVENE AND REPORT

- Any correctional officer or supervisor shall, without regard for chain of command, intervene to prevent or stop another staff member or other person from using force contrary to this policy in the course of that officer's or supervisor's official duties if all of the following apply:
    - The officer or supervisor observes the use of force that does not comply with the standards of this policy.
    - The circumstances are such that it is safe for the officer or supervisor to intervene.
- Any on-duty correctional officer or supervisor who, in the course of his or her official duties, witnesses another correctional officer, supervisor, or law enforcement officer use force that does not comply with the standards of this policy, shall report the noncompliant use of force to his or her immediate supervisor as soon as practicable after the occurrence of the use of such force.
    - If the officer's immediate supervisor is involved in the noncompliant use of force, the report shall be submitted directly to a non-involved supervisor of higher rank.
    - If multiple officers and/or supervisors witness the noncompliant action, each (witnessing) officer and/or supervisor has the duty to report the noncompliant use of force.
    - Failure to report a noncompliant use of force as required in this policy may result in corrective disciplinary action, up to and including suspension of duty without pay or termination of employment.
    - The requirement to report does not apply to an officer who learns about an event that he or she did not personally witness.
- If the noncompliant use of force was undertaken by a member of any agency other than the Kenosha County Sheriff's Department, supervision shall be responsible to notify that agency, both verbally and in writing, as soon as practicable.
- The required reporting of a noncompliant use of force incident shall be submitted directly to the appropriate supervisor in a written format, separate from any reports the officer would normally file.
    - Officers are required to detail their personal observations regarding the incident, <u>and</u> must identify what action(s) constituted a noncompliant use of force.

Blake, Justin v. Kenosha County
000135

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 4 of 13   Document 98-20

### 511.3.4   PERSPECTIVE

When observing or reporting force used by a law enforcement officer, each officer should consider the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject.

### 511.3.5   PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed departmentapproved training. Officers utilizing any pain compliance technique should consider:

    (a)    The degree to which the application of the technique may be controlled given the level of resistance.

    (b)    Whether the individual can comply with the direction or orders of the officer.

    (c)    Whether the individual has been given enough opportunity to comply.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

### 511.3.6   RESPIRATORY RESTRAINTS

The use of a choke hold, which is the intentional and prolonged application of force to the throat or windpipe, is limited to circumstances where deadly force is authorized and if applied, is subject to the same guidelines and requirements as a carotid control hold (Wis. Stat. § 66.0511).

In some circumstances, you may end up applying a force tactic that you were never trained to do.  While it is certainly preferable always to use trained techniques, there may be times when a non-trained technique is justifiable. For example, if a jail officer is being assaulted by a group of inmates, that officer may have to use any available object, such as a radio or a flashlight or a piece of furniture, to defend himself or herself.  Use of such objects is not trained in POSC, but the officer's use of them might be legally justified because he or she was acting in self-defense and a tactical evaluation dictated a level or amount of force that was not available via trained technique.

### 511.3.7   USE OF FORCE TO SEIZE EVIDENCE

In general, officers may use reasonable force to lawfully seize and/or prevent the destruction or disposal of evidence. However, officers shall not use force to prevent a person from swallowing evidence or contraband. The intentional use of any technique that restricts blood flow to the head, restricts respiration, or creates a reasonable likelihood that blood flow to the head or respiration would be restricted, is strictly prohibited. Officers should only use techniques and methods taught by the department.

## 511.4   USE OF OTHER WEAPONS, TOOLS, AND CHEMICAL AGENTS ON INMATES

To ensure the safe, efficient and effective operation of both the PTF and the KCDC, the Department may require the periodic deployment of specialty weapons, tools, and chemical agents. This implementation is listed in the subsections below.

Blake, Justin v. Kenosha County
000136

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 5 of 13   Document 98-20

## 511.4.1 ELECTRONIC CONTROL DEVICES

The CEW(i.e., TASER)is intended to control a violent or potentially violent inmate while minimizing the risk of serious injury. It is anticipated that the appropriate use of such a device should result in fewer serious injuries to custody staff and inmates.

Only authorized on-duty staff who have completed department-approved training may be issued and carry aCEW for use during their current assignment. Staff who have been issued aCEW shall only use the device consistent with this policy and the Electronic Control Device Policy.

For other information regarding ECD, see Custody Policy Manual Electronic Control Device.

## 511.4.1 ELECTRONIC RESTRAINT DEVICES (ECD)

The use of the Band-It Electronic Restraint Device shall only be utilized by authorized (sworn) department personnel in accordance with the Department's Law Enforcement Electronic Restraints Policy. The Band-It Electronic Restraint Device may only be utilized in approved circumstances (e.g., high-risk inmate court appearances or transports). Although the device will be maintained in the KSD Conveyance Bureau, it may be placed onto and/or removed from inmates within the secure perimeter of the PTF or KCDC. Correctional officers will provide security assistance as appropriate.

## 511.4.2 OLEORESIN CAPSICUM AEROSOL (OC)

Chemical Agents shall only be used in the facility as authorized by the Captain of Detentions or the authorized designee and in accordance with the Department's policy. Oleoresin capsicum should not be used in the medical unit or other designated areas where inmates are assigned to respiratory isolation or on any inmate who is under control with or without restraints.

Department-approved OC spray or other approved delivery system may be possessed and used only by staff members who have successfully completed the State of Wisconsin LESB jail academy and received department-authorized training in its use. Individually issued OC spray canisters shall be carried in the issued holster on the equipment belt of officers.

Inmates who have been affected by the use of chemical agents shall be promptly provided with the proper solution to decontaminate the affected areas. Officers should promptly summon Health Services Unit (HSU) personnel to examine an inmate if he/she experiences medical difficulties after being exposed to OC spray, or during the decontamination process.

If the inmate refuses to decontaminate, such refusal shall be documented. If an inmate has been exposed in a cell and not removed from the cell where the exposure occurred, in-cell decontamination shall be afforded to the inmate, including:

(a) Health-trained custody member advising the inmate how to decontaminate in the cell.

(b) Clean clothing if the inmate's clothing was contaminated, and bedding if appropriate.

(c) Monitoring of the in-cell inmate at least every 15 minutes on an irregular schedule, for a period of not less than 45 minutes, by health-trained custody member.

Blake, Justin v. Kenosha County
000137

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 6 of 13    Document 98-20

### 511.4.3 PEPPERBALL (PROJECTILE) OC DELIVERY SYSTEM

Pepper projectile systems are plastic spheres filled with a derivative of OC powder. A compressed gas launcher delivers the projectiles with enough force to burst the projectiles on impact, releasing the OC powder. The potential exists for the projectiles to inflict injury if they strike the head, neck, spine, or groin. Therefore, personnel deploying the pepper projectile system should not intentionally target those areas except when the officer reasonably believes the inmate may cause serious bodily injury or death to the officer or others. The use of the pepper projectile system is subject to the following requirements:

(a) Department-approved projectile chemical agents may only be used by officers who have received department-authorized training in their use.

(b) Officers encountering a situation that requires the use of the pepper projectile system shall notify a supervisor as soon as practicable. The supervisor shall respond to all such deployments. The supervisor shall ensure that all notifications and reports are completed as required by this policy.

Each deployment of a pepper projectile system shall be documented and, if reasonably practicable, recorded on video. This includes situations where the launcher was directed toward the inmate, regardless of whether the launcher was used. Only non-incident deployments are exempt from the reporting requirement (e.g., training and product demonstrations).

### 511.4.4 IMPACT WEAPONS

The need to immediately incapacitate the inmate must be weighed against the risk of causing serious injury or death. The head and neck should not be intentionally targeted with an impact weapon, except when the officer reasonably believes the inmate may cause serious bodily injury or death to the officer or others. Note: Impact weapons are not issued as a regular part of uniform equipment. They are deployed situationally as necessary.

### 511.5 IMMEDIATE AND CALCULATED USE OF FORCE

An immediate use of force occurs when force is used to respond without delay to a situation or circumstance that constitutes an imminent threat to security or safety. For example, the immediate or unplanned use of force by an officer may be necessary to stop an inmate from inflicting life-threatening injuries to him/herself or to stop an assault on any other person, including other inmates. The destruction of government property may require the immediate use of force by an officer in some circumstances. A verbal warning should be given before an immediate use of force unless the circumstances preclude it.

Calculated Use of Force is feasible and preferred in most cases even if the inmate is verbalizing threats or brandishing a weapon, provided staff sees no immediate danger of the inmate causing harm to him/herself or others, or the destruction of property.

If there is no need for immediate action, officers should attempt to resolve the situation through voluntary compliance or, if it reasonably appears necessary, the calculated use of force. A calculated use of force is called for when an inmate's presence or conduct poses a threat to safety

Blake, Justin v. Kenosha County
000138

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP    Filed 04/15/25    Page 7 of 13    Document 98-20

or security and the inmate is located in an area that can be controlled or isolated, or when time and circumstances permit advance planning, staffing, and organization.

The assistance of available non-custodial members (e.g., psychologistsor counselors) should be considered when attempting to resolve a situation without confrontation.

A supervisor shall be present in any situation involving the calculated use of force. The supervisor shall notify the respective Facility Administrator and if appropriate, a CERT Team Commander for approval and consultation prior to any calculated use of force action.

## 511.5.1 CONFRONTATION AVOIDANCE PROCEDURES

Prior to any calculated use of force, the supervisor shall confer with the appropriate persons to gather pertinent information about the inmate and the immediate situation. Based on the supervisor's assessment of the available information, the supervisor should direct the officers to attempt to obtain the inmate's voluntary cooperation and consider other available options before determining whether force is necessary.

The supervisor should consider including the following persons and resources in the process:

    (a)    Mental health specialist

    (b)    Qualified health care professional

    (c)    Chaplain

    (d)    Department Joint Services Records

    (e)    Any other relevant resources

Regardless of whether discussions with any of the above resources are accomplished by telephone or in person, the purpose is to gather information to assist in developing a plan of action, such as the inmate's medical/mental history (e.g., asthma or other breathing-related illness, hypoglycemia, diabetes), any recent incident reports, or situations that may be contributing to the inmate's present condition (e.g., pending criminal prosecution or sentencing, recent death of a loved one, divorce). The assessment should include discussions with members who are familiar with the inmate's background or present status. This may provide insight into the cause of the inmate's immediate agitation. It also may identify other members who have a rapport with the inmate, and could possibly resolve the incident peacefully, without the use of force.

If force is determined to be necessary and other means of gaining control of an inmate are deemed inappropriate or ineffective, then the force team technique should be used to control the inmate and to apply restraints, if required.

Consideration should also be given to preventing exposure to communicable diseases in calculated use of force situations, and to ensuring that medical services personnel are available.

## 511.6 REPORTING THE USE OF FORCE

Every member use of force is an incident that shall be reported on the appropriate report form (Wis. Admin. Code § DOC 350.22(2)).

Blake, Justin v. Kenosha County
000139

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's
Department

Case 2:22-cv-00970-PP   Filed 04/15/25   Page 8 of 13   Document 98-20

The documentation will reflect the actions and responses of each member participating in the incident, as witnessed by the reporting member.

The report should include:

(a) A clear, detailed description of the incident, including any application of weapons or restraints.

(b) The identity of all involved in the incident (e.g., inmates, members, and others).

(c) The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances.

(d) Efforts made to temper the severity of a forceful response, and if there were none, the reasons why.

(e) Description of any injuries to anyone involved in the incident, including the result of any medical checks that show the presence or absence of injury.

Any member directly observing the incident shall make a verbal report to a supervisor as soon as practicable and include as much of the aforementioned information as is known by the member.

Members shall submit the appropriate documentation prior to going off-duty, unless directed otherwise by a supervisor.

A video recording is required for all calculated use of force incidents and should include the introduction of all members participating in the process. The recording and documentation will be part of the investigation package. The supervisor should ensure the recording is properly processed for retention and a copy is forwarded with the report to the Captain of Detentions within three working days.

The supervisor responsible for gathering the reports may allow a reasonable delay in preparation of a report in consideration of the immediate psychological and/or physical condition of the involved member.

The Shift Commander shall promptly notify the Captain of Detentions of any incident involving a member employing deadly force, or any incident where a death or serious bodily injury may have been caused by a member.

### 511.6.1 USE OF FORCE DATA COLLECTION

(a) To collect data for purposes of training, resource allocation, analysis, and related purposes, the Department may require the completion of additional report forms, as specified in Department policy, procedure, or the law. The Use of Force form shall be completed in the designated electronic tracking system (BlueTeam). A Use of Force form will be completed in all use of force incidents as indicated below:

(b) A Use of Force form shall be completed if the following recordable use of force incidents occur:

(a) Takedowns

Blake, Justin v. Kenosha County
000140

Case 2:22-cv-00870-PP    Filed 04/15/25    Page 9 of 13    Document 98-20

   (b) Active Countermeasures

   (c) Passive Countermeasures

   (d) Compliance Holds

   (e) Pressure Point Techniques

   (f) Incapacitating Techniques

   (g) OC Spray

   (h) Impact Weapons

   (i) Less Lethal Projectiles

   (j) ECD Deployments

   (k) K-9 Apprehensions

   (l) Multiple Officer "Emergency" Handcuffing

   (m) Placement of an inmate into an Emergency Restraint Chair involving the use of force

   (n) Use of Deadly Force

  (c) A Use of Force form is not required for the following:

   (a) Escort Holds

   (b) Handcuffing

## 511.6.2 REPORTING TO WISCONSIN DEPARTMENT OF JUSTICE

Statistical data regarding all qualifying use of force incidents is to be reported to the Wisconsin Department of Justice as required by Wis. Stat. § 165.845. For the purposes of this section, a qualifying use of force incident means any incident (Wis. Stat. § 165.845):

  (a) Involving the discharge of a firearm by a Correctional Officer/ a Direct Supervision Officer at or in the direction of a civilian.

  (b) Involving the discharge of a firearm by a civilian at or in the direction of a Correctional Officer/ a Direct Supervision Officer.

  (c) Involving any action taken by a Correctional Officer/ a Direct Supervision Officer in response to an act of resistance that results in great bodily harm or death (Wis. Stat. § 939.22).

  (d) Involving an act of resistance taken by a civilian against a Correctional Officer/ a Direct Supervision Officer that results in great bodily harm or death.

## 511.7 SUPERVISOR RESPONSIBILITIES

A supervisor should respond to a reported application of force resulting in visible injury, if reasonably available. When a supervisor is able to respond to an incident in which there has been a reported use of force, the supervisor is expected to:

Blake, Justin v. Kenosha County
000141

Case 2:22-cv-00970-BHL Filed 04/15/25 Page 10 of 13 Document 98-20

    (a)    Ensure a crime scene is established to preserve and protect evidence, if appropriate.

    (b)    Ensure that the chain of command is notified and that all necessary health and safety and security measures are initiated.

    (c)    Obtain the basic facts from the involved members. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

    (d)    Ensure that the appropriate investigation authority is notified, if appropriate.

    (e)    Ensure that any inmatesinvolved in a use of force situation are examined by medical staff, regardless of whether any injuries are reported or detectable, and afforded medical treatment as appropriate.

    (f)    Identify any witnesses not already included in related reports.

    (g)    Review and approve all related reports.

    (h)    If at any time a department staff member(s) receives a notice of claim regarding civil litiagation, the respective Facility Administrator, Captain of Detentions, Captain of Administration, Chief Deputy, and Sheriff will be promptly notified. The actual notice of claim will be promptly forwarded to Corporation Counsel by department administration. Staff members will <u>not</u> independently respond to any notice of claim, unless advised to do so by Corporation Counsel.

    (i)    Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy noncompliance or if for any reason further investigation may be appropriate.

If a supervisor is unable to respond to the scene of an incident involving a reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

## 511.8   USE OF DEADLY FORCE

Use of deadly force is justified in the following circumstances involving imminent threat or imminent risk:

    (a)    The use of any means or instrumentality intended to or likely to cause death. An officer may use deadly force when he/she believes it is necessary to prevent death or great bodily harm to him/herself or to others. Therefore, the justification for deadly force is the immediate threat of death or great bodily harm, but the application of deadly force is that action which is likely to cause death.

    (b)    Correctional Officer/ Direct Supervision Officer Correctional Officer/ Direct Supervision Officer

Imminent does not mean immediate or instantaneous. An imminent danger may exist even if the individual is not at that very moment pointing a weapon at someone. For example, an imminent danger may exist if an officer reasonably believes the individual has a weapon or is attempting to access one and it is reasonable to believe the individual intends to use it against the officer or

Blake, Justin v. Kenosha County
000142

another person. An imminent danger may also exist if the individual is capable of causing serious bodily injury or death without a weapon and the officer believes the individual intends to do so.

For a subject's threat to be considered imminent, it must meet all three of the following criteria:

    (a)    Intent

    (b)    Weapon

    (c)    Delivery System

**IMMINIMENT**: About to happen, occur, or take place very soon, especially of something which won't last long.

**IMMEDIATE**: Happening right away, instantly, with no delay.

### 511.8.1 FIREARMS

The use of firearms is not trained in the POSC system. As a result jail and detention officers are not trained in the application of any deadly force tactics. If firearms are used in a detention facility, it would generally be in the context of a response by a trained, specialized law enforcement team (e.g., Tactical Response Team)

### 511.9 USE OF FORCE REVIEW

The Shift Commander shall review all related reports of use of force incidents occurring on his/her command. The review is to determine whether the use of force was in compliance with policy, procedure, and applicable law, and to determine if follow-up action or investigation is necessary. The Shift Commander should also ensure that a review packet containing a copy of all pertinent reports and materials is prepared in Blue Team and forwarded to the Shift Commander, Facility Administrator, and Captain of Detentions.

### 511.10 TRAINING

The Captain of Detentions shall work with the Training Sergeant to ensure legal and facility training mandates are met. This training shall include the following:

    (a)    Use of force

    (b)    Weapons training

    (c)    Self-defense

    (d)    Confrontation avoidance procedures:

        1.    Communication techniques

        2.    De-escalation techniques

        3.    Dealing with the mentally ill

        4.    Application of restraints

    (e)    Forced cell extraction techniques

    (f)    Force team techniques

Blake, Justin v. Kenosha County
000143

Copyright Lexipol, LLC 2022/04/27, All Rights Reserved.
Published with permission by Kenosha County Sheriff's Department

(g)     General restraint training (soft and hard restraints)

(h)     Reporting procedures

## 511.10.1   TRAINING FOR CONTROL DEVICES

The Training Sergeant shall ensure that all personnel who are authorized to carry a control device have been properly trained and certified to carry the specific control device and are retrained or recertified, as necessary.

(a)     Proficiency training shall be monitored and documented by a certified, control-device weapons or tactics instructor.

(b)     All training and proficiency for control devices will be documented in the respective officer's training file.

(c)     Officers who fail to demonstrate proficiency with the control device or knowledge of this policy will be restricted from carrying the control device until demonstrating proficiency. If an officer cannot demonstrate proficiency with a control device or knowledge of this policy after remedial training, the officer may be subject to discipline.

## 511.10.2   PERIODIC TRAINING

Supervisors should conduct and document regular periodic briefings concerning this policy and the storage and use of weapons and control devices. Any test sheets or documentation of performance should be forwarded to the Training Sergeant to be included in the officer's training file.

## 511.11   POLICY AVAILABILITY

The Department shall make this policy publicly available on its website. If the policy or standard is changed, the Department shall ensure the website displays the updated policy or standard as soon as practically possible, but no later than one year after the change is made. The Department shall also prominently display a means of requesting a copy of the policy or standard. If a person requests a copy of the policy or standard, the Department shall provide a copy of the current policy or standard, free of charge, as soon as practically possible, but no later than three business days after the request is made.

Blake, Justin v. Kenosha County
000144

Case 2:22-cv-00920-BP   Filed 04/15/25   Page 13 of 13   Document 98-20