IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JUSTIN BLAKE,

    Plaintiff,

    v.                                             Case No. 22-CV-970

DAVID BETH in his individual capacity and official
capacity,
COUNTY OF KENOSHA a municipal corporation,
KYLE BISSONNETTE in his official capacity,
JACOB DiCELLO in his official capacity,
GLORIA GALVAN in her official capacity,
DEREEMEYUN HAYNES in his official capacity
JEREMY MAY in his official capacity,
JESSICA BERGMANN in her individual and official capacity,
VISITING NURSE CARE, INC.,
KENOSHA VISITING NURSE ASSOCIATION,
JOHN DOE OFFICERS in the Kenosha County
Sheriff's Department 1-10,
JANE DOE MEDICAL PROFESSIONALS in their
individual and official capacities
WISCONSIN MUNICIPAL MUTUAL INSURANCE
COMPANY,
ABC INSURANCE COMPANY, and
XYZ INSURANCE COMPANY,

    Defendants.

## DEFENDANTS DAVID BETH, COUNTY OF KENOSHA, KYLE BISSONNETTE, JACOB DICELLO, GLORIA GALVAN, DEREEMEYUN HAYNES, JEREMY MAY, AND WISCONSIN MUNICIPAL MUTUAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFF PROPOSED FINDINGS OF FACT TO VNCC AND JESSICA BERGMANN

       Defendants, David Beth, City of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan,

Dereemeyun Haynes, Jeremy May, and Wisconsin Municipal Mutual Insurance Company, by and

through their attorneys, Crivello, Nichols & Hall, S.C., respectfully submit the following Responses

to Plaintiff's Proposed Findings of Fact to VNCC and Jessica Bergmann:

1

1.      On April 25, 2021 Justin Blake was peacefully protesting outside the Kenosha Public Safety Building (hereinafter "KPSB"). ECF 73-10.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited evidence reveals that On April 25, 2021, a group of occupiers (identities unknown) "remain[ed] peaceful" as of 4:52 p.m. (Dkt. 73-10). By 10:20 p.m. that same day, it was reported that:**

> **On several occasions the group at the front doors refused to allow access to citizens with legitimate business to enter the PSB. Attempts to negotiate failed and the small group (6-10) still refused to move and allow access to the PSB. An arrest team (including KPD on standby) and strategy was formulated and 3 subjects were taken into custody, including Justin Blake, Joe Cardinali, and Jonathan Barker. All 3 were taken into custody without incident. The others complied and moved away from the door.**

**(*Id*.). Further, the County Defendants dispute that Blake's identity was known at the time of his protest. (*See* Dkt. 73-3, 60:24-25). Undisputed that after the incident in question, it was learned that the individual later identified as Blake was one of the protestors outside the PSB on April 25, 2021. Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

2.      Mr. Blake was arrested by Defendant Kyle Bissonnette the Officers became aware that Mr. Blake continued with his silent protest while in custody. ECF 73-7 at 15:22.

**RESPONSE: Objection. The proposed fact contains two distinct facts in violation of Civil L.R. 56(b)(2)(ii), which requires "[e]ach separately-numbered paragraph shall be limited to one material fact. . ." Further object on the grounds the proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reads, in its totality:**

> **Q     So just worked for yourself, Justin Blake the**

**(Dkt. 73-7 at 15:22). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

3.      It was Nurse Bergmann's "domain" to check if the restraints were causing Mr. Blake harm and it was also her duty according to make sure he was taken out of the chair every two hours. ECF 74-16, at 73:9-15.

**RESPONSE: Objection. The proposed fact contains two distinct facts in violation of Civil L.R. 56(b)(2)(ii), which requires "[e]ach separately-numbered paragraph shall be limited to one material fact. . ." Further object on the grounds the proposed fact is not fully**

2

supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reads, in its totality:

> **THE WITNESS: Yeah. I think that we, kind of, got to this before, is that – how it's used. What are the circumstances, or the behavior, or the action that requires restraining? That is out of the scope for the nurse. Is the restraint too tight and, itself, causing harm? That's her domain.**

(Dkt. 74-16 at 73:9-15). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).

4.      VNCC Contract requires that all of its employees, including Ms. Bergmann, was required to "comply with all rules and general regulations" of the Kenosha County Sheriff's Department. ECF 74-20, at 2.

**RESPONSE: Objection. Blake again misquotes the cited evidence. Undisputed that the VNCC contract requires "VNCC shall comply with all general rules and regulations established by KCSD." (*See* Dkt. 74-20, p. 2).**

5.      According to the Kenosha County Sherriff's Department Use of Force Policy 300 it states that, "Any deputy present and observing another law enforcement officer or a member using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force." See Kimberley Motley Declaration, (hereinafter "Motley Decl.) at **Exhibit 1** at 2.

**RESPONSE: Undisputed.**

6.      According to the Kenosha County Sherriff's Department Use of Force Policy 300 it states that, "Any deputy who observes another law enforcement officer or a member use force that is potentially beyond that which is objectively reasonable under the circumstances should report these observations to a supervisor as soon as feasible." Motley Decl., **Exhibit 1** at 2.

**RESPONSE: Undisputed.**

7.      According to the ERC Training Manual and on the chair itself it states that, an inmate is NOT to be in the chair for more than two hours as misuse of the chair without reading

3

and thoroughly understanding the instructions may result in injury or death. Motley Decl., **Exhibit 2**, at 1 and Ex. 10.

>    **RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. Undisputed that the cited evidence includes the cover page of the Emergency Restraint Chair Instructions Manual. (Dkt. 98-8, p. 1). That page includes the statements: "Use of the Emergency Restraint Chari without first reading and thoroughly understanding the instructions could cause injury or death," and "Detainees should not be left in the Emergency Restraint Chari for more than two hours." (_Id._). The cited evidence does not support any of the remaining proposed fact. (_See id._; _see also_, Dkt. 98-10). It is unclear why Blake cites to the County Defendants' interrogatory responses. Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

>    8.    Nurse Bergmann was required to be trained in the use of the ERC which she was not. Motley Decl., at Ex. 2, at 1.

>    **RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence is simply the Emergency Restraint Chair Instruction Manual, not any testimony or evidence that "Nurse Bergmann was required to be trained in the use of the ERC which she was not." (Dkt. 98-8). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

>    9.    Ms. Scott testified on behalf of VNCC, Bergmann should have been trained by Kenosha County on use of the ERC but VNCC never verified that Bergmann was trained. ECF 74-15, at 6:1, 13-16 and 23:16-21.

>    **RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence is to Bergmann's testimony, not Scott's testimony. It reads, in its totality:**

> >    **And my first job was at the Kenosha County Jail as a nurse.**
>
>    **. . .**
>
> >    **Q    Now, with regards to your working -- Before you worked at Kenosha County Jail, had you taken any training programs in dealing with healthcare for inmates or anything like that?**
> >    **A    No.**

**(Dkt. 74-15 at 6:1, 13-16);**

| Q | Was that on-the-job training solely by other medical professionals who also worked for VNCC? |
|---|---|
| A | Correct. |
| Q | Okay. Did you get any on-the-job training with regards to restraints from Kenosha County? |
| A | No. |

**(Dkt. 74-15 at 23:16-21).**

Scott's testimony is:

> respect to attorney/client privilege and work

**(Dkt. 74-16 at 6:1).**

| | counsels? |
|---|---|
| A | Sometime earlier this year , I think, or possibly late last year. |

**(*Id.* at 6:13-16).**

| Q | Okay. Now, do you recall if those emails were to already? |
|---|---|
| A | I don't know. |
| Q | Okay. H ow did you -- how did VNCC keep track of the trainings that its employees satisfied? |
| A | I -- I know that certain of -- certain items of the training and orientation to the company was handled through a commercially available platform |

**(*Id.* at 23:16-21).**

**Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

10. Despite being arrested for obstruction allegations, Kenosha County Officers never actually charged Mr. Blake with the civil or criminal violation of obstruction. Motley Decl. Kenosha Civil Court Case No. 2021 FO 000463 Wisconsin Circuit Court Access document at **Exhibit 3,** ECF 80-14 at 1.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence only demonstrates that Blake <u>was</u> cited for disorderly conduct; it does not affirmatively show that he "was never formally charged . . .**

5

with civil or criminal violation of obstruction." (*See* Dkt. 98-17, Dkt. 80-14). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).

11.     On March 10, 2025, Mr. Blake was found *not guilty* of the civil violation of disorderly conduct by a jury. Motley Decl." at **Exhibit 4**.

**RESPONSE: Objection. See contemporaneously filed motion for sanctions. Undisputed subject to objection.**

12.     According to VNCC, Bergmann had a duty of care to her patient, Mr. Blake, and has an obligation to report any harm to him. ECF 64:24–65:4

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). This citation appears to be incomplete.  Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e). Undisputed that Bergmann has a duty of care to her patients.**

13.     Defendants are aware that since Mr. Blake was in the custody of the Kenosha County Sheriff's Department, Defendant Officers had an obligation to address any medical or mental health concerns that they had regarding Blake pursuant to its Suicide Watch Procedure 413. Motley Decl., **Exhibit 5 at 1**.

**RESPONSE: Undisputed.**

14.     At all times relevant, Kenosha County contracted with VNCC to provide medical and healthcare services for persons in custody at the Kenosha Secure Detention Facility.  ECF 74-20, 74-21.

**RESPONSE: Undisputed.**

15.     Mr. Blake had to pay a $450 bond total. Blake paid $150 for the disorderly conduct allegation and $300 for the obstruction allegation which he was never charged with, to be released from jail while Mr. Jonathan Cardinelli and Joseph Barker who were also arrested, both had to pay a $150 bond to be released from jail.  ECF 80-27, Motley Decl. **Exhibits 6 and 7, ECF 80-27**.

**RESPONSE: Objection. The proposed fact contains two distinct facts in violation of Civil L.R. 56(b)(2)(ii), which requires "[e]ach separately-numbered paragraph shall be**

6

limited to one material fact. . ." Further object on the basis the proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same.

Undisputed that a $300 bond payment was required on Blake's resisting/obstructing allegation and a $150 bond payment was required on Blake's disorderly conduct allegation. (Dkt. 80-27). Disputed that Blake paid the $450 total; the bond receipt was issued to Tanya Lynn McLean. (*Id.*). Further undisputed that, the same as Blake, a $150 bond payment was required for both Cardinali and Barker on their disorderly conduct allegations. (Dkt. 98-18, 98-19). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).

16.     Sgt. Ken Krentz at 10:20p.m. sent an email to Defendant Officers, almost an hour prior to Blake being placed in the ERC, informing them that "3 subjects were taken into custody, including Justin Blake, Joe Cardinali, and Jonathan Barker. All 3 were taken without incident." ECF. 73-10.

RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The County Defendants do not dispute that Sgt. Krenz sent that email described in Proposed Fact No. 16; however, the County Defendants <u>do</u> dispute that Sgt. Krenz sent the email to the Defendant Officers. The email described in Proposed Fact No. 16 is from Ken Krenz to "Sheriff Patrol Supv <SheriffPatrolSupv@kenoshacounty.org>." (Dkt. 73-10). There is no evidence that any named County Defendant received the email in question. (McGaver Decl., April 29, 2025, ¶ 4, Ex. A, pp. 11-12). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).

17.     Jeremy May does not recall if Nurse Bergmann tried to conduct a medical assessment of Blake. ECF 73-8, at 114:6-10

RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited evidence reads, in its totality:

Q     Okay. Do you know if she tried to do any other sort of medical assessment with regards to Mr. Blake, <u>other than checking the applications of the restraints</u>?
A     I do not recall.

(Dkt. 73-8, 114:6-10) (emphasis added). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).

7

18.     Also, according to the ERC training and as displayed in a brightly fluorescent sticker on the chair, it states that persons are not supposed to be "in this (ERC) chair for more than TWO hours." Motley Decl., at **Exhibits 2 and 8**; ECF 80-20, at 2.



**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same and takes the complete answer completely out of context.  The applicable cited language from KSD training and policy is as follows:**

> **Inmates will only be placed in the restraint chair with authorization from the on-duty Shift Supervisor (or above), and shall not remain seated in the restraint chair <u>for a period longer than eight hours</u> unless overwhelming safety/security concerns are present.**

**(Dkt. 80-20 at 2 (emphasis added));**

> **For applications other than transportation from one area to another, inmates will be initially evaluated by the on-duty Detentions Division Medical Services provider or his/her designee, and every two hours thereafter.**
>
> 1. **When these two-hour evaluations occur, inmates will be offered water, and their acceptance or denial of water shall be noted on a Food/Water intake log.**
> 2. **Additionally, Inmates will be given the opportunity to get up and use the restroom at that time.**
> 3. **Such activities shall be logged in the behavioral log. It shall be mandatory for inmates to be released from the restraint chair a minimum of once during any given eight hour period.**

8

4. If the inmate does not have to use the restroom, two officers can escort and walk the inmate around for a brief period, this activity shall be logged in the pink colored KSD Mental Health Behavioral Log.
5. In instances of inmates being released from the chair for restroom breaks, or other purposes, they shall be in full restraints. (Treatment Belt and Leg Irons/Ripp Restraints).

(*Id.*). **Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

19. Due to the overwhelming "extreme pain for a prolonged amount of time," that Mr. Blake was in during his silent protect in the ERC he said his name and was released from the ERC. ECF 73-7, at 96:13-14; 98:1-7

**RESPONSE: Disputed to the extent that Blake was in pain while seated in the ERC. (Dkt. 75 at ¶¶ 9-10, 76 at ¶¶ 8-9, 77 at ¶¶ 8-9, 78 at ¶¶ 10-11). Undisputed that Blake was released from the ERC shortly after he identified himself to jail staff.**

20. Linda Scott testified that Defendant Bergmann also had a "professional duty" (as a nurse) "to do no harm," to her patient, Mr. Blake. ECF 74-16, at 64:24-65:1.

**RESPONSE: Objection. Blake again misquotes the cited testimony. Regardless, undisputed that nurses have a duty to do no harm. (*See* Dkt. 74-16:24:24-645:1).**

21. According to VNCC, Bergmann had a duty of care to her patient, Mr. Blake, and has an obligation to report any harm to him. ECF 64:24-65:4

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). This citation appears to be incomplete. Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e). Undisputed that Bergmann has a duty of care to her patients.**

22. Linda Scott testified that, nurses have a professional duty to do no harm and "if Jessica witnessed harm that was, you know, outside the scope of anything, she would have, probably, felt a duty to make that phone call" to her supervisors. ECF 74-16 at 65:1-4.

**RESPONSE: Undisputed.**

23. Defendant Bergmann acknowledged that her supervisor on call on April 25, 2021 was either Dr. Kevin Kremms or the nurse practitioner Julie Haifman. ECF 74-15 at 18:22-24.

9

**RESPONSE: Undisputed.**

24.     Ms. Scott admitted that as the representative for VNCC, she could not say for certain if Bergmann had completed any training as it relates to use of the ERC, she and by extension VNCC had not seen any documents to that effect, and she did not know if Bergmann was even competent in her role in relation to use of the chair. ECF 74-16, at 81:1-25.

**RESPONSE: Disputed that Linda Scott "did not know if [Bergmann] was even competent in her role in relation to use of the chair." (See Dkt. 74-16 at 81:18-82:8).**

25.     Bergmann testified that this was her first job as a nurse, she "couldn't recall" being directed to read the ERC Manual as is a required part of the training, and that she had not received any training by Kenosha County regarding the use of restraints. ECF 74-15, at 6:1, 13-16, and 23:16-21.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The referenced citation says exactly the opposite of what the proposed fact says, specifically:**

| | |
|---|---|
| **Q** | **Okay. And so you mentioned that you had on-the-job training with regards to restraints; correct?** |
| **A** | **Yes.** |
| **Q** | **Was that on-the-job training solely by other medical professionals who also worked for VNCC?** |
| **A** | **Correct.** |
| **Q** | **Okay. Did you get any on-the-job training with regards to restraints from Kenosha County?** |
| **A** | **No.** |

**(Dkt. 74-15 at 23:13-21). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

26.     According to Kenosha Sheriff's Department Operational Policy 407 on the use of an Emergency/Safety Restraint Chair it states:

"The restraint chair will be used to temporarily restrain and/or transport combative inmates for safety reasons." ECF 80-20 at 1.

**RESPONSE: Undisputed that Policy 407 contains the quoted language, but dispute the quote reflects the entirety of the Policy. As further answer, the Policy speaks for itself. (See Dkt. 80-20).**

27.     According to the training manual, "The Emergency Restraint Chair (E.R.C.) is intended to help control combative, self-destructive, or potentially violent detainees." Motley Decl. **Ex. 2**, at 1.

**RESPONSE: Undisputed that the Emergency Restraint Chair Training Manual contains the quoted language, but dispute the quote reflects the entirety of the Manual. As further answer, the Manual speaks for itself. (See Dkt. 98-8).**

28.     Per the ERC training manual **STEP ONE** states that officers are to,

"Ensure that all of the detainee's personal property has been removed from them, to

include jewelry, glasses, shoes, boots, socks, coat, hat, and belt. They should only be

clothed in their shirt, pants, or dress."

Motley Decl., Ex. 2 at 1.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence is simply the cover page of the Emergency Restraint Chair Instructions Manual. (Dkt. 98-8, p. 1). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e). Subject to objection, undisputed.**

29.     Mr. Blake, a 56-year-old man, being restrained in the ERC by his shoulders, wrists,

lap, and ankles while being forced to sit in an upright position for nearly seven hours was seriously

harmed. ECF 73-7, at 96:13-14; 98:1-7; 79-2.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). Blake's cited testimony reads, in its totality:**

> A     I was – I had been in extreme pain for a prolonged amount of time and –

**(Dkt. 73-7, 96:13-14);**

> You say "Justin Blake." What happens next?
> A     It seems as though the officer wheeled around and repeated the name to other officers, and shortly thereafter we were out of the chair.
> Q     What made you decide to disclose your name at that point in time?

> A       The pain we had endured had become

(*Id.* at 98:1-7).

**The other cited piece of evidence, Dkt. 79-2, is simply the Take Custody Report of Justin Blake. Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

30.     The visual evidence clearly shows Mr. Blake in pain while in the chair, and Bergmann assisting in that harm. At varying points while in the ERC, at timestamps of 12:02 a.m., 1:28 a.m., 2:07 a.m., 2:28 a.m., 2:58 a.m., 3:07 a.m., and 3:28 a.m., Blake can be seen in the chair in distress, trying to move some of the restrained parts of his body including his head as well as his shaky legs and hands. ECF 74-11 at 00:50-01:50, 37:19–37:32; 74-12 at 18:48-19:10, 31:13-31:40, 37:20–37:42; and 74-13 at 03:00-03:40, 11:22-12:00.

**RESPONSE: Disputed.  Plaintiff's body language was neutral while in the ERC, giving officers no reason to suspect he was in any pain. (Dkt. 73-5 at 95:20-96:1).  Plaintiff did not tell anyone at KSD, at any point, that he was in any pain. (Dkt. 73-7 at 7:3-22, 123:17-23; Dkt. 73-5 at 95:7-9).  But, Plaintiff assumed that both correctional and medical staff had to have known he was in "extreme pain," due to his "constant unsettling motion" and "the tone of [my]1 voice when [I was] singing." (Dkt. 73-7 at 179:21-181:25).  At no point during Deputy Bissonnette, Officer Galvan, Officer Haynes, Officer DiCello, or Sergeant May's interactions with Plaintiff on April 25 and 26, 2021, did he indicate in any way that he was in any pain while sitting in the emergency restraint chair. (Dkt. 79 at ¶ 11; Dkt. 77 at ¶ 9; Dkt. 78 at ¶ 11; Dkt. 76 at ¶ 9; Dkt. 75 at ¶ 10).**

31.     Upon his release, Mr. Blake immediately sought medical care and has had to endure two corrective surgeries to his left shoulder; has numerous epidermal injections for pain; his range of motion has been compromised; he has continuous aggravated pain in his neck, shoulder, and back for routine activities such as sleeping, walking, and standing; and he has had to undergo physical therapy treatments. ECF 73-7, at 132:10-15 and 22-23; 133:1-3; 139:20-22; 147:5-15; and 148:16-25.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reveals only that Blake "thinks" he had "one or two" corrective surgeries, that his range of motion "briefly" improved since his surgery, that he "wants to say" he participated in physical therapy following his surgery, everyday activities aggravate his alleged shoulder, neck, and back pain. (Dkt. 73-7, 132:10-15, 20-22; 131:1-3; 147:5-15, 148:16-25).  The cited testimony does not support that Blake**

"immediately sought medical care," that he has had "numerous" injections for pain. (See *id*.). **Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

32.     As a former construction worker and carpenter, these employment opportunities are all but foreclosed on him because of the unwarranted serious injuries of sitting in the ERC for nearly seven hours caused by the Defendants. ECR 73-7, at 20-24.

**Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). This citation appears to be incomplete. Indeed, pages 20-24 of Dkt. 73-7 are simply testimony of Blake's criminal history and a very brief description of the injury he is claiming in this case. Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

33.     Jessica Bergmann never objected to Mr. Blake being placed in the ERC because she felt that it "wouldn't have been (her) place to do that." ECF 74-15 at 59:13-18.

**RESPONSE: Undisputed.**

34.     As a supervisor, May had an expectation that the nurse would ask Blake he was in pain, had injuries, or distress while in the ERC. ECF 73-9 at 29:5-11, 28:11-17.

**RESPONSE: Undisputed that Sergeant May testified consistent with Proposed Fact No. 34.**

35.     Jessica Bergmann does not recall asking Blake one single medical question or any questions at all. ECF 73-2 at 56 & 57: 25-1.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reads, in its totality:**

**Q       Okay. Do you recall asking Mr. Blake any questions?**
**A       I don't remember.**

**(Dkt. 73-2, 56:25-57:1). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

36.     According to VNCC's contract, its employees, including Bergmann, is required to "provid(e) the medical and dental care and services to jail prisoners and other inmates as required by the U.S. Constitution and other applicable laws and regulations." ECF 72, at ¶ 57.

13

**RESPONSE: Undisputed.**

37.     All of the Defendant Officers, Jessica Bergmann, and the Kenosha County Representative agrees that Mr. Blake was never combative, self-destructive, or potentially violent before, during, or after he was placed in the ERC. ECF 73-3, at 35-36:21-3, 94:7; 73-4, at 41:12-21; 73-5, at 30:3-16; 73-6, at 59:1-3, 9-20; 73-8, at 61:21-62:13; 74-2, at 90:6-15, 91:19-22, 93:10-13; 74-15, at 51:7-9.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. None of these defendants use the terms "potentially violent."  Undisputed that Blake was not combative or self-destructive before, during, or after he was placed in the ERC.**

38.     According to Douglas Simpson, the corporate representative for Kenosha County, there is nothing in the reports that suggests that Mr. Blake was uncooperative, combative, physically resisting, suicidal, self-destructive, or on any type of drugs. ECF 74-2 at 90:6-15; 91:19-22; 93:10-13.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. One portion of the cited evidence is a fraction of an argumentative question by Blake's counsel and does not encompass any response by Sergeant Simpson. (*See* Dkt. 74-2, 90:6-15). The remaining cited evidence states, in its totality:**

> **Q      Yeah. And anywhere in those reports did they indicate that he was being combative or self-destructive?**
> **A      No.**

**(Dkt. 72-4, 91:19-22);**

> **Q      Okay. So nothing in 22 that would suggest that he was being uncooperative, correct?**
> **A      I don't think he resisted, physically resisted, no.**

**(*Id.* at 93:10-13). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

39.     Jessica Bergmann recalled and noted in her report, that on April 25 and 26th that Justin Blake's behavior was "quiet and calm." ECF 73-2 at 51:7-9.

14

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reads, in its totality:**

> proper fit of the restraints. Yeah. I don't really know if there was much more I can provide than that.
>
> **Q**      So in your interactions with Mr. Blake, did you

**(Dkt. 73-2 at 51:7-9). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

40.      Jessica Bergmann had a propensity to approve the actions of law enforcement even if they go against medical policies and the medical interests of Blake. ECF 82, at 39-40.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. In fact, the cited "evidence" is a page from the County Defendants' brief in support of their motion for summary judgment. (*See* Dkt. 82, pp. 39-40). And, the proposed fact says the <u>exact opposite</u> of the cited pages. (*See id.* at p. 40 ("First and foremost, there is no evidence that Nurse Bergmann had any such propensity.") (internal citations omitted)). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

41.      Jessica Bergmann testified that Blake was not placed in the chair for medical reasons. ECF 74-2, at 124:6-10.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited testimony is that of Sgt. Simpson's, not Nurse Bergmann's. (*See* Dkt. 74-2). There is no evidence that Sgt. Simpson is qualified to make the determination that something is or is not done for a medical purpose. Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

42.      Additionally, pursuant to the VNCC Contract, Ms. Bergmann was required to "comply with all rules and general regulations of the KPSD." ECF 74-20, at 2.

**RESPONSE: Objection. Blake again misquotes the cited evidence. Undisputed that the VNCC contract requires "VNCC shall comply with all general rules and regulations established by KCSD." (*See* Dkt. 74-20, p. 2).**

43.      Ms. Scott testified that any trainings Bergmann received with regards to the ERC and Use of Force were "handled as a collaborative training" between Kenosha County Law Enforcement and nurses working at the jail. ECF 74-16, at 17:18-18:13.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited evidence stated in totality:**

> Q    And you never required your employees to review any manuals as it relates to the emergency restraint chair?
>
> A    That I can't really answer. I'm not certain of what the requirements were. Those, again, were the County policies and procedures, and it stands to follow that the nurse manager, in orienting staff to the corrections environment, you know, would've talked about -- okay. You know, I'm not -- I mean, I can make up a scenario that would've been something that I might have done, but I don't know exactly what would've happened, and we don't have that policy and procedure. That was a County document.
>
> Q    Right. And that, as it relates to restraining inmates at the Kenosha -- Kenosha County Detention Center, VNCC did not require its employees to take any training as it relates to that, correct?
>
> A    I don't know that. I am not saying yes or no to that.

**(Dkt. 74-16, at 17:18-18:13). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

44.    Ms. Scott testified that VNCC had no training materials and/or manuals to provide as it relates to the Use of Force and ERC trainings that Defendant Bergmann should have participated in. ECF 74-16, at 19:1-14.

**RESPONSE: Undisputed that Ms. Scott testified as specified in Proposed Finding 44.**

45.    Ms. Scott testified that any such training documents and procedures required for VNCC employees working at the jail "were designed by them (Kenosha County), and the training and details of it would've come from them." ECF 74-16, at 19:1-14.

**Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited evidence stated in totality:**

> required to make available and discuss any and all documents, training materials, videos available to VNC personnel at Kenosha County Detention Center, where M r. Blake was held, with regards to training for arrest procedures, detention procedures, medical protocols, mental health protocols, use of emergency restraint chair, as it existed on April 25th, 2021 and April 26th of 2021. You have not provided your counsel to provide with to us any of those things, correct?

16

> **A**    That's correct. We do not have any of those documents to provide to our counsel to provide to you.

**(Dkt. 74-16, at 19:1-14). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

46.    Ms. Scott further testified that such documents "are available to VNCC personnel at the Kenosha County Detention Center." ECF 74-16, at 19:1-14. Defendant Bissonnette first asked Mr. Blake for his name after he was transported to the Kenosha Detention Facility and while they were in the sally port. ECF 73-8, at 65:2-3.

**RESPONSE: Objection. The proposed fact contains two distinct facts in violation of Civil L.R. 56(b)(2)(ii), which requires "[e]ach separately-numbered paragraph shall be limited to one material fact. . ." Further object on the grounds the proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The "cited testimony" of Ms. Scott is, in reality, a quote from Blake's counsel, in which she is reading a bullet point of a requested item from a Notice of Deposition, to which Ms. Scott responds she does not have any of the requested items. (Dkt. 74-16, 18:24-19:14). Further, Dkt. 73-8 is Sergeant May's deposition, and the cited testimony reads:**

> **A**    Are they safe?
> **Q**    Right. I just laid out a scenario where

**(Dkt. 73-8, 65:2-3). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

47.    Mr. Blake was arrested by Defendant Kyle Bissonnette; the Officers became aware that Mr. Blake continued with his silent protest while in custody. ECF 73-7 at 15:22.

**RESPONSE: Objection. The proposed fact contains two distinct facts in violation of Civil L.R. 56(b)(2)(ii), which requires "[e]ach separately-numbered paragraph shall be limited to one material fact. . ." Further object on the grounds the proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1). The cited evidence reads, in its totality:**

> **Q**    So just worked for yourself, Justin Blake the

**(Dkt. 73-7 at 15:22). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

48. In an email regarding Mr. Blake's arrest at 12:49 a.m. on April 26, 2021, Defendant May identified Justin Blake as "a community activist and uncle of Jacob Blake." Motley Decl., at **Exhibit 9.**

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. Rather, the cited evidence reflects that on April 25, 2021, Sergeant May "believed" the unidentified subject to be Justin Blake, but did not have confirmation of the same. (Dkt. 98-4, p. 1). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

49. At 3:20 a.m., Sgt. Ryan Murkowski sent an email to Defendant Officers, positively identifying Justin Blake as the person that was in custody and "refus(ing) to talk." Motley Decl., at **Exhibit. 10.**

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The County Defendants do not dispute that Sgt. Murkowski sent that email described in Proposed Fact No. 49; however, the County Defendants <u>do</u> dispute that Sgt. Murkowski sent the email to the Defendant Officers. The email described in Proposed Fact No. 49 is from Sgt. Markowski to "Sheriff Patrol Supv <SheriffPatrolSupv@kenoshacounty.org>." (Dkt. 98-5). There is no evidence that any named County Defendant received the email in question. (McGaver Decl., April 29, 2025, ¶ 4, Ex. A, pp. 11-12). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

50. At 3:24 a.m. Defendant Jeremy May forwarded his email to Murkowski, where May identified the Plaintiff as "Justin Blake; a community activist and uncle of Jacob Blake." Motley Decl., at **Exhibit 11**.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. Rather, the cited evidence reflects that on April 263, 2021, Sergeant May forwarded an email to Sgt. Markowski in which Sergeant May stated he "believed" the unidentified subject to be Justin Blake, but did not have confirmation of the same. (Dkt. 98-6, p. 1). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

51. Defendant Haynes knew who Mr. Blake was when he was arrested on the night of April 25, 2021 and also saw numerous news articles informing him of Mr. Blake's identity. ECF 73-4, at 104:5-10.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited evidence states, in its totality:**

> A    I believe I learned it at some point <u>during his intake process</u>. <u>I don't recall specially when I learned that</u>.

> Q    Okay. So sometime during his intake process when he came in April 25th of 2021?

> A    Yes.

**(Dkt. 73-4, 104:5-10) (emphasis added). Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

52.    Before she worked at Kenosha County Jail, she had never taken any training programs in dealing with healthcare for inmates.  ECF 74-15 at 6:13-16.

**RESPONSE: Undisputed.**

53.    Gloria Galvan testified that she couldn't remember why Mr. Blake was put in the ERC and did not remember asking anyone. ECF 73-6, at 63:3-10.

**RESPONSE: Undisputed that Officer Galvan testified consistent with Proposed Fact No. 53.**

54.    Defendants Bissonnette, DiCello, Haynes, Bergmann, and Galvan None of the Defendant Officers and Jessica Bergmann never interceded nor complained about Mr. Blake being put and kept in the ERC.  ECF 73-3, at 86:12-16; 73-5, at 65:11-14.; 73-4, at 71:21-23; 73-6, at 63:11-13; 73-2, at 59:17-18.

**RESPONSE: Undisputed.**

55.    Defendant May directed his officers to, "Put (Blake's) ass in the damn chair!" ECF 73-7 at 77:2-3.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The cited testimony, when read in context, in Blake's own testimony that:**

> Q    Tell me about the process of putting you in the ERC. How did that happen?

| A | At the request of whoever the person was behind the desk -- not desk. I don't know what you refer to it as, the counter that we were standing in front of just barked out, after asking my name maybe once or twice, to put his ass in the chair. And after that we just recall them -- the men in the closest vicinities to us doing that. |
| Q | And you keep saying "we." |
| A | Myself. |

**(Dkt. 73-7, 76:21-77:7). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

56.     Jeremy May, Dereemeyun Haynes, Jacob DiCello, Kyle Bissonnette, and Gloria Galvan were involved with placing and keeping Mr. Blake in the ERC on April 25, 2021.  Motley Decl. at **Exhibit 12,** Defendant's Response to Plaintiffs Interrogatory #11.

**RESPONSE: The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same. The interrogatory in question sought the identities of any person "who <u>placed</u> Blake in the Chair," not those who "kept" him in the ERC (Dkt. 98-10, p. 15) (emphasis added). As further answer, undisputed that Sergeant May, Officer Haynes, Officer DiCello, and Officer Galvan were involved in placing Blake in the ERC. Disputed that Officer Bissonnette was involved in the same or that the cited evidence includes Officer Bissonnette's name. (*See id.*). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e).**

57.     Mr. Blake was kept in the ERC for nearly seven total hours.  ECF 80-24, 80-25.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidence as required by FRCP 56(c)(1) and Blake mischaracterizes the same and takes the complete answer completely out of context.  The KSD Mental Health Log reflects the fact that Blake was released from the ERC on numerous occasions to use the restroom and to walk around. The implication that Blake was in the ERC for seven continual hours is misleading, disingenuous, and false.**



**(Dkt. 80-25). While Plaintiff was in the ERC, jail staff offered him water and restroom breaks seven times. (Dkt. 80-24).  Of those seven offers, Plaintiff only accepted water twice and agreed to use the restroom twice; Plaintiff refused every other offer. (*Id.*).  While Plaintiff was in the ERC, jail staff logged thirty-four separate observations of Plaintiff. (Dkt. 80-25).**

**Because the proposed fact is not supported by the cited evidence, it must be disregarded pursuant to FRCP 56(e).**

58.     Mr. Blake was kept in the chair without being taken out of it from 1:53 a.m. until 5:40 a.m. ECF 80-24.

**RESPONSE: See response to Proposed Fact 57.**

59.     Mr. Blake was wearing a hooded sweatshirt with ties, socks, watch, shoes with laces, and pants with a belt the entire time he was in the ERC. ECF 74-2, at 32:5-11.

**RESPONSE: Objection. The proposed fact is not fully supported by the cited evidence as required by FRCP 56(c)(1). Specifically, the cited testimony makes no reference to a watch of any sort. (Dkt. 74-2, 32:5-11). Those portions of the proposed fact not supported by the cited evidence must be disregarded pursuant to FRCP 56(e). The remainder of this proposed fact is undisputed.**

Dated this 29th day of April, 2025.

By: /s Brianna J. Meyer
      SAMUEL C. HALL, JR.
      State Bar No. 1045476
      STEVEN C. MCGAVER
      State Bar No. 1051898
      BRIANNA J. MEYER
      State Bar No. 1098293
      Attorneys for Defendants, David G. Beth, County of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, and Wisconsin Municipal Mutual Insurance Company
      CRIVELLO, NICHOLS & HALL, S.C.
      710 N. Plankinton Avenue, Suite 500
      Milwaukee, WI 53203
      Phone: (414) 271-7722
      Fax: (414) 271-4438
      E-mail:   shall@crivellolaw.com
                 smcgaver@crivellolaw.com
                 bmeyer@crivellolaw.com