IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JUSTIN BLAKE,

    Plaintiff,

v.                                             Case No. 22-CV-970

DAVID BETH in his individual capacity and official
capacity,
COUNTY OF KENOSHA a municipal corporation,
KYLE BISSONNETTE in his official capacity,
JACOB DiCELLO in his official capacity,
GLORIA GALVAN in her official capacity,
DEREEMEYUN HAYNES in his official capacity
JEREMY MAY in his official capacity,
JESSICA BERGMANN in her individual and official capacity,
VISITING NURSE CARE, INC.,
KENOSHA VISITING NURSE ASSOCIATION,
JOHN DOE OFFICERS in the Kenosha County
Sheriff's Department 1-10,
JANE DOE MEDICAL PROFESSIONALS in their
individual and official capacities
WISCONSIN MUNICIPAL MUTUAL INSURANCE
COMPANY,
ABC INSURANCE COMPANY, and
XYZ INSURANCE COMPANY,

    Defendants.

**DEFENDANTS DAVID BETH, COUNTY OF KENOSHA, KYLE BISSONNETTE, JACOB DICELLO, GLORIA GALVAN, DEREEMEYUN HAYNES, JEREMY MAY, AND WISCONSIN MUNICIPAL MUTUAL INSURANCE COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE AND FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927**

        Defendants David Beth, County of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, and Wisconsin Municipal Mutual Insurance Company ("County Defendants"), by and through their attorneys, Crivello, Nichols & Hall, S.C., pursuant to Fed. R. Civ. P. 12(f), Civil L.R. 41(d), and 28 U.S.C. § 1927, respectfully submit this brief in support

of their motion to strike and for sanctions because of Plaintiff's conduct in litigating summary judgment.

## INTRODUCTION

After almost four years after the alleged incident referenced in Plaintiff's complaint and after twenty-six months of discovery, Plaintiff served a second Amended Rule 26(a)(1) initial disclosure adding fourteen witnesses on the day before discovery closed in this case, depriving Defendants of the ability to meaningfully investigate or depose these new witnesses. (*See, e.g.*, Dkt. 82). Then, almost three months after the County Defendants moved for summary judgment Plaintiff filed a motion requesting an extension of length for his response due to "the number of arguments" the County Defendants raised in their moving brief only to voluntarily dismiss nine of the original fifteen causes of action. (*See* Dkt. 97). When Plaintiff finally filed his response brief, he spent forty-five pages addressing only *six* claims along with a request for punitive damages. Plaintiff essentially abandoned almost all its claims and forced Defendants to exert substantial time, effort, energy, and expense defending a multitude of apparently frivolous claims. The County Defendants now seek an Order pursuant to 28 U.S.C. § 1927 awarding them their costs, expenses, and attorneys' fees reasonably incurred because of Plaintiffs' conduct in litigating summary judgment.

## ARGUMENT

I.   RELEVANT BACKGROUND AND PROCEDURAL POSTURE

Plaintiff filed his Summons and Complaint on August 23, 2022, naming Sheriff Beth, County of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, John Doe Officers 1-10, Wisconsin County Mutual Insurance Company, and ABC Insurance Company as defendants and alleging:

(1)   42 U.S.C. § 1983 - First Amendment Violation

2

(Against Defendant Beth and Kenosha County)

(2) 42 U.S.C. § 1983 - First Amendment Retaliation
(Against Defendants Bissonnette, DiCello, Galvan, Hayes, May, and John Doe Officers)

(3) 42 U.S.C. 1983 - Deliberate Indifference
(Against Defendant Beth)

(4) 42 U.S.C. § 1983 - First Amendment Violation (Excessive Force & Arrest)
(Against Defendants May, DiCello, Galvan, Haynes and John Doe Officers and John Doe Officers [*sic*])

(5) 42 U.S.C. § 1983 - Excessive Force (4th and 14th Amendments)
(Against Defendant Officers and John Doe Officers)

(6) 42 U.S.C. § 1983 – Cruel and Unusual Punishment (8th Amendment)
(Against Defendants May, DiCello, Galvan, Haynes and John Doe Officers)

(7) 42 U.S.C. § 1983 – Failure to Intervene (8th and 14th Amendment)
(Against Defendants Bissonnette, DiCello, Galvan, Hayes, May, John Doe Officers and Beth)

(8) Excessive Detention (Less than 48 hours)
(Against Defendant John Doe Officers)

(9) Intentional Infliction of Emotional Distress
(Against Defendant Officer Bissonnette, DiCello, Galvan, Haynes, May, and John Doe Officers)

(10) State Law Indemnification
(Against Kenosha County)

(11) Direct Action Statute – Wis. Stat. § 632.24
(Against Defendant Insurance Companies)

(12) *Monell* Claim
(Against Kenosha County)

(Dkt. 1). On August 24, 2022, Plaintiff filed his First Amended Complaint. (Dkt. 4). The First Amended Complaint added no new parties and no new claims. (*Compare* Dkt. 1, Dkt 4). On August 30, 2022, defense counsel filed notices of appearance and waivers of service of summons. (Dkt. 5-

3

Dkt. 14). On October 21, 2022, Defendants timely filed an answer to the First Amended Complaint. (Dkt. 16). Within the answer, Defendants explicitly informed Plaintiff "Wisconsin County Mutual Insurance Company was improperly named in Plaintiff's Amended Complaint; the correct insurer is Wisconsin Municipal Insurance Company." (*Id.* at FN 1).

On October 21, 2022, Plaintiff's counsel inquired as to whether the undersigned was representing the insurance company. (Dkt. 50-1). Again, Defense counsel explained "[o]n the insurance company issue, we are representing the County's insurance carrier, but you have the wrong insurance company identified. Kenosha County's insurance company is Wisconsin Municipal Mutual Insurance Company. Will you consider filing an amended complaint to correct that?" (*Id.*). Plaintiff's counsel stated they would file another amended complaint "on the date set for amended pleadings." (*Id.*).

On November 11, 2022, the Court entered a scheduling order setting the deadline to amend without leave for February 15, 2023. (Dkt. 19). The Court also ordered Plaintiff to identify expert witnesses by June 15, 2023, and non-expert discovery to be completed by August 15, 2023. (*Id.*).

On November 12, 2022, Plaintiff served the County Defendants with a First Set of Requests to Admit, Interrogatories, and Requests for Production. (Dkt. 48-1). The County Defendants served answers on December 12, 2022. (Dkt. 50-2). Within those answers, the County Defendants identified Pablo Martini as an employee on duty during the relevant time period. (*Id.*).

On November 30, 2022, Plaintiff served his Rule 26(a)(1) Initial Disclosures, identifying the following potential witnesses:

- Justin Blake
- Jonathan Barker
- Joseph Cardinali
- Tanya McLean
- Sheriff Beth
- Officer Bissonnette
- Officer DiCello
- Officer Galvan
- Officer Haynes
- Sergeant May

4

- Rachel Bellaire
- Wisconsin County Mutual Insurance Company
- "Unnamed officers."

(Meyer Decl., April 29, 2025, ¶ 4, Ex. A, pp. 2-3).

On February 15, 2023, Plaintiff filed a Second Amended Complaint. (Dkt. 20). The second amended complaint added medical defendants Jessica Bergmann and NaphCare. (*Compare* Dkt. 4, Dkt. 20). Plaintiff included Bergmann in his 4th and 14th Amendment claim for Excessive Force, his 8th Amendment Cruel and Unusual Punishment claim, his Failure to Intervene claim, and his Intentional Infliction of Emotional Distress claim. (*Id.*). Plaintiff also added new claims for Negligent Hiring, Training, and Supervision against NaphCare and Kenosha County as well as *respondeat superior* against NaphCare. (*Id.*). So, as of his Second Amended Complaint, Plaintiff was up to fourteen causes of action, thirteen of which were alleged in some way, shape, or form against the County Defendants. (*See id.*).

The County Defendants timely answered Plaintiff's Second Amended Complaint. (Dkt. 23). Again, within their answer, the County Defendants made clear that "Wisconsin County Mutual Insurance Company was improperly named in Plaintiff's Second Amended Complaint; the correct insurer is Wisconsin Municipal Mutual Insurance Company." (*Id.* at FN 1). One day after the County Defendants filed their answer, Plaintiff's counsel contacted defense counsel, asking if there would be any objection to a Third Amended Complaint, explaining they learned that NaphCare was not the correct party. (Dkt. 50-3). Plaintiff's counsel represented that they did "not plan to make any other substantive changes to the complaint and only plan to name the appropriate parties." (*Id.*). In response, defense counsel inquired if Plaintiff would also be naming the correct insurance carrier for the County. (*Id.*).

Plaintiff's counsel, either forgetting or ignoring the prior pleadings and communications

5

regarding naming the correct insurance carrier, responded by asking for the correct carrier and stating Plaintiff would "certainly" name the correct carrier. (*Id.*). Defense counsel again informed Plaintiff's counsel that the proper insurance carrier is Wisconsin Municipal Insurance Company. (*Id.*).

On March 15, 2023, Plaintiff filed a motion for leave to file a Third Amended Complaint. (Dkt. 24). At the time of filing, Plaintiff did not file a proposed Third Amended Complaint with the Court in violation of local rules, but the County Defendants did not oppose the motion. (Dkt. 30). On June 16, 2023, Plaintiff filed a motion requesting an extension for identifying its expert witnesses. (Dkt. 31). On July 7, 2023, defense counsel indicated that generally, there was no opposition to Plaintiff's request so long as the extensions were reciprocal. (Dkt. 32). On August 14, 2023, the Court granted both of Plaintiff's motions as unopposed and made specific note of Plaintiff's intention to only add the correct parties, not any substantive changes. (Dkt. 33).

On August 30, 2023, Plaintiff filed his Third Amended Complaint identifying additional defendants of Visting Nurse Community Care, Inc., Kenosha Visting Nurse Association, and Jane Doe Medical Professionals. (*Compare* Dkt. 34, Dkt. 20). Contrary to representation of counsel, Plaintiff amended the substance of the claims. (*Id.*). In particular, Plaintiff modified his Cruel and Unusual Punishment and Failure to Intervene Claims to now be under the 8th Amendment (despite Plaintiff being a pre-trial detainee at the time of the alleged incident) and brought two completely new claims: one for Failure to Render Aid against Sheriff Beth, the defendant officers, Bergmann, and Jane Doe medical providers; and a second for Denial of Equal Protection against Sheriff Beth, Kenosha County, the defendant officers, Bergmann, and Jane Doe medical providers. (*Id.*). Plaintiff was now at sixteen claims, fifteen of which were directed at the County Defendants. (*See id.*). Within the Third Amended Complaint, Plaintiff again failed to name the proper insurance carrier. (*Id.*).

6

On September 11, 2023, the County Defendants answered Plaintiff's Third Amended Complaint. (Dkt. 36). Yet again, the County Defendants made clear that Plaintiff had named the wrong insurance carrier. (*Id.* at FN 1). On February 21, 2024, Plaintiff inexplicably filed a motion for an extension of time to accomplish service on Wisconsin County Mutual Insurance Company. (Dkt. 43). Two days later, Plaintiff withdrew the request. (Dkt. 44).

On March 22, 2024, Plaintiff filed an Amended Rule 26(a)(1) Initial Disclosure, identifying the same thirteen witnesses listed above, and only adding four proposed expert witnesses: Dr. Fullin, Brian Landers, Dr. Miller, and Joseph Rion. (Meyer Decl., April 29, 2025, ¶ 5, Ex. B, pp. 2-3). On April 25, 2024, Plaintiff filed an expedited motion to file a ***fourth*** amended complaint. (Dkt. 47). Plaintiff's asserted basis for the motion was that his statute of limitations was nearing, and he needed to identify Doe defendants. (*See* Dkt. 48). The proposed Fourth Amended Complaint identified only one additional defendant: Pablo Martini. (*Compare* Dkt. 48-7, Dkt. 34). As explained above, Plaintiff had notice of Pablo Martini's potential involvement starting on at least December 12, 2022. The proposed Fourth Amended Complaint also included two brand new claims (which certainly had nothing to do with identifying any Doe defendants prior to the statute of limitations running): one for "deliberate medical indifference" against Nurse Bergmann, Jane Doe Medical Professionals, and VNCC; and a second for breach of contract against VNCC and KVNA. (*Compare* Dkt. 48-7, Dkt. 34). Ultimately, the Court granted Plaintiff's motion, and the County Defendants timely filed yet another answer. (Dkt. 58, 64). Blake's fourth amended complaint asserted fifteen causes of action against the County Defendants:

(1) First Amendment violations, pursuant to 42 U.S.C. § 1983, against:

    (a) Sheriff Beth and Kenosha County, generally, (Dkt. 59, ¶¶ 76-90);

    (b) Officers Bissonnette, DiCello, Galvan, Haynes, May, Martini, and John Doe Officers as a retaliatory claim, (*id.* at ¶¶ 91-106);

7

(c) Officers May, DiCello, Galvan, Haynes, Martini, and John Doe Officers as an "excessive force & arrest" claim, (*id.* at ¶¶ 116-131);

(2) A "deliberate indifference" claim, allegedly pursuant to 42 U.S.C. § 1983 against Sheriff Beth, Kenosha County, Martini, and John Does 1-10, (*id.* at ¶¶ 107-115);

(3) Fourth and Fourteenth Amendment violations, pursuant to 42 U.S.C. § 1983, against:

(a) Nurse Bergmann and "Certain Defendant Officers," and John Doe Officers, as an excessive force claim, (*id.* at ¶¶ 132-142);

(b) Nurse Bergmann, and Officers May, DiCello, Galvan, Haynes, Martini, John Doe Officers, and Jane Doe Medical Providers, as a cruel and unusual punishment claim, (*id.* at ¶¶ 143-149);

(c) Nurse Bergmann, Sheriff Beth, and Officers Bissonnette, DiCello, Galvan, Haynes, May, Martini, and John Doe Officers as a failure to intervene claim, (*id.* at ¶¶ 150-163);

(d) Sheriff Beth, Officers Bissonnette, Galvan, Haynes, May, and Martini, Nurse Bergmann, John Doe Officers and Jane Doe Medical Providers as a failure to render aid claim (*id.* at ¶¶ 220-225);

(e) "Officer Bergmann" and Officers Bissonnette, DiCello, Galvan, Haynes, May, Martini, John Doe Officers, and Jane Doe Medical Providers as an intentional infliction of emotional distress claim (*id.* at ¶¶ 170-177);

(f) "Defendant Officers" and John Doe Officers, as an excessive detention (less than 48 hours) claim, (*id.* at ¶¶ 164-169);

(g) Officers Bissonnette, Galvan, Haynes, May, Martini, Nurse Bergmann, John Doe Officers, Jane Doe Medical Providers, and Kenosha County, as a denial of equal protection claim, (*id.* at ¶¶ 229-240);

(4) A "negligent hiring, training, and supervision" claim against Kenosha County, VNCC, and KVNA (*id.* at ¶¶ 192-198);

(5) A general *Monell* Claim against Kenosha County (*id.* at ¶¶ 206-219);

(6) State law claims against:

(a) Kenosha County for indemnification, (*id.* at ¶¶ 188-191); and

8

> > (b) "Defendant Insurance Companies" for direct action pursuant to Wis. Stat. § 632.24, (*id.* at ¶¶ 226-228).

On October 24, 2024, Plaintiff voluntarily dismissed Pablo Martini due to lack of service. (Dkt. 66). Discovery closed on January 6, 2025, and the dispositive motion deadline was on track for January 20, 2025. (Dkt. 58). The same day discovery closed, Plaintiff served a second Amended Rule 26(a)(1) initial disclosure. (Meyer Decl., April 29, 2025, ¶ 6, Ex. C). This time, again ***on the last day of discovery***, ***Plaintiff added fourteen witnesses***:

- Jessica Bergmann
- Linda Scott
- Douglas Simpson
- Monica Cummings
- Judith Devine
- Winnie Dortch
- Tony Atkins
- Dr. Diesfeld
- Dr. Johnson
- Dr. Song
- Ken Krantz
- Neil Paulsen
- Michael Gravely
- Pablo Martini

(*Id.* at pp. 2-4). Obviously, this last second disclosure deprived Defendants of the ability to meaningfully investigate or depose these new witnesses.

After discovery closed but before the summary judgment deadline, Plaintiff stipulated to dismiss KVNA as a party to this action. (Dkt. 69). Plaintiff did not dismiss any other defendant or claim. Based on the exorbitant number of claims, the Count Defendants requested leave to file summary judgment materials in excess of the page and numerical limitations established by local rules. (Dkt. 67). The Court granted this motion, and the County Defendants fully briefed all fifteen claims in forty-five pages. (Dkt. 68, 82). The County Defendants submitted their summary judgment materials on January 20, 2025, almost four years after the alleged incident, almost two and a half years after Plaintiff filed his initial complaint, and after ***twenty-six months of discovery***. (*See, e.g.*, Dkt. 82). At no point between filing his first complaint and his Fourth Amended Complaint did Plaintiff withdraw any claims against the County Defendants; instead, he just added more and more

9

as time went on. (*Compare* Dkt. 1, 4, 20, 34, and 59). Certainly, Plaintiff was aware that he *could* dismiss causes of action and parties if he so wished, as he dismissed both Martini and KVNA during the course of litigation. (Dkt. 66, 69).

Nine days after the County and Medical Defendants filed their motions for summary judgment, Plaintiff filed an expedited motion for an extension of time to respond to both motions. (Dkt. 88). Within the motion, Plaintiff's counsel stated she had multiple commitments that "interfere[d]" with the set response deadline and requested "an extension in good faith and due to the varying demands of other matters," including "a jury trial scheduled in Kenosha County Court on March 10, 2025." (*Id.*). Given Plaintiff's representations, the County Defendants did not oppose Plaintiff's motion for a significant extension of time to file a response. (Dkt. 89).

Unfortunately, Plaintiff failed to inform the Court that the trial scheduled in Kenosha County Court was trial for Plaintiff Justin Blake's underlying disorderly conduct citation (Kenosha County Case No. 21-FO-463). (*See* Dkt. 88). Instead, more than two months after the close of discovery, Plaintiff apparently collected testimony from additional witnesses without the presence or cross-examination of any other counsel in this case and instead submitted portions of the transcript from the municipal trial as an attempt to back-door untimely discovery. (*See* Dkt. 95, 97, 98-1, 98-2, 99, 100).

Seventy-eight days after the County Defendants moved for summary judgment (and twenty-nine days after Plaintiff's municipal trial/self-allotted, undisclosed, and unapproved extension of discovery) Blake filed a motion requesting an extension of length for his response due to "the number of arguments" the County Defendants raised in their moving brief. (Dkt. 92). Similar to Blake's motion for an extension of time, this motion was based entirely on false pretenses. Plaintiff did not actually address each argument contained in the County Defendants' moving brief in his

10

response; instead, Blake "voluntarily dismisse[d]" nine of the fifteen causes of action and spent forty-five pages addressing only *six* of his claims along with his request for punitive damages. (*See* Dkt. 97). Moreover, this "voluntar[y] dismiss[al]" was done in a footnote, not properly through a motion, and almost three years into litigation after the County Defendants were forced to fully brief each of the ten dismissed causes of action. It is unclear if these actions are a tactic of gamesmanship, if they are due to indolence, or something worse.

II. **THIS COURT MUST STRIKE PORTIONS OF PLAINTIFF'S PROPOSED FINDINGS OF FACT IN OPPOSITION TO DEFENDANTS' VNCC AND JESSICA BERGMAN'S MOTION FOR SUMMARY JUDGMENT (DKT. 95), PORTIONS OF PLAINTIFF'S PROPOSED FINDINGS OF FACT IN OPPOSITION TO THE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 99), AND PORTIONS OF PLAINTIFF'S BRIEF IN OPPOSITION TO THE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 97).**

Although collateral motions, including motions to strike, are generally disfavored in this district, they are still permissible. Civil L.R. 56(b)(10), 41(d); Fed. R. Civ. P. 12(f). While Civil Local Rule 41(d) and Federal Rule of Civil Procedure 12(f) are confined to "pleadings," this district has granted motions to strike other papers (including response memoranda) as well. *See Reedigroup, Ltd. v. Hannon Group, Ltd.*, No. 14-CV-309-JPS, 2014 WL 12654594 (E.D. Wis. Sept. 16, 2014) (not reported) (vacated on other grounds). If any set of circumstances calls for an order striking certain portions of response filings, it is this. "[A] motion to strike can expedite, not delay, when it removes unnecessary clutter from the case." *Conti v. Messerli & Kramer, P.A.*, No. 15-C-1489, 2016 WL 3566221, at *1 (E.D. Wis. June 27, 2016) (citing *Heller Fin. Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1924 (7th Cir. 1989)).

Not only does Plaintiff's attempt to shoe-horn in references to testimony obtained outside the presence of other parties and after the close of discovery do nothing but clutter the case, but the

11

way in which Plaintiff went about ensuring the availability of said testimony was both unfairly prejudicial and objectively unreasonable. Unfortunately, Plaintiff was less than forthcoming with the Court when additional time was requested to respond to the County Defendants' motion for summary judgment. With the benefit of hindsight, it is now obvious that Plaintiff's original response deadline was months prior to the municipal trial, and the amended deadline provided Plaintiff just enough time to order transcripts for use in his response. It is clear that Plaintiff made the calculated decision to request a deadline beyond the municipal trial in order to collect this additional testimony, all while failing to notify the Court of the true reason behind the request.

To be clear, it is not that Plaintiff had the municipal trial that is the issue. It is the fact that Plaintiff was deceitful in his filing with the Court and the fact that Plaintiff is trying to improperly use "discovery" collected after the deadline passed (and after Plaintiff's original deadline to respond to summary judgment passed). Particularly concerning is the fact that no defense counsel, whether they would have been physically present or not, would have had the opportunity to cross-examine the witnesses whose testimony Plaintiff now clings to in an attempt to survive summary judgment.

And, this is not a one-off instance. Plaintiff's lack of candor is also reflected in the motion for an extension of page limit, in which Plaintiff cited a need to respond to the large number of arguments raised by the County Defendants as his basis. (Dkt. 92). However, Plaintiff did not respond to at least two-thirds of the arguments the County Defendants advanced in their summary judgment filings. (*Compare* Dkt. 82 *with* Dkt. 87). Rather, Plaintiff used the forty-five pages to address just six claims and the issue of punitive damages. (*See* Dkt. 87). Additionally, both sets of Plaintiff's proposed findings of facts are rife with complete misrepresentation of fact and contain many citations that lead to nowhere. (*See* Dkt. 106, 107). Similarly, the timing of Plaintiff's second amended Rule 26(a)(1) disclosures must be noted. The day discovery closed, Plaintiff identified

12

fourteen new potential witnesses, including those which Plaintiff examined in the municipal trial and whose testimony Plaintiff seeks to use in response to summary judgment. (Meyer Decl., April 29, 2025, ¶ 6, Ex. C, pp. 2-4; Dkt. 95, 97, 98-1, 98-2, 99, 100).

Plaintiff's conduct is unacceptable and unfairly prejudicial, and this Court must take action. The appropriate action in this case is to strike any reference to the municipal trial contained in Plaintiff's response pleadings.

### III. PLAINTIFF'S COUNSEL UNREASONABLY AND VEXATIOUSLY MULTIPLIED THESE PROCEEDINGS SUCH THAT AN AWARD OF FEES AND COSTS IS APPROPRIATE.

Beyond the need to strike portions of Plaintiff's responsive pleadings, this Court must impose monetary sanctions against Plaintiff's counsel for unreasonably and vexatiously multiplying this litigation. Every attorney has an obligation under Federal Rule of Civil Procedure 11(b) to confirm that the claims s/he presents to the Court (1) are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) are based on factual contentions that have evidentiary support.

Based on Plaintiff's broad concessions in their response to the County Defendants' motion for summary judgment, it is clear that Plaintiff's counsel did not fulfill their obligations under Rule 11(b). Plaintiff's counsel engaged in over two years of discovery, filed five different complaints, and only added to the pile of claims against the County Defendants over time. At no point did Plaintiff's counsel withdraw any of the claims against the County Defendants. This conduct forced County Defendants to unnecessarily expend the time and resources to brief their defenses to each claim,

13

even though the frivolousness of their claims should have been glaringly obvious to Plaintiff by January 6, 2025, (at the latest) after Plaintiff had concluded all discovery.

Moreover, as reflected in the County Defendants' moving brief, the claims were so poorly pled that many causes of action were completely ambiguous as to their true nature. (*See generally*, Dkt. 82). For example, Plaintiff's general First Amendment claim against Sheriff Beth and Kenosha County (Count 1), was pled in a way that could have meant Plaintiff was making an individual or a *Monell* claim. (*See id.* at pp. 6-8; *see also*, Dkt. 59, ¶¶ 76-90). The County Defendants were forced to explain why both avenues failed. (*See id.*). This pattern continued throughout the majority of Plaintiff's claims. (*See generally*, Dkt. 59, 82). Therefore, the County Defendants were forced to brief much more than the already voluminous fifteen claims Plaintiff asserted.

But it was not until after Defendants filed their moving brief on January 20, 2025, that Plaintiffs fully conceded dismissal of almost ***two-thirds*** of their claims against the County Defendants (Counts 1, 3, 4, 6, 8, 9, 11, 14, 17) and dismissal one of the named County Defendants (Sheriff Beth). (*See* Dkt. 97). Additionally, Plaintiff did not bother responding to the immunity defenses for all remaining claims except for the excessive force claim. (*See id.*). Plaintiff further dismissed Counts 5, 6, 9, 10, 15, 17 and 18 as to the Medical Defendants. (Dkt. 93). And as for the John Doe defendants, the County Defendants pointed out in their moving brief that any claims against those individuals are time-barred. (Dkt. 82, p. 2). Plaintiff did not address this position at all and never mentioned the John Doe defendants in his response brief. (*See generally*, Dkt. 97). So, after forcing the County Defendants to preliminarily brief fifteen separate causes of action (and under multiple theories of law), ultimately ***Plaintiff substantively maintained one claim***.

Despite Plaintiff's plan to ditch the majority of the pending claims, Plaintiff filed a motion with the Court seeking an extension of the response page limit, claiming he needed to respond to

14

each argument raised by the County Defendants. (Dkt. 92). We now know this was not true. Plaintiff proceeded to fill forty-five pages with arguments on claims for which immunity was conceded, patent misrepresentations of fact, and complete mischaracterizations of all – all of which the County Defendants were required to respond to. (Dkt. 97).

Additionally, Plaintiff sought and received an extension of the allotted number of proposed facts in response to summary judgment: from 100 to 150. (Dkt. 92, 101). Plaintiff not only filed 150 proposed facts in response to the County Defendants' motion for summary judgment (many of which contained numerous proposed facts in and of themselves), but also 59 additional facts in response to the Medical Defendants' motion for summary judgment. (Dkt. 95, 99). Many of those proposed facts Plaintiff submitted in response to the Medical Defendants directly involve, and include accusations against, the County Defendants, and the County Defendants were required to respond to those 59 facts as well. (*See* Dkt. 107). Perhaps most concerning, however, is the blatant mischaracterization of facts contained within Plaintiff's proposed findings of fact, to the extent where many quoted passages are simply wrong, citations lead to nowhere, and text is taken wholly out of context. (*See* Dkt. 106, 107). Again, the County Defendants were forced to expend in inordinate amount of time and resources responding to all 209 of Plaintiff's proposed findings of fact.

Unfortunately, Plaintiff's blatant violations of Rule 11(b) do not lend themselves to a motion for sanctions under Rule 11(c)(2) because of the posture of this case and the timing of Plaintiff's belated concessions in his response brief. Serving Plaintiff with a motion pursuant to Rule 11(c)(2) providing him with 21 days to correct his violation would not remedy Plaintiff's violations or lead to an adequate remedy for the County Defendants, because Plaintiff already withdrew the frivolous claims via summary judgment response.

15

Of course, this Court may *sua sponte* order Plaintiff's counsel to show cause why their conduct described above did not violate Rule 11(b), and it may impose an appropriate sanction after such notice and a reasonable opportunity to respond. *See* Rule 11(c)(3); *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (explaining that there is "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanction for ... bad-faith conduct."). This Court need only "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Burda v. M. Ecker Co.*, 2 F.3d 769, 774 (7th Cir. 1993) (internal quotations omitted). The Seventh Circuit has long recognized that such *sua sponte* action is appropriate where "blind adherence to the procedures in Rule 11 is not possible," particularly where, as here, "[e]vents [ ] move too fast to allow strict compliance with the rule." *Methode*, 371 F.3d at 927. But Rule 11(c)(2) does not provide the County Defendants with any avenue to pursue such an order in the present litigation given the posture of this case and the County Defendants' obligation to strictly comply with Rule 11(c)(2).

Therefore, in the event that the Court is not inclined to act *sua sponte*, the County Defendants seek an Order under 28 U.S.C. § 1927 awarding their excess costs, expenses, and attorneys' fees that were reasonably incurred as a result of Plaintiffs' counsel's demonstrated bad faith in conducting this litigation. Under 28 U.S.C. § 1927,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute is broader in scope than Rule 11, because it is not triggered by the filing of a paper or pleading but focuses instead on counsel's conduct. This Court has the inherent discretionary power to impose sanctions under this statute when an attorney has acted in an objectively unreasonable

16

manner. *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Precedent defines "vexatiously" as either "subjective or objective bad faith." *Vega v. Chicago Bd. of Education*, 109 F.4th 948, 956 (7th Cir. 2024) (*citing Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)). The standard for imposing sanctions under the Court's inherent authority is similar: the Court must find that the party to be sanctioned "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Id.* (*quoting Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018)).

Plaintiff had three years of litigation to dismiss the frivolous claims. But Plaintiff did not avail himself of that opportunity and instead pushed relentlessly forward. In so doing, Plaintiff forced the expenditure of resources on dead-end claims, at the expense of the County Defendants and other cases and litigants on the Court's docket. This demonstrated pattern of failing to comply with the mandates of Rule 11(b) has no possible justification. And it is unquestionable that this conduct unreasonably and vexatiously multiplied these proceedings. *See, e.g., Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006); *Kapco Mfg. Co., Inc. v. C&O Enterprises, Inc.*, 886 F.2d 1485, 1492 (7th Cir. 1989); *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165-6 (10th Cir. 1985).

The Seventh Circuit has stated,

> [W]e wish to make clear that sanctions are not automatically warranted where a party loses a dispositive motion. However, where lengthy discovery and a series of dispositive motions reveal a factual or legal deficiency in a complaint against a defendant, the deficiency should either be remedied or the defendant dismissed. We have said many times that under the American rule, each party bears its own costs in litigation. However, where appropriate, sanctions may shift those costs. Where a party files a baseless claim, which cannot be supported after four years of discovery and which previously has been identified as baseless as against three other defendants, sanctions are indeed appropriate.

*Walter v. Fiorenzo*, 840 F.2d 427, 436 (7th Cir. 1988).

The expenses incurred solely because of Plaintiff's refusal to timely dismiss what he now concedes are meritless claims should not be borne unfairly by the County Defendants. Accordingly,

17

Defendants move the Court pursuant to 28 U.S.C. § 1927 for an Order awarding them their excess costs, expenses, and attorneys' fees reasonably incurred because of Plaintiffs' conduct in litigating summary judgment.

## **CONCLUSION**

For the reasons set forth herein, and in the interests of justice, the County Defendants respectfully request that the Court enter an Order awarding them costs, expenses, and attorneys' fees in pursuing summary judgment.

Dated this 29th day of April, 2025.

       By: /s Brianna J. Meyer
           SAMUEL C. HALL, JR.
           State Bar No. 1045476
           STEVEN C. MCGAVER
           State Bar No. 1051898
           BRIANNA J. MEYER
           State Bar No. 1098293
           Attorneys for Defendants, David G. Beth, County of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, and Wisconsin Municipal Mutual Insurance Company
           CRIVELLO, NICHOLS & HALL, S.C.
           710 N. Plankinton Avenue, Suite 500
           Milwaukee, WI 53203
           Phone: (414) 271-7722
           Fax: (414) 271-4438
           E-mail: shall@crivellolaw.com
                     smcgaver@crivellolaw.com
                     bmeyer@crivellolaw.com