# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

JUSTIN BLAKE,

        Plaintiff,

  v.

Case No: 22-cv-0970

DAVID BETH, et al.,

        Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND SANCTIONS, DKT. 109

NOW COMES Plaintiff, Justin Blake ("Blake"), by his attorneys, and for his brief in opposition to Defendants David Beth, County of Kenosha, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, and the Wisconsin Municipal Mutual Insurance Company, (collectively, the "Defendants", unless otherwise noted) Motion to Strike and Sanctions, Dkt. 109.

## INTRODUCTION

The Defendants seek to sanction Plaintiff, pursuant to 28 U.S.C. §1927, because Plaintiff's amended initial disclosures, as served on January 6, 2025, "add(ing) fourteen witnesses" somehow "deprived Defendants of the ability to meaningfully investigate or depose these new witnesses." Dkt. 110 at 2. The Defendants also argue that Plaintiff's unopposed expedited motion requesting an extension of time to respond to two summary judgment motions and their expedited unopposed motion to extend the length amounts to vexatious litigation. *Id* at 13-18. Additionally, Defendants argue that portions of the Plaintiff's Proposed Findings of Fact and Summary Judgment should be stricken. *Id* at

11-13. Defendants' final argument, made on behalf of VNCC and Jessica Bergmann (hereinafter collectively referred to as "VNCC Defendants"), whom the County Defendants' lawyers do not represent, is that portions of the Plaintiff's Proposed Findings of Fact should be stricken. *Id* at 11. For all the reasons stated below, this Court should deny Defendants' motion in its entirety.

Defendants' demand for monetary sanctions is a new low, ("…this Court *must* impose monetary sanctions against Plaintiff's counsel….") (emphasis added). Dkt. 110 at 13. Defendants filed a motion for sanctions pursuant to 28 U.S.C. § 1927 against Plaintiff's counsel after two years of litigation, solely because they had to write a summary judgment brief on certain causes of action, which *after* Plaintiff's counsel read in the context of legal arguments, agreed that Plaintiff would have a difficult time defeating summary judgment and dropped those claims. This Court can deny Defendants' motion for one simple reason: Defendants neither identified a single case or legal basis nor filed a motion to dismiss prior to the filing of their summary judgment motions to alert or argue to Plaintiff that they could not win on these certain causes of action. They never argued the actual law in an email, a telephone call, or even through smoke signals prior to filing for summary judgment. Instead, Defendants drop the proverbial nuclear bomb and claim that the mere fact that they *chose* to file summary judgment, which they would have filed regardless, caused them harm and is vexatious. Dkt. 110 at 13. Defendants' conduct clearly violates the spirit of zealous advocacy as well as any sense of common decency and decorum. This Court cannot condone their motion and should instead sanction the Defendants and their counsel for raising it in the first place.

**RELEVANT BACKGROUND AND PROCEDURAL POSTURE**

I.       **Procedural Posture of this matter**.

Plaintiff filed his First Amended Complaint on August 24, 2022, naming David Beth, Kenosha County, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Deremeeyun Haynes, Jeremy May, John Doe Officers, Wisconsin Mutual Insurance Company, and ABC Insurance Company and twelve claims. Dkt. 4. Defendants filed its answer in this matter to Plaintiff's First Amended Complaint on October 21, 2022. Dkt. 16. Attorney Samuel Hall sent an email to Plaintiff's Counsel informing them that they are representing Wisconsin Municipal Mutual Insurance Company on October 28, 2022, Dkt. 50-1. Attorney Hall also asked if Plaintiff would "consider filing an amended complaint to correct that…." *Id*. Plaintiff agreed to do so on the date set for amended pleadings. *Id*. The Court then issued its scheduling order on November 14, 2022, setting the filing of the amended pleadings deadline for February 15, 2023. Dkt 19.

Plaintiff filed a Second Amended Complaint adding Defendants Jessica Bergmann and NaphCare on February 15, 2023, Dkt. 20.[1] Plaintiff filed his Third Amended Complaint without objection from Defendants on August 23, 2023, adding Visiting Nurse Community Care (hereinafter "VNCC"), Kenosha Visiting Nurse Association (hereinafter "KVNA"), and Jane Doe Medical Professionals. Dkt. 34. Plaintiff also dismissed NaphCare from this action. *Id*.

---

[1] Subsequent to the filing of this complaint, Plaintiff learned that NaphCare was not the medical provider of Kenosha County during the relevant time. Plaintiff informed Defendants that "it has come to our attention that NaphCare was not the medical service provider of the Kenosha Secure Detention nor the employer of Bergmann on April 25, 2021 when Mr. Blake was arrested." Dkt. 50-3

On November 12, 2022, Plaintiff served his First Request for Production of Documents, First Requests for Admissions, and First Set of Interrogatories to County Defendants. *See* Decl. Kimberley Cy. Motley hereinafter "Motley Decl.", Exhibit 1. On February 15, 2023, Plaintiff served his Second Request for Production of Documents and Interrogatories. Motley Decl. Ex. 2. On July 31, 2023, Plaintiff served his Third Request for Production of Documents Motley Decl. Ex. 3; and on October 24, 2023, Plaintiff served his Fifth Request for Production of Documents and Interrogatories. Motley Decl. Ex. 4.

On February 29, 2024, based on Defendants untimely discovery responses to Plaintiff's First, Second, Third, and Fifth requests for discovery,[2] Plaintiff sent a notice to cure discovery. Motley Decl. at Ex. 5. In the letter, Plaintiff referenced the protective order that was signed by the Court on January 3, 2024. *Id*. at 1. Plaintiff also stated that they have, "inquired on the status of discovery numerous times in 2023, and also on 1/4/24 and 1/15/24. Attorney Meyer has noted in emails on 1/4/24, 1/11/24, and 1/15/24 that counsel is working on providing discovery to us," however "there remains a substantial amount missing." *Id*. Plaintiff demanded that discovery be served no later than April 1, 2024. *Id*.

On April 1, 2024, Plaintiff received supplemental discovery from Defendants in response to Plaintiff's Second Request for Production of Documents served on February 15, 2023, nearly fourteen months after it was initially requested. Motley Decl. at Ex. 6. Included in Defendant's discovery responses were 23 videos taken from several of the cameras inside the Kenosha Public Safety Building depicting Mr. Blake on April 25, 2021

---

[2] Plaintiff's Fourth Request for Production of documents were served only to Defendants VNCC, KVNA, and Jessica Bergmann.

and April 26, 2021, handcuffed and walking into the facility, and subsequently placed in the Emergency Restraint Chair for nearly seven hours. *Id* at 2, Supplemental Response to Request for Production of Documents No. 13.

On April 15, 2024, Defendant Jessica Bergmann was deposed. Defendant Bergmann was asked to identify individuals who were present and who participated in Justin Blake's arrest on April 25, 2021, based on a screenshot of a video taken from one of the videos given to Plaintiff on April 1, 2024. Motley Decl. at Ex. 7. In the screenshot, Ms. Bergmann identified six individuals who witnessed Plaintiff being placed in the Emergency Restraint Chair (hereinafter "ERC"), including herself, some of the Defendant Officers, and a person whom she referred to only as "Corporal Martini" who prior to her testimony was unknown to Plaintiff. Dkt. 74-15, 47:8-14.

On April 25, 2024, Defendant Gloria Galvan was deposed. Defendant Galvan was shown the same photograph as Bergmann and provided the full name of Pablo Martini as one of five other persons pictured around Mr. Blake while he was placed in the ERC. Dkt. 98-7.

Throughout litigation, Plaintiff made numerous attempts to schedule a corporate deposition of Defendant Kenosha County, pursuant to FRCP 30(b)(6). Plaintiff's Counsel informed Defense Counsel on February 27, 2024 of its intention to schedule the Kenosha County's deposition. Dkt.48-3 at 1. On March 13, 2024, Plaintiff sent his Notices of Depositions for all Defendants including Kenosha County. Dkt. 48-4. On April 4, 2024, Plaintiff's Counsel inquired again as to when they could depose Kenosha County's deposition. Dkt.48-5 at 1. On April 5, 2024, Defense Counsel notified Plaintiff that Kenosha County could not be deposed on April 16, 2024. *Id.* One of the purposes of the

corporate deposition of Defendant Kenosha County was also to identify the sheriff deputies employed by Kenosha County who participated in Plaintiff's arrest, detention, and placement in the emergency restraint chair on April 25 and 26.

On April 25, 2024, Plaintiff filed an expedited motion for leave to file a Fourth Amended Complaint based on newly discovered evidence. Dkt. 47. Initially, Defendant's objected to the filing of an amended complaint, however, they withdrew their objections acknowledging that the "parties met and conferred about the need for additional discovery and additional time to complete the required discovery on May 20, 2024." Dkt. 56 ¶6. On June 26, 2024, Plaintiff filed his Fourth Amended Complaint adding Defendant Pablo Martini. Dkt. 59. Subsequently on October 24, 2024 Plaintiff voluntarily dismissed Defendants' Pablo Martini (Dkt. 66) and KVNA from this action. Dkt. 66, 69.

## II. Relevant Background of Initial Disclosures.

Defendants attempt to mislead this Court and claim that "Plaintiff served a second Amended Rule 26(a)(1) initial disclosure adding fourteen witnesses on the day before discovery closed in this case, depriving Defendants of the ability to meaningfully investigate or depose these new witnesses." Dkt. 110 at 2. In support of its argument, Defendants allege that Plaintiff's amended disclosures named "new witnesses" who include Jessica Bergmann, Linda Scott, Douglas Simpson, Monica Cummings, Judith Devine, Winnie Dortch, Tony Atkins, Dr. Diesfeld, Dr. Johnson, Dr. Song, Ken Krantz, Neil Paulsen, Michael Graveley and Pablo Martini. Dkt. 110, p. 9. Defendants' allegations lack merit and should be ignored.

First, Plaintiff learned the identities of eleven of the fourteen witnesses Defendants complain of from Defendants' disclosures, document production, and depositions. Those

eleven witnesses are: Jessica Bergmann, Neil Paulsen, Ken Krantz, Judith Devine, Linda Scott, Douglas Simpson, Dr. Diesfeld, Dr. Johnson, Michael Gravely, Monica Cummings, and Pablo Martini. Defendants disclosed those witnesses to Plaintiff through (1) Defendants' initial disclosures3, Motley Decl. at Ex. 8. (2) Defendants designating them as the corporate representatives for Kenosha County and the VNCC for 30(b)(6) depositions, Id at Ex. 9, 10 and (3) Defendants depositions or documents produced to Plaintiff. Of the remaining three witnesses, two are journalists, Winnie Dortch and Tony Aikins, and the third is one of Mr. Blake's treating doctor, Dr. Song - all of whom were not mentioned by any party in any of the motions for summary judgment filings.

On November 30, 2022 Plaintiff and Defendants served their Rule 26(a)(1) initial disclosures. Dkt. 111-1 and Motley Decl. Ex. 8. In Defendant's initial disclosures it stated that they were also disclosing,

> "Any and all individuals referenced in the documents listed along with Kenosha County Defendants' and Plaintiff's Rule 26(a)(1) Initial Disclosures, and in any documents produced by any party in discovery." Motley Decl. Ex. 8 at 5.

Additionally, in Defendant's initial disclosures it also states that,

> "Kenosha County Defendants hereby incorporates any other witnesses identified by any other party in their Initial Disclosures, including supplements thereto, or other written discovery or expert disclosures and, further, hereby reserve the right to amend, supplement, correct, or clarify these Initial Disclosures as discovery progresses." *Id.*

And in Defendant VNCC and Jessica Bergmann's (hereinafter referred collectively as "Defendant VNCC" unless otherwise noted) expert disclosures, it noted that they "reserves the right to call," "[a]ny and all healthcare providers who have treated and/or

---

[3] Jessica Bergmann, Neil Paulsen, Ken Krantz, and Judith Devine were disclosed to Plaintiff by Defendants in Defendants' initial disclosures. Motley Decl., at 9; Dkt. 111-1.

examined the Plaintiff at any time." Motley Decl., Ex. 10. At 1. Dr. Diesfeld, Dr. Johnson, and Dr. Song have treated and/or examined Mr. Blake.

As demonstrated below, each of the "surprise" witnesses that Defendants claim to have no knowledge of until "the day before discovery closed in this case" (Dkt. 110 at 2), most were witnesses disclosed by Defendants. Additionally, the Defendants' argument that Plaintiff's disclosure warrant sanctions is preposterous and is sanctionable conduct in of itself. Defendants were aware of the fourteen "new witnesses" whom Plaintiff named in his amended disclosures in the following ways.

**A.** **Jessica Bergmann -** has (1) been a defendant in this case (Dkt. 20, 34, 59), (2) was named in Defendants' initial disclosures, (Motley Decl. Ex. 8 at 5), and (3) Attorney Meyer attended Ms. Bergmann's deposition on April 15, 2024. Dkt.73-2 at 1.

**B.** **Neil Paulsen -** was named in Defendants' initial disclosures. Motley Decl. Ex. 8 at 3.

**C.** **Ken Krantz -** was named in Defendants' initial disclosures. *Id*.

**D.** **Judith Devine –** is (1) named in Defendants' initial disclosures. Motley Decl. Ex. 8 at 5. (2) was disclosed to Plaintiff from Defendants' document production. Dkt. 80-21 (Exhibit U to Attorney Meyer's Declaration; Supplemental Narrative of Officer Kroshnitzke naming Ms. Devine), and (3) Ms. Devine was named in and relied on in Defendant's Proposed Findings of Fact as a witness whom Defendants repeatedly falsely claimed was prevented "from entering the Public Safety Building" because of Mr. Blake and his fellow protestors. Dkt. 82 at 14, 17.

**E.** **Linda Scott -** was (1) identified as the corporate representative of VNCC on March 21, 2024, in an email sent by Defendant VNCC Attorney Brian Baird. Motley

Decl. Ex. 9 at 1, and (2) Ms. Scott was deposed on April 15, 2024 and Attorney Meyer was present for this deposition. Dkt. 74-16 at 1.

F. **Douglas Simpson -** was (1) identified as the corporate representative of Kenosha County and (2) in Defendant's Response to Plaintiff's First and Fifth Request for Production of Documents and Second Interrogatory, Douglas Simpson *signed* as the Corporate Representative of Kenosha. Motley Decl. at Ex. 11, 12, and (2) Douglas Simpson was deposed on July 1, 2024 and Attorney Meyer was present. Dkt. 74-2 at 1.

G. **Dr. Diesfeld, Dr. Johnson, and Dr. Song – (1)** VNCC Defendants provided expert disclosures on November 22, 2024 and reserved the right to call, "[a]ny and all healthcare providers who have treated and/or examined the Plaintiff at any time," Motley Decl., Ex. 10 at 1. (2) Defendant VNCC provided the expert report of Dr. Sanjay K. Patari. Motley Decl. Ex. 15. In the report Dr. Patari identified Dr. Johnson and Dr. Diesfeld as medical professionals who treated and/or were referred to treat Mr. Blake. Motley Decl. Ex. 13 at 6-7. Additionally, Plaintiff went above and beyond its disclosure requirements and specifically named Drs. Diesfeld, Johnson, and Song in its supplemental disclosures on January 6, 2025. None of the doctors were named in any of the parties Summary Judgment briefs or responses.

H. **Michael Graveley** – Defendant Kenosha County provided Plaintiff with text message communications between Kenosha County District Michael Graveley regarding Mr. Blake that were sent and received on April 26, 2021. Motley Decl. Ex. 14.

I. **Pablo Martini –** was (1) previously named as a defendant in this case. Dkt. 59 ; and (2) Defendant Gloria Galvin was deposed on April 25, 2024, and she identified Pablo Martini in a photograph shown to her as one of the officers who witnessed

Mr. Blake being placed in the Emergency Restraint Chair. Dkt. 98-7.

**J.** **Monica Cummings -** Defendants deposed Tanya McClean, a third-party witness on July 27, 2023. In the Deposition, Ms. McClean identified Monica Cummings and Attorney Meyer was present. Motley Decl. Ex. 15 at 21:17-19.

**K.** **Winnie Dortch and Tony Atkins -** are two journalists who reported about Justin Blake and the subsequent protests. Winnie Dortch was reporting for CBS 58 news and Tony Atkins was reporting for the WTMJ 4 news outlet. Motley Decl. Ex. 16, 17. As their reporting is publicly available, out of an abundance of caution and transparency, Plaintiff added these two reporters to their supplemental initial disclosures. Dkt. 111-3. Neither Dortch nor Atkins was mentioned in any of the parties Summary Judgment briefs or responses.

Defendants are grasping at straws trying to convince the Court that Plaintiff failed to disclose witnesses to them when Defendants were aware of each witness' identity and/or their identity was available to them. To suggest otherwise is deplorable and surprisingly dishonest.

## ARGUMENT

**I.** **This Court should neither strike Plaintiff's proposed findings of fact (Dkt. 95 and 99) nor brief in opposition (Dkt. 97).**

As an initial matter, the Eastern District of Wisconsin's Local Rules explicitly state that "[c]ollateral motions, such as motions to strike, are disfavored." Civil L.R. 56(b)(10). The comment to the rule further states: Civil L. R. 56(b)(10) clarifies that collateral motions in the summary judgment process, including motions to strike, are disfavored.

Whenever possible all arguments relating to the other party's submissions should be contained in memoranda. Defendants had a chance to raise these issues in their reply

10

materials in support of their Motion for Summary Judgment, so this motion is unnecessary and contrary to this Court's rules. None of Defendants' arguments even approach the level where a disfavored motion to strike would be an appropriate remedy. Defendants do not cite a scilla of evidence to support their motion. It also is of note that Attorney Meyer also argues on behalf of VNCC Defendants, whom she does not represent, that portions of Plaintiff's Proposed Findings of Fact in Opposition to VNCC Defendants should also be stricken. Dkt. 110 at 11. Defendants motion to strike should be denied in its entirety.

Additionally, Defendants now complain, although they did not oppose Plaintiffs motion to enlarge (Dkt. 101), that forty-five pages was essentially too long to address "only six claims along with a request for punitive damages." Dkt. 110 at 2. Defendants, who filed a forty-five-page summary judgment motion (Dkt. 82) and 187 proposed findings of fact (Dkt. 83), without any case cites ignore the fact that the number of claims that Plaintiff defended does not dictate the number of pages that it found necessary. Plaintiffs rightfully needed additional pages to adequately make its arguments which required substantial analysis of the constitutional issues presented. Plaintiff do not owe a duty to Defendants to lay out its litigation strategy for its page extension, which they did not oppose. It simply must make his request in good faith.

### A. There is no evidence that Plaintiff's counsel was deceitful and such allegations should not be callously thrown around without evidence.

Defendants' position rests on the belief that Plaintiff's counsel deceitfully asked for an extension of time to respond to two summary judgment motions. In its motion for sanctions, Defense Counsel specifically states that,

> "Plaintiffs (are) being less than forthcoming with the Court when additional time was requested to respond to County Defendants Motion for Summary Judgment. With the benefit of hindsight, it is now obvious that Plaintiffs original response deadline was months prior to the municipal trial and the

amended deadline provided Plaintiffs just enough time to order transcripts for use in his response." Dkt. 110 at 12.

There is no evidence that Plaintiff was deceitful. On January 20, 2025, Defendants filed their Proposed Findings of Facts, asking the Court to adopt the fact that "Jury selection for Plaintiff's trial on his disorderly conduct citation is set to occur March 10, 2025. (Meyer Decl., ¶ 17, Ex. N, Oct. 4, 2024, entry)." Dkt. 83 ¶185. Also on January 20, 2025, in Attorney Meyer's Declaration she attached the Wisconsin Circuit Court Entry notes for Justin Blake's Kenosha County Municipal Court Case 2021FO000463 where it also clearly notes that there is a Jury Trial scheduled for March 10, 2025. Dkt. 80-14 at 2. Additionally, Defendants noted that, "On June 22, 2021, Kenosha County issued Plaintiff a citation for disorderly conduct based on his conduct at the KCJ in *Kenosha County v. Justin S. Blake*, Kenosha County Case Number 21-FO-463." Dkt. 83 ¶180. Therefore, Defendants knew, prior to Plaintiff requesting an extension, that there was a municipal trial scheduled before Plaintiff's extended response deadline. It is insulting, yet somehow flattering, that Defendants construe their own shortcomings and lack of attention to detail as Plaintiff being deceitful.[4]

Nine days after Defendants moved for Summary Judgment, on January 29, 2025 Plaintiff filed an unopposed expedited motion for extension to respond to the two summary

---

[4] At this point it is evident that Defendants lack of attention to detail is the real issue here: Defendants blame Plaintiff for naming "new" witnesses, yet the pleadings and other papers, and Defendants' initial disclosures, discovery documents, and designated corporate witnesses show that these "new" witnesses that Plaintiff "added" were actually known to Defendant before Plaintiff amended his disclosures.

The same can be said for the municipal trial—prior to Plaintiff asking for an extension of time to respond to summary judgment, Defendants' counsel noted the municipal trial, Dkt. 80-14 at 2—the same municipal trial that Defendants complain of.

It is a safe to assume that if the municipal trial ended up in a "guilty" verdict, instead of "not guilty," Defendants would be attempting to use the same to "bolster" their own arguments.

judgment motions of Defendants and VNCC Defendants. Dkt. 88. As grounds for the motion, Plaintiff truthfully noted other court filings and responsibilities that significantly impacted the time constraints that Plaintiffs' counsel were under that interfered with the statutory timeline to properly respond to the summary judgment motions. *Id* at 1-2.

Specifically, Plaintiff noted that they had several commitments including "a jury trial scheduled in Kenosha County Court on March 10, 2025, a five-day jury trial in the Wisconsin Eastern District Court for case 22-CV-0856 beginning on March 17, 2025,"[5] as well as "in the *Marwan Mahajni v. Milwaukee County, et al*., E.D. Wis. Case No. 24-CV-0416 (also) before this Court "a response brief to an interlocutory appeal that was due on March 24, 2025, and (that Attorney Motley had) an international trip to Oxford University for the purposes of giving a presentation on March 6, 2025." *Id.* Defendants and VNCC Defendants did not oppose Plaintiff's expedited motion to extend the deadline to answer the two summary judgment motions. Dkt. 89.

Incredulously, their argument is that Plaintiff deceived the Court in not letting it know that the Kenosha jury trial was specific to Mr. Blake's citation. Dkt. 110 at 10. Plaintiff was not hiding this from the Court – both because it is publicly available, but also because Mr. Blake's municipal trial was not the root cause of the extension of time. Dkt. 88 1-2. Defendants were aware of the Mensah jury trial and did not object to Plaintiff's request to extend. Dkt. 89. Plaintiff's representations regarding his reason for an extension were genuine and made in good faith.

Clearly, Defendants were aware that Mr. Blake was cited for disorderly conduct by their client, Kenosha County, and they also knew that a municipal jury trial was set for

---

[5] *Estate of Cole v. Mensah*, et al, which case was tried to a jury before Judge Adelman and resulted in a hung jury.

March 10, *before* Plaintiff filed his expedited motion for extension. Dkt. 83 ¶185; Dkt. 80-14 at 2.[6] It was only because of Defendant Kenosha County's insistence on prosecuting the baseless offense of Disorderly Conduct and its refusal to dismiss the meritless civil charge against Mr. Blake that the trial even occurred. The issue is that Defendants did not expect Mr. Blake would succeed. Defendants undoubtedly want this Court to ignore the testimony of one witness, Judith Devine, whose testimony in the Kenosha County jury trial against Mr. Blake directly and accurately contradicts their defense. Dkt. 97 at 8. Their attempts at discrediting Ms. Devine by launching a direct attack on Plaintiff's counsel is futile.

Second, Plaintiff did inform the Court of the jury trial in the Wisconsin Eastern District Court for *Estate of Alvin Cole, v. Joseph Mensah,* E.D. Wis. 22-CV-0856 beginning on March 17, 2025. Dkt. 88, 1-2. Both counsels to that matter projected that the trial could last five days. *Estate of Cole*, Dkt. 40 at 6 and Dkt. 65 at 6. The jury trial lasted four days, resulted in a hung jury, causing Judge Adelman to declare a mistrial, and is rescheduled to be retried on September 8, 2025. *Id.* at Dkt. 84.

Third, Plaintiff also indicated its obligation to respond to an interlocutory appeal lodged by the same defense law firm (and before this Court) in *Marwan Mahajni v. Milwaukee County, et al.,* E.D. Wis. Case No. 24-CV-416 and Seventh Circuit Case No.: 24-3175. On January 10, 2025, the Seventh Circuit issued a briefing schedule confirming Plaintiff-Appellee requirement to file his response brief by March 24, 2025. Dkt. 10. Without conferring with Plaintiff's Counsel, Appellant-Defendants filed a motion to extend their interlocutory appeal to suspend proceedings until the District Court properly

---

[6] Defendants referenced the March 10th jury municipal court trial date in their summary judgment motions and proposed findings nine days before Plaintiff motioned for time to respond. Dkt. 83 ¶185.

rendered its decision. Stated differently, Defense Counsel prematurely appealed an issue that in turn created a timing conflict for Plaintiff's attorneys. This was cited in Plaintiff's request to extend time in this matter. Dkt. 88, 1-2.

And lastly, Plaintiff also wrote in his unopposed Motion for Extension of Time, that Attorney Kimberley Cy. Motley had "an international trip to Oxford University for the purposes of giving a presentation on March 6, 2025." Attorney Motley was invited to speak at Oxford University, she did travel there, and she gave a presentation.  Motley Decl. at Ex. 18. Plaintiff was not "less than forthcoming" nor were they "deceitful in its filing(s) with the court". Dkt. 110 at 12. This Court should deny the motion for sanctions with regard to Plaintiffs' bonafide request for an extension.

**B. Plaintiff was not deceitful in using discovery.**

Defendants also complain that they "could not cross examine" certain "witnesses" from the municipal trial. This argument lacks merit. There were a total of five witnesses who testified in the municipal trial, Det. Allison George, Sgt. Michal Pittsley, Deputy Kyle Bissonnette, Deputy Brian Koschnitzke, and Judith Devine.  Motley Decl. at Ex. 19. Defendants knew of the identifies of **all five witnesses who testified in Mr. Blake's municipal trial and Defendants** also disclosed in their initial disclosures served on November 30, 2022.  Motley Decl. Ex. 8 at 2, 3, and 5.   Although Defendants now represent that they are concerned about multiple "witnesses," in reality they are only concerned with the only one witness who Mr. Blake called in the municipal trial, Judith Devine. Motley Decl. at Ex. 19.  Kenosha County, through its special prosecutor, called the four Kenosha County officers that it named in the initial disclosures. *Id* and Motley Decl. Ex. 8 at 2, 3, and 5.  Defendants could have subpoenaed Ms. Devine, to testify at

a deposition, but failed to do so. *Id*. Instead, Defendants relied on hearsay from a written police report suggesting that Ms. Devine's observation aligned with their theory of the case (i.e. that Blake was blocking the door, which was the basis of his arrest). Moreover, Defendants claim this lack of cross examination prejudiced them, but the same argument could apply to these police reports Defendants used. Dkt. 110 at 10. Plaintiff's counsel did not have the opportunity to question the same witnesses when Defendants' (or its' agents) had the opportunity to question them and write a subsequent report. Defendants' final, bare-boned argument is that Plaintiff's proposed findings of fact use testimony from a witness that they disclosed in their initial disclosure and that it should be struck. Dkt. 110 at 13. Again, Defendants knew and specifically named Ms. Devine prior to Plaintiff amending his disclosures. Motley Decl. Ex. 8 at 5. Defendants could have deposed her, interviewed her, or spoken to her during the "twenty-six months of discovery" (Dkt. 110 at 2) but failed to do so.

Defense Counsel further doubles down on their unfounded attacks stating that "Plaintiff was deceitful in …. trying to improperly use "discovery" collected after the deadline has passed." Dkt. 110 at 12. And that "Plaintiff's lack of candor is also reflected in its motion for an extension of page limit, in which Plaintiff cited a need to respond to the large number of arguments raised by the County Defendants as his basis." *Id*. These are ridiculous accusations for several reasons.

First, Defendant did not object to Plaintiff's expedited motion for extension (Dkt. 89) nor did they object to Plaintiff's motion to enlarge its response to Defendants' summary judgment. Dkt. 101. Second, Plaintiff does not have a duty provide defendants with court trial transcripts that are readily available to Kenosha County as the prosecuting

party against Mr. Blake in the municipal court. Additionally, Plaintiff does not have a duty to disclose transcripts from a third-party witness, whom Defendants identified in their initial disclosures. And last, Defendant Kenosha County is the one who appointed a special prosecutor for the disorderly conduct charges unsuccessfully brought against Mr. Blake. Throughout this matter and the municipal court matter, Defendants shared discovery with the prosecuting attorney against Mr. Blake, and consistent with their logic, should be sanctioned for not sharing the jury trial transcripts with Plaintiff. Motley Decl., Ex. 24 at 13 ¶84. For example, Defendants objected to Plaintiff's request for documents provided to the Special Prosecutor James Sempf "regarding Justin Blake from 2018-2021" and delayed producing them to Plaintffs. *Id*. Yet, those same documents were happily provided to the Special Prosecutor for the municipal trial. Motley Decl. *Id* at ¶84. Defendants want it both ways.

Also, Defendants accusations presuppose that Plaintiff knew that Judith Devine, an unrepresented third-party citizen and arguably Kenosha County's star witness, would come to Mr. Blake's jury trial unrepresented and without a subpoena to refute Defendant's primary basis for arresting, detaining, and charging Mr. Blake. Dkt. 98-2 at 74:24-25; 75:1. This was just as shocking to Plaintiff's counsel as it clearly was to Defendants when she testified contrary to the allegations in the police report. It also suggests that before Plaintiff filed his expedited motion to extend its response to the two summary judgments, that they forecasted that none of the Defendants would oppose the extension, Plaintiff planned to have Ms. Devine testify without issuing her a subpoena at a jury trial for charges brought by Kenosha County on a date they were aware of, knew that Ms. Devine would show up and refute their entire basis for arresting Mr. Blake, that Mr. Blake would win the jury trial,

and that Plaintiff calculated the time period to order the trial transcripts in the Kenosha County matter to use in this matter all in a big scheme to fight against their Summary Judgment motions. That is as ridiculous as it sounds.

The fact of the matter is that Plaintiff would not know who Judith Devine was had Kenosha County not insisted on arresting and charging Mr. Blake with bogus charges of disorderly conduct and obstruction that lacked probable cause from the beginning. Now, Defendants request to strike the testimony of their former star witness, Judith Devine, who under oath contradicted Defendants' narrative that Mr. Blake, or anyone else for that matter, ever blocked her from entering the Public Safety Building on April 25, 2021.

Interestingly, Defense Counsel asks to "strike any reference to the municipal trial contained in Plaintiff's response pleadings," yet want this Court to consider everything in the municipal court that they repeatedly brought up in their filings based on the bogus charges unsuccessfully pushed forward by their client, Kenosha County. Dkt. 110 at 11-13. Specifically, in Defendant's Proposed Findings of Fact and Summary Judgment Motions, they asked this court to adopt the fact that "Jury selection for Plaintiff's trial on his disorderly conduct citation is set to occur March 10, 2025. (Meyer Decl., ¶ 17, Ex. N, Oct. 4, 2024, entry)." Dkt. 83 ¶185. Additionally, in Attorney Meyer's Declaration she attached the Wisconsin Circuit Court Entry notes for Justin Blake's Kenosha County Municipal Court Case 2021FO000463, where it also clearly notes that there is a jury trial scheduled for March 10, 2025. Dkt. 80-14 at 2. Defendants also want the Court to accept the fact that, on June 22, 2021, Kenosha County issued Plaintiff a citation for disorderly conduct based on his conduct at the KCJ in *Kenosha County v. Justin S. Blake*, Kenosha County Case Number 21-FO-463. Dkt. 83 ¶180. Defendants continued to request the

"fact" that on July 14, 2021 and November 17, 2023 Plaintiff failed to appear, and that the municipal court entered default judgments against him. Dkt. 83 ¶181, 183. And also, Defendants want this court to accept the fact that on July 19, 2021 and February 16, 2024 the municipal court reopened the case at Plaintiff's request. Dkt. 83 ¶182, 184. Again, Defendants cannot have it both ways.

Even in Defendants' reply brief they cannot help themselves but still refer to the actions that occurred in the municipal court record and state that "it does not matter that almost four years after the fact and after two default judgments were entered against him Blake was victorious in a municipal jury trial on the citation." Dkt. 105 at 8. Defendants only wish this court to consider portions of the municipal court that suit their defense and to completely ignore any of Plaintiff's references to the same matter. To accept Defendants' supposed reasoning would prejudice Plaintiff heavily and wrongfully.

It is not appropriate to strike "any reference to the municipal trial contained in" Plaintiff's proposed findings of fact and brief. Defendants knew of the municipal trial witness identities whom they disclosed. Motley Decl. at Ex. 8.  When a party knows of a person's identity through the discovery process, he has no obligation to alert the opposing party to their identity. *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 732–34 (7th Cir. 2004). Here, Plaintiff went above and beyond what was required and amended its disclosure **to include witnesses already known to Defendants**. Because Defendants' position lacks merit, it would be an abuse of discretion to strike Plaintiff's proposed findings of facts and brief in opposition. *Gutierrez,* 382 F.3d at 732–34.

## II.    This Court can easily conclude that Plaintiff's counsel did not unreasonably and vexatiously multiply these proceedings in a manner that warrants fees and costs.

Defendants' motion for sanctions under 28 U.S.C. § 1927 are inappropriate and

this Court should deny it outright. Section 1927 provides that:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof *who so multiplies the proceedings* in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Here, the primary grounds for Defendants' motion for sanctions is that Plaintiff made a conscious choice to not pursue certain claims *after* the Defendants' filed their respective motions for summary judgment, and by making them file their motions for summary judgment, Plaintiff "so multiplie[d] the proceedings." Dkt. 110 at 16, 17. Consistent with the rest of Defendants' allegations, this argument is fatally flawed.

### A. Defendants Never Raised Issues Through a Motion to Dismiss, Pursuant to Rule 12(b)(6) And Are In The Same Position That They Would Be In Pursuant to Rule 56.

Pursuant to local rules, Defendants would have either had to file a motion to dismiss as to the claims about which they complain, FRCP 12(b)(6), or alternatively, would still have moved for summary judgment under FRCP 56. How would the current position that Defendants now find themselves be any different than if they had moved for relief under either FRCP 12 or 56?

Defendants never moved to dismiss any of the causes of action in any of the five complaints filed, so Plaintiff did not have the benefit of defense counsel's wisdom or belief as to why certain causes of action could not serve as the basis of recovery or were not viable claims. All twelve causes of action that were in the original complaint remained in the amended complaint. *Cf.* Dkt. 1 at 11-24, Dkt. 59 at 18-39. This means that even before moving for summary judgment, Defendants had a belief (or at least advanced knowledge) of the causes of action that they could have moved to dismiss for the very same reasons

as they did on summary judgment but chose not to do so.

This is the exact situation Judge Stadtmueller dealt with in the *Fail-Safe* case,[7] where after winning partial summary judgment on one of two causes of action, and then having the second cause of action dismissed through a motion for judgment on the pleadings, Defendant A.O. Smith moved for sanctions under §1927 and argued that the Court should sanction Fail-Safe because of certain work and discovery it had to do before the Court dismissed the second and final count. Notably, and even more relevant to the current motion, the Court, in denying the motion for sanctions, held that:

> "Much, if not all, of the conduct that the defendant complains of occurred in the wake of the court's summary judgment order in September of 2010. However, this case was ultimately dismissed based on the defendant's motion for a judgment on the pleadings . . .There was no reason the motion raised by the defendant [for judgment on the pleadings] on December 23, 2010, could not have been made months, if not years earlier, such as in AOS's original motion for summary judgment."

*Fail-Safe*, 2011WL1002838, *2.

The same holds true here; Defendants complain that they had to draft a motion for summary judgment as to certain counts. Dkt. 110 at 2. They could have easily provided the same legal citations in a motion to dismiss, and theoretically, would be in the same position as they are now with certain causes of action not being pursued.

### B. Defendants Did Not File A Rule 11 Motion Before Filing For Summary Judgment.

A final point to raise is appropriate. Even if Defendants did not file or seek a motion to dismiss under FRCP 12(b)(6), they still had available to them the ability to send a Rule 11 safe harbor letter to Plaintiff about some of the causes of action but chose not to do so. Had Defendants identified the legal grounds as to why the Plaintiff could not win

---

[7] *Fail-Safe, LLC v. A.O. Smith Corporation*, 08-CV-0310, 2011WL1002838 (E.D. Wis. March 18, 2011).

specific causes of action as pled (i.e. that certain identified causes of action were not appropriate as causes of action, such as punitive damages), Plaintiff could have analyzed Defendants' position and made certain choices at that time. The safe harbor provisions of Rule 11 exist for a reason.

### C. Plaintiff's Counsel Did Not Unreasonably and Vexatiously Multiple These Proceeding And Attorneys Fees And Costs Are Not Appropriate

#### i. Defendants Fail to Cite to Case Law About Claims Not Being Pursued in Response to Summary Judgment Are Frivolous.

Interestingly, Defendants do not cite to any case for the proposition that where a party acquiesces in response to a motion for summary judgment and does not force the moving party to file a reply as to a cause of action, as was done here, that sanctions under § 1927 are appropriate. Nor do Defendants cite to a case where sanctions are appropriate when a party reviews an opponent's filing and makes the tactical decision to dismiss a cause of action because it is weaker than other causes. Indeed, it is axiomatic to basic legal strategy that if Plaintiff cannot convince the court to rule in their favor on the easier causes of action, through the denial of summary judgment or otherwise, for example, then it certainly is harder to win the other counts. *See, e.g., Fail-Safe*, 2011WL1002838, *2.

Instead, Defendants state that "Blake's motion for extension of time and Motion requesting extension of length "was based entirely on false pretenses" as we cited that it was "due to the number of arguments". Dkt. 110 at 10. Defendants claim that "at no point did Plaintiff's counsel withdraw any of the claims against the County Defendants" Dkt. 110 at 13. However, Defendants never filed a motion to dismiss any of the counts in the five complaints nor did they ever attempt to confer with Plaintiff regarding their arguments

refuting the claims. Instead, Defendants ask this court to *sua sponte* order Plaintiff to show cause why they did not violate Rule 11 and impose sanctions. Dkt. 110 at 16.

Defendant further argue that they were "forced to explain why both avenues [of the First Amendment Claims against Beth and Kenosha County] failed." Dkt. 110 at 14. Defendants do not even consider the thought that perhaps Plaintiff made the conscious choice, after reviewing Defendants' briefs, that fighting the First Amendment Claim against Beth and Kenosha County would be difficult to argue and win (but not impossible), and rather than burdening the Court with deciding an issue that is secondary to stronger issues, like the clear First Amendment violations by the remaining defendants, it was best to concede. While defense counsel may believe that there is no basis for the First Amendment Claims against David Beth and Kenosha County, there is case law that Plaintiff could have cited in opposition, to support its arguments. But the Plaintiff's ability to cite cases in opposition does not mean that they have to do so. And, as noted, in this district it is clear that "*zealous advocacy requires, rather than prohibits, a willingness to accept the flaws in one's respective legal position* . . ." *Fail-Safe,* 2011 WL 1002838, *2 (emphasis added). Defendants' position is that if a responding party concedes a point *after* it is raised on summary judgment and does not continue to pursue it, that should be the basis of sanctions. That conclusion is preposterous and certainly not vexatious.

Additionally, on February 29, 2024, based on Defendants' untimely discovery responses to Plaintiff's First discovery request served on November 12, 2022 (*See* Motley Decl., Ex. 1), their Second request served on February 15, 2023 (Ex. 2), Plaintiff's Third request served on July 31, 2023 (Ex. 3), and Plaintiff's Fifth requests for discovery served on October 24, 2023 (Ex. 4) Plaintiff sent his first notice to cure discovery deficiency letter.

Motley Decl. at Ex. 5. Later, on October 17, 2024, Plaintiff sent his second notice to cure discovery based on Defendants' deficient responses to its Seventh discovery request served on July 12, 2024. Motley Decl. at Ex. 20. Plaintiff was working with Defendants in obtaining discovery that was over two years old and instead of involving the court, tried to patiently work with Defendants in obtaining the much-needed discovery.

Attorney Motley and Defense Counsel Steven McGaver met and conferred on November 26, 2024 regarding outstanding discovery issues. Motley Decl. at Ex. 21. At no point did Attorney McGaver or Attorney Meyer in this or any other meetings try to discuss their concerns with any of the claims.

Subsequently, Defendants provided Plaintiff with over 25 gigabytes of discovery on December 6, 2024 supplementing their responses to Plaintiff's First and Second requests, which included videos of Mr. Blake's detention, Kenosha County training documents from 2018-2020, incident reports. Motley Decl. at Ex. 22. Defendants asked for even more time in their response noting that they were still waiting for documents from their clients, which included 2021 training videos, procedures, embedded videos, etc. *Id.*

Thereafter, Defendants provided more than 10 gigabytes of discovery on December 10, 2024, which included 2020 and 2021 Kenosha County Sheriffs training materials, the emergency restraint chair uses from April 26, 2020 through April 26, 2021, and various videos. Motley Decl. at Ex. 23. On December 21, 2024, Defendants shared over three hundred pages of documents responsive to Plaintiff's Seventh discovery request. Motley Decl. at Ex. 25. Defendants conveniently ignore the fact that they intentionally delayed discovery and provided over 35 gigabytes of documents in December 2024 most of which was over twenty months overdue. Motley Decl. at Ex. 22,

23, and 25. All of this discovery was given a few weeks before Defendants filed its motion for summary judgment, of which many of the documents included policies and training materials of Kenosha County from 2018 through 2023 which were important for Plaintiff's First Amendment and *Monell* claims.

Defendants' argument that merely having to file a summary judgment motion on a claim that they never moved to dismiss as frivolous or not grounded in law is vexatious changes the entire dynamics of litigation in this District, and perhaps nationally. Plaintiff can accept that some of his claims have some flaws. But can Defendants do the same?

      **ii.      Defendants Cited Cases As To Vexatious Litigation Are Not Comparable To The Facts Here.**

Defendants cite to a number of cases that identify the standard for vexatious litigation are appropriate for sanctions. But Defendants fail to cite to any cases that are comparable with a party having to file summary judgment to avoid liability on claims never raised as being frivolous in the first instance. None of the five primary cases (*Methode, Burda, Vega*, *Steinert, and Jolly)* that Defendants cite to come close to facts in this matter.

In *Methode,* the District Court imposed sanctions on appellant electronics corporation and its attorney for filing an untrue verified complaint alleging that venue was proper in Northern District of Illinois, when the electronics corporation sought a temporary restraining order, it chose not to return to court in New Jersey where issues between the parties had previously been litigated. Dkt. 110 at 16, citing *Methode Elecs., Inc. v. Adam Techs., Inc,* 371 F. 3d 923 (7th Cir. 2004).

In *Burda,* plaintiff and defendant settled a worker's compensation claim. Plaintiff's attorney refused to provide defendant's surety, which deducted 20 percent as withholding with requested taxpayer identification number. Dkt. 110 at 16, citing *Burda v. M. Ecker*

Co. 2 F.3d 769, 772-774 (7th Cir 1993). The attorney filed suit under plaintiff's name, asserting defendant failed to tender the settlement payment. *Id*. The district court granted defendant's dismissal motion and imposed sanctions against the attorney as "represented party" and *sua sponte* sanctioned the signing attorney. *Id*.

In *Vega,* an attorney assaulted opposing counsel, then lied to the court about the physical interaction. Dkt. 110 at 17, citing *Vega v. Chicago* Bd Ed. 109 F. 4th 948 (7th Cir. 2024). Additionally, as to the matter concerning the assault of opposing counsel, the district court found that the attorney for the plaintiff was on notice of the potential for sanctions before a March 2018 order because she submitted her post-evidentiary hearing brief several days after defendants, and then failed to timely respond to defendants' sanctions request. *Id.*

And finally, in *Steinert*, appellees moved to dismiss plaintiff's claims. Dkt. 110 at 17, citing *Steinert v. Winn Group*, Inc, 440 F. 3d 1214 (10th Cir. 2006). The attorney for over a five-month period was granted 34 extensions with respect to several filings, including nine extensions of time to file an opposition to the motion to dismiss that multiplied the proceedings by 495 days. *Id.* Ultimately, the district court dismissed some of the claims and plaintiff dismissed the remaining claims. *Id*. The district court awarded fees against the attorney under 28 U.S.C.S. § 1927 because the attorney's decision to move forward with the 42 U.S.C.S. §1983 and. §1985 claims when no clear legal basis supported them multiplied the proceedings and was unreasonable and vexatious. *Id*.

The underlying facts here are nothing like *Methode, Burda, Vega*, or *Steinert.* There is no motion to reconsider an issue already decided by the Court, there has been no appeal from the denial of any motions, Plaintiff has only asked for one extension that

was unopposed and all other extensions parties stipulated to, and attorneys have not physically assaulted each other in these matters. And, importantly, there has been no suggestion **ever** by Defendants that any of the claims raised were frivolous or improper – defendants may have moved for summary judgment on the claims, but merely disputing that a claim could be successful does not make it frivolous.

Similarly, Defendants cite to *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) for the proposition that the Court has inherent discretionary power to sanction "when an attorney has acted in an objectively unreasonable manner." *See* Dkt. 75, at 8. But again, while the Court clearly has discretionary power, the facts as stated bear no resemblance to the attorney in *Jolly Grp.* There, the plaintiff's lawyer continued to file briefings even after the case was concluded and received multiple warnings. Here, the case is not complete, and certainly no warnings were ever issued.

### iii.     This Court Was Never Called Upon to Handle A Motion To Compel, Discovery Dispute, Or Any Other Relief.

Not only were there no warnings to any of the lawyers on either side of this case, but there were also no motions, such as to compel or for discovery issues, ever filed either. On behalf of the Defendants, there are no accusations of improper delay or deposition tactics, hidden documents, bickering by the parties or refusals for the attorneys to ever meet and confer. This is not the type of case that anyone could ever suggest was the hallmark of litigation misconduct.

Indeed, in another case decided by a Court in this district more than six years ago, it specifically noted that,

> the parties treat this factor as an inroad to air grievances about alleged litigation misconduct. . . In the main, their disputes about whether a particular witness was prepared, whether an expert should have disclosed more information, or whether

a party's theories were sufficiently defined prior to trial, are all sideshows. The Court will not delve into such minutiae. *After reviewing the parties' disagreements about each other's litigation choices, the most it can say is that the case was hard-fought and involved no more than ordinary strategic decisions (and blunders) on both sides.* Plaintiffs have uncovered no egregious [litigation] misconduct. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010) (defining litigation misconduct as including "bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation"); *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1297 (S.D. Fla. 2010) ("[H]ard-fought, zealous advocacy does not necessarily amount to vexatious or bad faith litigation[.]").

*Milwaukee Electric Tool Corporation v. Snap-On Incorporated*, 288 F. Supp. 3d 872, 902 (E.D. Wis. 2017) (Stadtmueller, J.)(emphasis added). While that case involved a patent dispute, the point remains the same – Defendants desire to change zealous advocacy into vexatious litigation or bad faith litigation is unwarranted.

Moreover, this is not the first case that a Court in this district has had a party agree to dismiss a claim in response to a motion for summary judgment and not rise to the level of a sanction. For example, in *Strobehn v. Weltman Weinberg & Reis Co., LPA*, Erin Strobehn, an attorney licensed to practice law in the State of Wisconsin, brought several claims against debt collectors related to her law student loans. E. D. Wis. Case No. 16-CV-0985-JPS, Dkt. 68 (Second Amended Complaint). In *Strobehn*, one of the debt collectors filed a motion for Rule 11 sanctions because it alleged that Strobehn had continued the case up to the summary judgment stage and had "asserted that she had paid her student loans off completely. On that basis, Plaintiff asserted that [defendant] Access was liable to her for its unlawful efforts to collect that debt. Access says she should have known that this was not true and could have investigated this position more thoroughly prior to filing her complaint." *Strobehn v. Weltman Weinberg & Reis Co., LPA*, 16-CV-0985-JPS, 2018 WL 1997989, *1 (E.D. Wis. April 27, 2018).

The Court declined to issue sanctions (under Rule 11) because Plaintiff had withdrawn her claim in response to Defendant's motion for summary judgment. *Id.*, at *2. It is even more troubling in a comparison where in *Strobehn* there were 195 docket entries, and prior to the filing of this response brief there 112 docket entries, with many multiples because of the number of parties. Indeed, the Court noted the low level of professionalism in *Strobehn* between the parties. *Id.* ("Counsel for Plaintiff and Access determined that in this straightforward case, no quarter should be asked or given, and that every hill was worth dying on. This was beyond inappropriate. No sanctions will be imposed on either side save for the admonishments they have received herein."). *See also Werner v. Metalcraft of Mayville, Inc.*, 20-CV-445-JPS, 2020 WL 4430742, *2 (July 31, 2020) where defense counsel, even after a party withdrew a lawsuit, continued to seek sanctions under 28 U.S.C. §1927. Of course, the court denied the request. *Id.* ("The fact that Plaintiff ultimately elected to dismiss that claim does not render the lawsuit vexatious. Rather, it appears that Plaintiff would have been well within his rights to pursue it.").

Before besmirching counsels' reputation with frivolous arguments about vexatious litigation, a simple search of this District Court's prior cases would suggest that the current litigation does not even rise to the label of sanctions under any circumstances, and the filing of this motion by the Defendants is in and of itself, a sanctionable event.

### III. THE FILING OF A MOTION FOR SANCTIONS CAN SERVE AS A SANCTIONABLE EVENT, WHICH IS APPROPRIATE HERE.

Here, the Court should consider whether the filing of this motion by Defendants should be the basis of a motion for sanctions, as it is black letter law that a motion for sanctions in and of itself is sanctionable under Federal Rule of Civil Procedure 11. *See*

*Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1073-74 (7th Cir. 1987); *Foy v. First National Bank*, 868 F.2d 251, 258 (7th Cir. 1989) (imposing sanctions for the filing of a frivolous request for sanctions); *Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) ("Any frivolous motion, pleading, or request is subject to sanctions, including a motion or request for sanctions."); *Brooks v. Allison Div. of Gen. Motors Corp.*, 874 F.2d 489, 490 (7th Cir. 1989) (imposing sanctions for filing a meritorious motion for sanctions because the movant failed to take reasonable steps to mitigate the burdens imposed on him).

In the scheduling order this Court encouraged parties to "visit the court's home page on the Eastern District web site—www.wied.uscourts.gov/judge/pamela-pepper—for practice tips." Dkt. 19 at 2. The court in its practice tips noted,

> "It isn't true that judges hate discovery disputes. It *is* true that judges are not overly fond of being asked to resolve disputes that the parties, acting professionally, should have been able to resolve themselves. Judges also are uncomfortable with discovery disputes that involve intemperate exchanges or *ad hominem* attacks, or that lack good faith efforts to resolve the issues."

www.wied.uscourts.gov/judge/pamela-pepper, practice tips, III ¶2.

It would appear, from the practice tips, that the Court expects parties to act professionally and where possible to resolve disputes themselves. Additionally, the Court frowns down upon *ad hominem* attacks. As noted, Defendants could have consulted with Plaintiff, but at no point did Defendants try to meet, nor did they ever cite case law or case precedence noting that Plaintiff could not meet his legal burdens with regards to the dismissed claims.

The Defense should have given more thought to the motion and should have tried to hear from the other side. Unfortunately, it is now too late for any discussions, and this

Court should consider sanctions against the movants, *sua sponte.*

## CONCLUSION

For the reasons stated herein Plaintiff requests this Court **DENY** Defendants' motion for sanctions and its motion to strike, and *sua sponte* sanction Defendants and defense counsel for the reasons stated herein.

Dated this May 20, 2025.

**MOTLEY LEGAL SERVICES**

By: *s/Kimberley Cy. Motley*
Kimberley Cy. Motley, SBN 1047193
PO Box 1433
Matthews, NC 28106
(704) 763-5413 (phone)
kmotley@motleylegal.com

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
Madison Bedder SBN:1121996
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com
Attorneys for Plaintiff