UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JUSTIN BLAKE,<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID BETH, et al.,<br><br>    Defendants. | Case No.: 22-CV-0970 |

**PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PROC. 11**

Plaintiff, Justin Blake ("Blake"), by his attorneys, respectfully move this Court for the entry of an Order imposing sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, against Defendants David Beth, Kenosha County, Kyle Bissonette, Jacob DiCello, Gloria Galvan, Dereemeyun Haynes, Jeremy May, and Wisconsin Municipal Mutual Insurance Company (hereinafter, collectively "Defendants"). Defendants were alerted to the frivolousness of their claims on June 9, 2025, through a Safe Harbor Letter sent via fax and e-mail to counsel of record. *See* Kimberley Cy. Motley Declaration hereinafter "*Motley Decl*." at Exhibit 1 Defendant's unsatisfactorily responded to the Safe Harbor letter doubling down on their misrepresentations. *Motley Decl*. at Exhibit 2. In support of his Motion, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff seek to sanction Defendants, pursuant to Federal Rules of Civil Procedure 11, because of Defendants material misrepresentations in their recently filed Motion to Strike and for Sanctions, Dkt. 109, and continued in the Reply to the Motion, Dkt. 115.

Specifically, Defendants alleged in their brief that when Plaintiff served his amended initial disclosures, on January 6, 2025, "add(ing) fourteen witnesses" it somehow "deprived Defendants of the ability to meaningfully investigate or depose these new witnesses." Dkt. 110 at 2. Such an allegation was false, as described below and in Plaintiff's Response to the Motion to Strike, Dkt. 113. Defendants' harassing conduct and false allegations, including the assertions of a request for sanctions against Plaintiff's counsel, clearly violates the spirit of zealous advocacy as well as any sense of common decency and decorum. This Court should not condone Defendants' motion to strike and should instead sanction the Defendants and their counsel for raising it in the first place.

## STATEMENT OF CASE AND PROCEDURAL HISTORY

### I. Relevant Procedural History.

Plaintiff filed his First Amended Complaint on August 24, 2022, naming David Beth, Kenosha County, Kyle Bissonnette, Jacob DiCello, Gloria Galvan, Deremeeyun Haynes, Jeremy May, John Doe Officers, Wisconsin Mutual Insurance Company, and ABC Insurance Company and twelve claims. Dkt. 4. Defendants filed its answer in this matter to Plaintiff's First Amended Complaint on October 21, 2022. Dkt. 16. Attorney Samuel Hall sent an email to Plaintiff's Counsel informing them that they are representing Wisconsin Municipal Mutual Insurance Company on October 28, 2022. Dkt. 50-1. Attorney Hall also asked if Plaintiff would "consider filing an amended complaint to correct that…." *Id*. Plaintiff agreed to do so on the date set for amended pleadings. *Id.* The Court then issued its scheduling order on November 14, 2022, setting the amend pleadings deadline for February 15, 2023. Dkt 19.

Plaintiff filed a Second Amended Complaint adding Defendants Jessica Bergmann

2

Case 2:22-cv-00970-PP    Filed 09/16/25    Page 2 of 16    Document 120

and NaphCare on February 15, 2023. Dkt. 20.[1] Plaintiff filed his Third Amended Complaint without objection from Defendants on August 23, 2023, adding Visiting Nurse Community Care (hereinafter "VNCC"), Kenosha Visiting Nurse Association (hereinafter "KVNA"), and Jane Doe Medical Professionals. Dkt. 34. Plaintiff subsequently dismissed NaphCare from this action. *Id*.

On November 12, 2022, Plaintiff served his First Request for Production of Documents, First Requests for Admissions, and First Set of Interrogatories to Defendants. Dkt. 114-1. On February 15, 2023, Plaintiff served his Second Request for Production of Documents and Interrogatories. Dkt. 114-2. On July 31, 2023, Plaintiff served his Third Request for Production of Documents. Dkt. 114-3. And on October 24, 2023, Plaintiff served his Fifth Request for Production of Documents and Interrogatories. Dkt. 114-4.

On February 29, 2024, based on Defendants untimely discovery responses to Plaintiff's First, Second, Third, and Fifth requests for discovery,[2] Plaintiff sent a notice to cure the discovery. Dkt. 114-5. In the cure letter, Plaintiff referenced the protective order that was signed by the Court on January 3, 2024. *Id*. at 1. Plaintiff also stated that they have, "inquired on the status of discovery numerous times in 2023, and also on 1/4/24 and 1/15/24. Attorney Meyer has noted in emails on 1/4/24, 1/11/24, and 1/15/24 that counsel is working on providing discovery to us," however "there remains a substantial amount missing." *Id.* Plaintiff demanded that discovery be served no later than April 1, 2024. *Id*.

---

[1] Subsequent to the filing of this complaint, Plaintiff learned that NaphCare was not the medical provider of Kenosha County during the relevant time. Plaintiff informed Defendants that "it has come to our attention that NaphCare was not the medical service provider of the Kenosha Secure Detention nor the employer of Bergmann on April 25, 2021 when Mr. Blake was arrested." Dkt. 50-3

[2] Plaintiff's Fourth Request for Production of documents were served only to Defendants VNCC, KVNA, and Jessica Bergmann.

On April 1, 2024, Plaintiff received supplemental discovery from Defendants in response to Plaintiff's Second Request for Production of Documents served on February 15, 2023, nearly fourteen months after it was initially requested. Dkt. 114-6. Included in Defendant's discovery responses were 23 videos taken from several of the cameras inside the Kenosha Public Safety Building depicting Mr. Blake on April 25, 2021 and April 26, 2021, handcuffed and walking into the facility, and subsequently being placed and kept in the Emergency Restraint Chair for nearly seven hours. *Id*.

On April 15, 2024, Defendant Jessica Bergmann was deposed, where Attorney Brian Baird, who represents Ms. Bergmann, and Attorney Brianna Meyer, representing Defendants, was present. Defendant Bergmann was asked to identify individuals who participated in and were present during Justin Blake's arrest on April 25, 2021, based on a screenshot of a video taken from one of the videos given to Plaintiff on April 1, 2024. Dkt. 114-7. In the screenshot, Ms. Bergmann identified six individuals, including herself, some of the Defendant Officers, and a person whom she referred to only as "Corporal Martini" who prior to her testimony was unknown to Plaintiff as witnessing Mr. Blake being placed in the ERC. Dkt. 74-15, 47:8-14.

On April 25, 2024, Defendant Gloria Galvan was deposed. In which Attorney Attorney Meyer, who was representing Ms. Galvan, was present. Defendant Galvan was shown the same photograph as Bergmann and provided the full name of Pablo Martini as one of five other persons pictured around Mr. Blake while he was placed in the ERC. Dkt. 98-7; Dkt. 114-8.

Throughout litigation, Plaintiff made numerous attempts to schedule a corporate deposition of Defendant Kenosha County, pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiff's

Counsel informed Defense Counsel on February 27, 2024 of its intention to schedule the Kenosha County's deposition. Dkt. 48-3 at 1. On March 13, 2024, Plaintiff sent his Notices of Depositions for all Defendants including Kenosha County. Dkt. 48-4. On April 4, 2024, Plaintiff's Counsel inquired again as to when they could depose Kenosha County's deposition. Dkt. 48-5 at 1. On April 5, 2024, Defense Counsel notified Plaintiff that Kenosha County could not be deposed on April 16, 2024. *Id.* One of the purposes of the corporate deposition of Defendant Kenosha County was also to identify the sheriff deputies employed by Kenosha County who participated in Plaintiff's arrest, detention, and placement in the emergency restraint chair on April 25 and 26.

On April 25, 2024, Plaintiff filed an expedited motion for leave to file a Fourth Amended Complaint based on newly discovered evidence. Dkt. 47. Initially, Defendant's objected to the filing of an amended complaint, however, they withdrew their objections acknowledging that the "parties met and conferred about the need for additional discovery and additional time to complete the required discovery on May 20, 2024." Dkt. 56, at ¶6. On June 26, 2024, Plaintiff filed his Fourth Amended Complaint adding Defendant Pablo Martini. Dkt. 59. Subsequently on October 24, 2024 Plaintiff voluntarily dismissed Defendants' Pablo Martini (Dkt. 66) and KVNA from this action. Dkt. 66, 69.

Defendants requested leave to file a brief in excess of the page limit for their summary judgment motion, which went unopposed, and the Court granted it. Dkt. 67-68. Defendants filed for summary judgment on January 20, 2025. Dkt. 81-83. VNCC and Bergmann also filed for summary judgment on January 20, 2025. Dkt. 70-72. Nine days later, Plaintiff requested an extension of time until April 15, 2025 to respond to both summary judgment motions. Dkt. 88. Plaintiff noted that his counsel had "a jury trial

scheduled in Kenosha County Court on March 10, 2025," "a five-day jury trial in the Wisconsin Eastern District … on March 17, 2025," and an appellate matter that prevented Plaintiff's counsel from devoting full attention to responding to the summary judgment motion. Dkt. 88, at p. 1-2. Defendants did "not oppose Plaintiff's motion" and understood that "the constraints posed by scheduling" warranted an extension until April 15, 2025. Dkt. 89. The Court granted Plaintiff's extension. Dkt. 90. Plaintiff filed his response briefs and papers on April 15, 2025. Dkt. 93-100. Defendants filed a Reply Brief in Support of their Motion for Summary Judgment and also a Motion to Strike and impose Sanctions on April 29, 2025. Dkt. 105, 109. Plaintiff responded to the Motion to Strike and for Sanctions on May 20, 2025. Dkt. 113. Defendants subsequently filed a Reply Brief in Support of the Motion to Strike and Sanctions on June 3, 2025. Dkt. 115.

## LEGAL STANDARD

Federal Rule of Civil Procedure 11 imposes a set of duties on those who file papers with the court. It also provides for an appropriate sanction to be imposed if those duties are violated. Rule 11(b) states, in pertinent part:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery….

Fed. R. Civ. P. 11(b)(1)–(3). The Rule grants a court discretion to impose an appropriate sanction for violations of these obligations, which may include "nonmonetary directives; an order to pay a penalty into court; or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.,* 11(c)(4).

The duties imposed in Rule 11 - coupled with the available sanctions - ensure that the "powerful, intimidating, and often expensive" machinery of the federal judiciary "[is] engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). Toward that end, the Rule imposes an objective standard of reasonableness on a party's or lawyer's action. *Id.* at 885. As the Seventh Circuit has explained, the Rule "[leaves] no room for an 'empty head, pure heart' defense." *Id.* Additionally, in this context, a bad claim spoils the bunch; one cannot avoid sanctions for frivolous claims simply because they were included with one or more non-frivolous claims. *Reed v. Great Lakes Cos., Inc.,* 330 F. 3d 931, 936 (7th Cir. 2003).

A district court enjoys broad discretion in arriving at a sanctions award that it believes will serve the deterrent purpose of Rule 11. *See Divane v. Krull Elec. Co.*, 319 F. 3d 307, 314 (7th Cir. 2003); *Fries v. Helsper*, 146 F. 3d 452, 459 (7th Cir. 1998) (noting that district courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person(s)."

**ARGUMENT**

Sanctions are undoubtedly appropriate here because Defendants' Motion to Strike and Sanctions (Dkt. 110) included a startling number of misrepresentations in contravention of Rule 11. The purpose of sanctions is to prevent litigation from multiplying unnecessarily.

Plaintiff seeks Rule 11 sanctions against Defendants for "needlessly and unfairly increas[ing] the cost of litigation," by filing a Motion to Strike with "a startling number of false and misleading statements, and frivolous legal positions." Dkt. 110. When filing any "written motion" with the court, an attorney "certifies" that the motion is not "being presented for any improper purpose," "legal contentions are warranted," and "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)-(3). If an attorney violates the requirements of Rule 11(b), a court may "impose appropriate sanctions," including "appropriate attorneys' fees incurred as a direct result of the violation." *Claiborne v. Puritan Home Funding, L.P.*, 414 F.3d 715, 721, 724 (7th Cir. 2005). Moreover, the court has "inherent power to impose sanctions where the situation is grave enough to call for them and the misconduct has somehow slipped between the cracks of the statutes and rules covering the usual situations." *Id*. at 724. Here, the conduct of Defendants and their counsel warrants sanctions from this Court.

### A. Defendants mislead this Court stating they were unable to meaningfully investigate or depose fourteen "new witnesses" whom they were or should have been aware of.

Defendants mislead this Court stating that "Plaintiff served a second Amended Rule 26(a)(1) initial disclosure adding fourteen witnesses on the day before discovery closed in this case, depriving Defendants of the ability to meaningfully investigate or depose these *new witnesses*." Dkt. 110 at 2. In support of its argument, Defendants

8
Case 2:22-cv-00970-PP    Filed 09/16/25    Page 8 of 16    Document 120

allege that Plaintiff's amended disclosures naming Jessica Bergmann, Linda Scott, Douglas Simpson, Monica Cummings, Judith Devine, Winnie Dortch, Tony Atkins, Dr. Diesfeld, Dr. Johnson, Dr. Song, Ken Krantz, Neil Paulsen, Michael Gravley and Pablo Martini was a last minute, disingenuous disclosure. Dkt. 110, p. 9. Defendants' allegations lack merit and has caused a significant amount of additional litigation simply for Plaintiff to prove that their allegations are blatantly false.

First, Plaintiff learned the identities of eleven of the fourteen "purportedly new" witnesses from Defendants' initial disclosures, their responses to document productions, and depositions.[3] Defendants disclosed those witnesses to Plaintiff through (1) Defendants' initial disclosure,[4] (2) Defendants designating them as the corporate representatives for Kenosha County and VNCC's 30(b)(6) depositions,[5] and (3) depositions that Defendants attended or documents produced by Defendants to Plaintiff. Of the remaining three witnesses, two are journalists, Winnie Dortch and Tony Aikins, and the third is Mr. Blake's treating doctor, Dr. Song – all of whom were not mentioned by any party in any of the recent summary judgment filings.

Plaintiff and Defendants exchanged their Rule 26(a)(1) initial disclosures on November 30, 2022. *Id.* and Dkt. 111-1. In Defendant's initial disclosures, they stated that they were also disclosing:

> "Any and all individuals referenced in the documents listed along with Kenosha County Defendants' and Plaintiffs Rule 26(a)(1) Initial Disclosures,

---

[3] Those eleven witnesses are: Jessica Bergmann, Neil Paulsen, Ken Krantz, Judith Devine, Linda Scott, Douglas Simpson, Dr. Diesfeld, Dr. Johnson, Michael Gravely, Monica Cummings, and Pablo Martini.

[4] Jessica Bergmann, Neil Paulsen, Ken Krantz, and Judith Devine were disclosed to Plaintiff by Defendants in Defendants' initial disclosures. Dkt. 114 ¶8, 114-8 at 3-5.

[5] Defendants identified Douglas Simpson as its corporate representative, and he was deposed. Dkt. 74-2. And Defendant VNCC identified Linda Scott as its corporate representative, and she was deposed. Dkt. 74-16.

***and in any documents produced by any party in discovery*.**"

*Id* at 5 (emphasis added).

Additionally, in Defendant's initial disclosures, it states that,

"Kenosha County Defendants hereby incorporates **any other witnesses identified by any other party in their Initial Disclosures,** including supplements thereto, or other written discovery or expert disclosures and, further, hereby reserve the right to amend, supplement, correct, or clarify these Initial Disclosures as discovery progresses."

*See* Dkt. 114-8 at 5. (emphasis added).

And in Defendant VNCC's disclosures, it noted that it "reserves the right to call," "[a]ny and all healthcare providers who have treated and/or examined the Plaintiff at any time." Dkt. 114-10 at 1. Dr. Diesfeld, Dr. Johnson, and Dr. Song have all treated Mr. Blake.

As demonstrated below, eleven of the surprise "new witnesses" that Defendant claims to have no knowledge of until one day before the close of discovery were witnesses disclosed by Defendants and through discovery. Dkt. 110 at 2. The Defendants' argument that Plaintiff's disclosure warrants sanctions is preposterous and is sanctionable conduct in of itself. Dkt. 109. Defendants could not have been surprised by Plaintiff naming any of the following "new witnesses" for the reasons stated below and its misrepresentations to the Court should warrant sanctions. Dkt. 110 at 2.

    **1.** **Jessica Bergmann** – is (1) a defendant in this case, (2) was named in Defendants' initial disclosures, and (3) Attorney Meyer attended Ms. Bergmann's deposition on April 15, 2024. Dkt.73-2 at 1.

    **2.** **Neil Paulsen** – was named in Defendants' initial disclosures. Dkt. 114-8 at 3.

3. **Ken Krantz** – was named in Defendants' initial disclosures. *Id*.

4. **Judith Devine** – was (1) named in Defendants' initial disclosures. I*d* at 5. (2) She also was disclosed to Plaintiff from Defendants' document production. Dkt. 80-21 (Exhibit U to Attorney Meyer's Declaration; Supplemental Narrative of Officer Kroshnitzke naming Ms. Devine). Ms. Devine also was named in and relied on in Defendants' Proposed Findings of Fact as a witness whom Defendants repeatedly and falsely claimed would testify that Mr. Blake and his fellow protestors prevented her "from entering the Public Safety Building". Dkt. 82 at 14, 17.

5. **Linda Scott** – was identified as the corporate representative of VNCC on March 21, 2024, in an email sent by Defendant VNCC Attorney Brian Baird. Dkt. Motley Dkt. 114-9 at 1. Subsequent to the email, Ms. Scott was deposed on April 15, 2024 and Attorney Meyer was present for this deposition. *Id.*

6. **Douglas Simpson** –was (1) identified as the corporate representative of Kenosha County. In Defendant's Response to Plaintiff's First and Fifth Request for Production of Documents and Second Interrogatory, Douglas Simpson *signed* as the Corporate Representative of Kenosha. Dkt. 114-11 at 7, 114-112 at 27. (2) And, Douglas Simpson was deposed on July 1, 2024 and Attorney Brianna Meyer was present. Dkt. 74-2 at 1.

**7 – 9. Dr. Diesfeld, (8) Dr. Johnson, and (9) Dr. Song** – Defendants Jessica Bergmann and VNCC provided expert disclosures on November 22, 2024. Dkt. 114-10. Defendant VNCC also provide the expert report of Dr. Sanjay K. Patari. Dkt. 114-13. (1) In the expert report of Defendant VNCC, Dr. Patari identified Dr. Andrew Johnson and Dr. Diesfeld as two medical professionals who treated and/or were referred to treat

Mr. Blake. Dkt. 114-13 at 6-7. (2) Defendant VNCC in its initial disclosures noted that it "reserves the right to call," "[a]ny and all healthcare providers who have treated and/or examined the Plaintiff at any time." Dkt. 114-9 at 1. (3) And Defendants incorporated Dr. Johnson and Dr. Diesfeld in their initial disclosures as they were named in VNCC's expert disclosure. Dkt. 114-13 at 5. ("Kenosha County Defendants hereby incorporates any other witnesses identified by any other party in their…expert disclosures"). Additionally, Plaintiff went above and beyond its disclosure requirements and specifically named all three doctors in its supplemental disclosures on January 6, 2025. Dr. Diesfeld, Dr. Johnson, and Dr. Song are all treating doctors for Mr. Blake and were not named in any of the parties Summary Judgment briefs or responses.

10. **Michael Gravely** –is the duly elected District Attorney for Kenosha County who made the decision to engage a special prosecutor to prosecute Mr. Blake. Dkt. 114-14. Kenosha County provided Plaintiff with text messages between Kenosha County District Attorney Michael Gravely, Neil Paulsen and others that occurred on April 26, 2021, before Mr. Blake was released from custody. *Id*.

11. **Pablo Martini** – was (1) previously named as a defendant in this case and mentioned in depositions that were taken in this case. Dkt. 98-7, 66. (2) And, Defendant Gloria Galvin was deposed on April 25, 2024, and she identified Pablo Martini in a photograph shown to her as one of the officers who witnessed Mr. Blake being placed in the Emergency Restraint Chair. Dkt. 98-7. Kenosha County's attorneys attended Galvin's deposition and was privity to her identifying Martini. Dkt. 73-6.

12. **Monica Cummings** - Defendants deposed Tanya McClean, a third-party witness on July 27, 2023, In the Deposition, Ms. McClean identified Monica

Cummings. And, Attorney Meyer attended McClean's deposition and was aware that she identified Cummings. Dkt. 114-15.

    13.  **Winnie Dortch and Tony Atkins -** are two journalists who reported on Justin Blake and the subsequent protests. Winnie Dortch was reporting for CBS 58 news and Tony Atkins was reporting for the WTMJ 4 news outlet. Dkt. 114-16, 114-17. As their reporting is publicly available, out of an abundance of caution and transparency, Plaintiff added these two reporters to their supplemental initial disclosures. Dkt. 111-3. Neither Winnie Dortch nor Tony Atkins were mentioned in any of the parties Summary Judgment briefs or responses or where these two witnesses integral or relevant to summary judgment.

Finally, Defendants misrepresent to this Court that "at no point did Plaintiff's counsel withdraw any of the claims against the County Defendants" Dkt. 110 at 13. As this court and the record is aware, on October 24, 2024 Plaintiff voluntarily dismissed Defendants' Pablo Martini (Dkt. 66) and KVNA from this action. Dkt. 66, 69.

**B.**  **Defense Counsel misrepresent to the court that they could not cross examine witnesses from the municipal trial whom they named in their initial disclosures and never attempted to depose them.**

Additionally, Defense Counsel misrepresent to this Court that they "could not cross examine" certain "witnesses" from the municipal trial. Dkt. 110 at 12. This argument lacks merit. There were a total of five witnesses who testified in the municipal trial: Det. Allison George, Sgt. Michal Pittsley, Deputy Kyle Bissonnette, Deputy Brian Koschnitzke, and Judith Devine. Dkt. 114-19. Defendants knew **all five witnesses who testified in Mr. Blake's municipal trial and Defendants were the ones who disclosed their identities** in their initial disclosures served on November 30, 2022. Dkt. 114-8 at 2,3, and 5.

As Defendants are aware "after twenty-six months of discovery" Defendants never once attempted to depose the witnesses whom they claim they were not able to "cross examine" in the municipal court trial. Dkt. 110 at 9, 12. It also is important to highlight that four of the witnesses Defendants complain they were unable to cross examine work for Kenosha County, and Deputy Kyle Bissonnette, who is a Defendant, *was* deposed in this matter on November 25, 2024, where counsel for Defendants had an opportunity to question him. Dkt 73-3. The only witness who is not a named defendant in this case and is not employed by Kenosha County is Judith Devine. Yet, Defendants knew of her identity, disclosed her identify, and disclosed her role related to the municipal proceedings but declined to depose her. Dkt. Dkt. 114-8 at 5.

Defendants believed that their inability to "cross examine" those witnesses, four Defendant Kenosha County employees (one of them a named defendant) and one lay witness who was included in the initial disclosure (*Id*.) and police reports that Defendants produced, was so important that they went as far as to file for sanctions against Plaintiff. If it is important enough to file sanctions against Plaintiff, it certainly is important enough to attempt to depose those same individuals during the 26-month discovery period. Defendants knew of these witnesses' identities but decided, for whatever reason, that it was not important enough to depose them during the 26-month discovery period. Maybe Defendants did not depose these witnesses because the police reports supported their versions of events. And now that the trial testimony proved otherwise, it is suddenly sanctionable conduct against Plaintiff because Defendants did not have an "opportunity" to "cross examine" those witnesses. Dkt. 110 at 12. Maybe Defendants should have deposed those witnesses instead of relying on hearsay statements in a police report.

Whatever reason Defendants had for not deposing four of the five witnesses does not matter. Defendants knew of their identities and decided not to depose them. Their failure does not render Plaintiff's conduct sanctionable. And to allege otherwise is a misrepresentation to the Court that warrant sanctions. This conduct was wholly improper, a waste of the Plaintiff, and the Court's resources, and warrants sanctions.

### C. Defendant's filing of motion for sanctions can serve as a sanctionable event, which is appropriate here.

Here, the Court should consider Defendant's filing of the Motion to Strike and for Sanctions (Dkt. 110) and continued Reply to the Motion (Dkt. 115), as a basis to sanction them. As it is black letter law that a motion for sanctions in and of itself is sanctionable under Federal Rule of Civil Procedure 11. *See Matter of Cent. Ice Cream Co.*, 836 F.2d 1068, 1073-74 (7th Cir. 1987); *Foy v. First National Bank*, 868 F.2d 251, 258 (7th Cir. 1989) (imposing sanctions for the filing of a frivolous request for sanctions); *Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988) ("Any frivolous motion, pleading, or request is subject to sanctions, including a motion or request for sanctions."); *Brooks v. Allison Div. of Gen. Motors Corp.*, 874 F.2d 489, 490 (7th Cir. 1989) (imposing sanctions for filing a meritorious motion for sanctions because the movant failed to take reasonable steps to mitigate the burdens imposed on him).

As also argued in Plaintiff's Response to the Motion to Strike, Dkt. 113 Defendants should have given more thought to their motions and should have tried to hear from the other side. Unfortunately, they failed to do so, and this Court should consider sanctions against the Defendants.

### CONCLUSION

For the forgoing reasons, this Court should find that the Defendants' motion is full

of misrepresentations and is meant to harass, cause unnecessary delay, or needlessly increase the cost of litigation, all in violation of Rule 11. The Court should accordingly sanction the Defendants' attorneys.

Dated this September 16, 2025.

                 **MOTLEY LEGAL SERVICES**

By: *s/Kimberley Cy. Motley*
  Kimberley Cy. Motley, SBN 1047193
  PO Box 1433
  Matthews, NC 28106
  (704) 763-5413 (phone)
  (704) 909-4100 (fax)
  kmotley@motleylegal.com

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
Madison Bedder SBN: 1121996
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
annalisa@cade-law.com
madison@cade-law.com

Attorneys for Plaintiff