JUSTIN BLAKE,

        Plaintiffs,

                                Case No. 22-cv-970-pp

    v.

DAVID BETH, COUNTY OF KENOSHA,
KYLE BISSONNETTE, JACOB DICELLO,
GLORIA GALVAN, DEREEMEYUN HAYNES,
JEREMY MAY, JESSICA BERGMANN,
VISITING NURSE COMMUNITY CARE, INC.,
JOHN DOE OFFICERS 1-10, JANE DOE MEDICAL
PROFESSIONALS, WISCONSIN MUNICIPAL MUTUAL
INSURANCE COMPANY, ABC INSURANCE COMPANY
and XYZ INSURANCE COMPANY,

        Defendants.

---

**ORDER CONSTRUING COUNTY DEFENDANTS' MOTION TO STRIKE AS A MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(C) AND GRANTING THAT MOTION (DKT. NO. 109), GRANTING COUNTY DEFENDANTS' MOTION FOR SANCTIONS UNDER 28 U.S.C §1927 (DKT. NO. 109), DENYING WITHOUT PREJUDICE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 70), DENYING WITHOUT PREJUDICE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 81), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 120) AND SETTING NEW DISPOSITIVE MOTION DEADLINE**

---

Defendants Beth, Kenosha County, Bissonnette, DiCello, Galvan, Haynes, May and Wisconsin Municipal Mutual Insurance Company (the County Defendants) have filed a motion to strike portions of the plaintiff's summary judgment materials; they also seek sanctions. The court will grant their motion. Because significant portions of the parties' summary judgment materials address claims that the plaintiff has chosen not to pursue or rely on

1

evidence stricken from the record, the court will deny without prejudice the defendants' motions for summary judgment and set a new dispositive motion deadline should the defendants wish to refile their motions. The court also will deny the plaintiff's motion for sanctions.

## I.      Factual Allegations

Plaintiff Justin Blake is the uncle of Jacob Blake. Dkt. No. 59 at ¶30. On August 23, 2020, Jacob Blake was shot by an officer of the Kenosha Police Department; the shooting resulted in Mr. Blake's paralysis. Id. at ¶¶31-32. The shooting was followed by protests in the city of Kenosha. Id. at ¶33. On April 25, 2021, the plaintiff participated in such a protest. Id. at ¶35. He and two other individuals were arrested by members of the Kenosha Sheriff's Department; the plaintiff was arrested for disorderly conduct and obstructing/resisting an officer. Id. at ¶¶37-38. The plaintiff alleges that he is Black and that the two individuals arrested with him are White. Id. at ¶39. He asserts that he was not disorderly, did not resist any officers and did not obstruct any officers. Id. at ¶¶44-46. The plaintiff also avers that the officers who arrested him knew his identity and knew that he was the uncle of Jacob Blake. Id. at ¶¶42-43.

The plaintiff alleges that after receiving his Miranda warnings, he exercised his right to remain silent. Id. at ¶¶47-49. He asserts that he was forced into an emergency restraint chair and strapped in tightly by his chest, arms and legs; he alleges that he was held that way for almost seven hours. Id. at ¶49. The plaintiff asserts that the two individuals who were arrested with

2

him were not put into emergency restraint chairs. Id. at ¶50. He alleges that he was put in the chair "as retaliation simply because he exercised his Fifth Amendment right to remain silent." Id. at ¶59. He contends that he should not have been arrested, that he should not have been put in the chair and that he should not have been kept there for almost seven hours. Id. at ¶¶68-70. The plaintiff avers that he has suffered damage and injuries to his neck, back and shoulders as a result. Id. at ¶73.

The plaintiff has raised claims against various combinations of defendants under the First Amendment, as well as claims of deliberate indifference, excessive force, cruel and unusual punishment, failure to intervene, excessive detention, intentional infliction of emotional distress, negligent hiring/training/supervision, *respondeat superior* and failure to render aid, as well as a Monell[1] claim against Kenosha County.

## II.    Procedural Background

The plaintiff filed the original complaint on August 23, 2022. Dkt. No. 1. That complaint alleged twelve causes of action against Kenosha County, its insurers, Sheriff David Beth and various known and unknown Kenosha law enforcement officers. Id. The following day, the plaintiff filed an amended complaint that made no substantive changes to the claims. See Dkt. No. 4.[2]

---

[1] Monell v. Dep't of Soc. Serv's of City of New York, 429 U.S. 1071 (1977).

[2] It appears that the plaintiff amended the complaint to correct ¶14; in the original complaint, ¶14 identified a defendant who'd already been identified in ¶12, while ¶14 of the amended complaint described an as-yet-unidentified defendant.

On November 14, 2022, the court issued a scheduling order, requiring (among other things) that the parties exchange their Fed. R. Civ. P. 26(a) initial disclosures by November 30, 2022. Dkt. No. 19. Three months later, on the deadline the court had set for amending pleadings without leave of court, the plaintiff filed a second amended complaint. Dkt. No. 20. The second amended complaint added defendants Jessica Bergmann and her purported employer, NaphCare, and added two new claims: one for negligent hiring, training and supervision and one for *respondeat superior*. Id. That raised the number of claims from twelve to fourteen. The County Defendants answered the second amended complaint on March 1, 2023. Dkt. No. 23.

On March 15, 2023, the plaintiff filed a motion for leave to file a third amended complaint. Dkt. No. 23. The brief in support of this motion stated that the plaintiff wished to replace defendant NaphCare with Visiting Nurse Community Care, Inc. and the Kenosha Visting Nurse Association. Dkt. No. 25. The plaintiff explained that general counsel for NaphCare had informed the plaintiff's counsel that NaphCare was not the contracted medical services provider at the Kenosha County Detention Center at the time of the incident, and that NaphCare did not employ Bergmann until six days after the incident. Id. at 3. The plaintiff sought to replace NaphCare with the two new defendants, whom he "understood" had employed Bergmann and provided medical care at KCDC at the time of the incident. Id. The County Defendants advised the court that they did not oppose the motion, but asked that if the court were to grant it, the court require the plaintiff to file a third amended complaint so that they

4

could answer. Dkt. No. 30. Even though the plaintiff had not complied with Civil Local Rule 15(b) (E.D. Wis.) by attaching the proposed third amended complaint to his motion, the court granted the motion; it ordered the plaintiff to file the third amended complaint by August 28, 2023. Dkt. No. 33. The plaintiff did so. The third amended complaint not only substituted the new defendants but added two new claims, raising the total number of claims to sixteen. Dkt. No. 34. Defendants Bergmann, Kenosha Visiting Nurse Association and Visiting Nurse Community Care, Inc. (the Medical Defendants) filed their answer to the third amended complaint on September 7, 2023, dkt. no. 35, and the County Defendants filed their answer on September 11, 2023, dkt. no. 36.

As explained above, the court issued the first scheduling order on November 14, 2022. Dkt. No. 19. That order set a deadline for completing non-expert discovery of August 15, 2023 and a dispositive motions deadline of November 20, 2023. Id. Over the following sixteen months, the parties—sometimes the defendants, sometimes the plaintiff, sometimes all parties—asked the court to modify the scheduling order; the court modified the deadlines at least three times. Dkt. Nos. 33, 40, 46. As of April 2024, the deadline for the parties to complete discovery was August 2, 2024 and the deadline for filing dispositive motions was August 16, 2024. Dkt. No. 46.

On April 25, 2024, the plaintiff filed an expedited, non-dispositive motion for leave to file a fourth amended complaint. Dkt. No. 47. The motion explained that on April 1, 2024, the plaintiff had received discovery from the defendants, including videos of the incident. Id. at 2. It explained that since receiving that

5

discovery, the plaintiff had been trying to use discovery tools such as depositions to identify all the individuals involved in the incident but had not been able to do so. Id. at 2-3. The motion recounted that the deadline for amending pleadings without leave of court had expired[3] and stated that "the statute of limitations for this case expires on April 25, 2025 . . . ." Id. at 2. Along with that motion, the plaintiff filed a declaration of counsel, dkt. no. 48; attached to that declaration was a proposed fourth amended complaint that added yet another two claims, raising the total number of claims to eighteen, dkt. no. 48-7. Although they filed a brief in opposition to the motion, dkt. no. 49, the defendants subsequently withdrew their objection, dkt. no. 56, and the court granted as unopposed the plaintiff's motion to amend the complaint, dkt. no. 58. In addition to adding to claims, the fourth amended complaint added as a defendant Pablo Martini, dkt. no. 59, but on October 24, 2024, the plaintiff filed a notice voluntarily dismissing Martini due to lack of service, dkt. no. 66. The remaining defendants answered the fourth amended complaint. Dkt. Nos. 60, 64.

Meanwhile, the parties had filed another joint motion to modify the scheduling order. Dkt. No. 56. The court granted that motion and extended the deadline for completing discovery to January 6, 2025 and the deadline for filing dispositive motions to January 20, 2025. Dkt. No. 58.

Discovery closed on January 6, 2025, without any party seeking further extensions. Dkt. No. 58. Two days later, on January 8, 2025, the plaintiff and

---

[3] In fact, that deadline had passed on February 15, 2023. Dkt. No. 19.

defendant Kenosha Visiting Nurse Association filed a stipulation dismissing the claims against that defendant only. Dkt. No. 69.

On January 20, 2025, the Medical Defendants (reduced to Visiting Nurse Community Care Inc. and Jessica Bergmann) filed a motion for summary judgment, dkt. no. 70, as did the County Defendants, dkt. no. 81. The plaintiff moved for a fifty-five-day extension of time to respond to the motions, dkt. no. 88, which the court granted, extending the plaintiff's response deadline to April 15, 2025, dkt. no. 90. The County Defendants and the plaintiff both obtained leave of court to file briefs and proposed findings of fact in excess of the limits mandated by the Local Rules. Dkt. Nos. 68, 101.

On April 29, 2025—the same day they filed their reply brief in support of their summary judgment motion (Dkt. No. 105)—the County Defendants filed a motion to strike portions of the plaintiff's proposed findings of fact at dkt. nos. 95, 99, and portions of the plaintiff's brief in opposition to the County Defendants' motion for summary judgment at dkt. no. 97. Dkt. No. 109. The motion included a request for the court to impose sanctions in the form of costs, expenses and attorneys' fees "incurred because of Plaintiff's conduct in litigating summary judgment." Id. at 2. After the parties had fully briefed the motion to strike, the plaintiff filed a motion requesting oral argument on the County Defendants' motion for summary judgment, their motion to strike and their reply brief in support of the motion to strike "[d]ue to the repeated unethical misrepresentations and defamatory accusations against Plaintiff's Counsel." Dkt. No. 116. The County Defendants opposed the motion,

characterizing it as the plaintiff seeking a "second kick at the cat via oral argument." Dkt. No. 117 at 2. The court denied the motion, stating that "the court does not anticipate oral argument will be necessary; if the court later determines that oral argument will be helpful, it will set a hearing." Dkt. No. 118.

Finally, on September 16, 2025—about three months after the court declined to schedule oral argument regarding the defendants' pending motions—the plaintiff filed a motion asking the court to impose sanctions on the County Defendants under Fed. R. Civ. P. 11. Dkt. No. 120. The motion asserted that the defendants "were alerted to the frivolousness of their claims on June 9, 2025 through a Safe Harbor Letter" but that the defendants "unsatisfactorily responded to the Safe Harbor letter doubling down on their misrepresentations." Id. at 1. The defendants oppose that motion. Dkt. No. 122.

### III. The County Defendants' Motion to Strike/Request for Sanctions (Dkt. No. 109)

Because resolution of the defendants' summary judgment motions depends on the outcome of the motion to strike, the court will address that motion first.

####     A.     The Parties' Arguments

#####         1.     *The County Defendants' Initial Arguments*

The County Defendants move to strike portions of the plaintiff's summary judgment response materials under Fed. R. Civ. P. 12(f) and Civil L.R. 41(d); they seek sanctions under 28 U.S.C. §1927. Dkt. No. 109. The

8

County Defendants recount the procedural history of the case. Dkt. No. 110 at 2-11. The defendants assert that at least three times—in their answers to the first amended complaint (Dkt. No. 16), the second amended complaint (Dkt. No. 23) and the third amended complaint (Dkt. No. 36), as well as on other occasions—they advised the plaintiff that the insurance company he had named, "Wisconsin County Mutual Insurance Company," was not the County's insurer; the correct name of the insurance company was Wisconsin Municipal Mutual Insurance Company. Id. at 4, 5, 7.

The defendants assert that on January 6, 2025—the day discovery closed—the plaintiff served on the County Defendants amended Rule 26(a)(1) initial disclosures that named fourteen new witnesses. Id. at 9. The County Defendants argue that this last-minute disclosure, after twenty-six months of discovery, prevented them from properly investigating or deposing the new witnesses. Id.

The County Defendants also assert that each time the plaintiff amended the complaint, he added claims, never dismissing them. Id. at 9-10. They explain that they had sought leave to file summary judgment materials in excess of the limits set in this district's Local Rules so that they could address the "exorbitant number of claims" against them (fourteen or fifteen causes of action by that time). Id.

The County Defendants state that several days after they filed their summary judgment motion (on January 20, 2025), the plaintiff's counsel had asked the court for additional time to respond due to "the varying demands of

9

other matters," including "a jury trial scheduled in Kenosha County Court on March 10, 2025." Id. at 10 (quoting Dkt. No. 88). The County Defendants assert that the plaintiff neglected to inform the court that the jury trial counsel had referenced in that motion was the municipal trial for the disorderly conduct citation that the plaintiff had received in relation to his April 25, 2021 arrest. Id. According to the County Defendants, the plaintiff "collected testimony from additional witnesses without the presence or cross-examination of any other counsel in this case and instead submitted portions of the transcript from the municipal trial as an attempt to back-door untimely discovery." Id. (citing Dkt. Nos. 95, 97, 98-1, 98-2, 99, 100). The County Defendants assert that the plaintiff sought leave of this court to file an oversized summary judgment opposition brief based on what the plaintiff said were "the number of arguments" raised in the County Defendants' summary judgment motion. Id. (quoting Dkt. No. 92). The County Defendants argue that the plaintiff made this request under "false pretenses," because in his opposition brief, the plaintiff "voluntarily dismisse[d]" nine of the fifteen causes of action (in a footnote, almost three years into the litigation), addressing the County Defendants' arguments on only six of his claims and his request for punitive damages. Id. at 10–11 (citing Dkt. No. 97).

The County Defendants argue that the court should strike the portions of the plaintiff's summary judgment materials that refer to the plaintiff's March 2025 municipal trial because those portions are based on testimony obtained outside the presence of other parties and after the January 6, 2025 close of

discovery, and because the plaintiff obtained the evidence through prejudicial and unreasonable means. Id. at 11–12. The County Defendants contend that the plaintiff filed his January 29, 2025 motion for an extension of time to respond to the defendants' summary judgment motion so he could have "just enough time to order transcripts" from the municipal trial to use in his response brief. Id. at 12.[4] They maintain that the plaintiff "made the calculated decision to request a deadline beyond the municipal trial in order to collect this additional testimony, all while failing to notify the Court of the true reason behind the request." Id. The County Defendants point out that because the plaintiff obtained information from the March 10, 2025 municipal trial after the deadline for completing discovery in the federal case, "no defense counsel, whether they would have been physically present or not, would have had the opportunity to cross-examine the witnesses whose testimony Plaintiff now clings to in an attempt to survive summary judgment." Id.

The County Defendants assert that the plaintiff's request for leave to file an oversized opposition brief also demonstrates a lack of candor, because the plaintiff claimed he needed the additional pages to response to the number of arguments raised by the County Defendants, yet he responded to the arguments relating to only six of his clams and the issue of punitive damages,

---

[4] The plaintiff's request for an extension of time asked for a "fifty-five (55) day extension" of his February 19, 2025 response deadline. Dkt. No. 88 at 1. The fifty-five-day extension the court granted gave the plaintiff a new deadline of April 15, 2025 by which to file his opposition to the defendants' summary judgment motion—just over a month after the March 10, 2025 municipal trial referenced in the plaintiff's motion for an extension of time. Dkt. No. 90.

11

purporting to dismiss many of his other claims (and thus obviating the need to respond to the defendants' arguments regarding those claims). Id. They also argue that the plaintiff amended his initial disclosures at the last second so that he could use improper testimony from the fourteen newly identified witnesses (some of whom the plaintiff had the opportunity to cross-examine in the municipal trial) in his response to summary judgment. Id. at 12-13.

The County Defendants assert that all this conduct is "unacceptable and unfairly prejudicial" and ask the court to "strike any reference to the municipal trial contained in Plaintiff's response pleadings." Id. at 13.

The County Defendants also ask the court to impose monetary sanctions against the plaintiff's counsel "for unreasonably and vexatiously multiplying this litigation." Id. They argue that based on the plaintiff's "broad concessions" in response to their motion for summary judgment, the plaintiff's counsel did not satisfy their obligations under Fed. R. Civ. P. 11(b). Id. They contend that the plaintiff conducted two years of discovery and filed five complaints, each time adding claims against the County Defendants. Id. The County Defendants contend that they had to spend time and resources "to brief their defenses to each claim," even though it should have been "glaringly obvious" to the plaintiff (at least by the January 6, 2025 close of discovery) that the claims were frivolous. Id. at 13–14.

The County Defendants characterize the plaintiff's claims as "poorly pled," resulting in ambiguities as to the true nature of some of the causes of action, and provided an example which they assert caused them to have to

12

address in their summary judgment motion two possible iterations of the claim. Id. at 14. They assert that because of the way the claims were pled, "the County Defendants were forced to brief much more than the already voluminous fifteen claims Plaintiff asserted." Id.

The County Defendants argue that it was not until after they had done this work and filed their summary judgment brief that the plaintiff conceded dismissal of nearly two-thirds of their claims against them and dismissal of defendant Sheriff Beth. Id. (citing Dkt. No. 97). The County Defendants contend that in his opposition briefing, the plaintiff provided a substantive response to their immunity defense for only one claim, dismissed seven claims against the Medical Defendants and failed to respond to their argument that any claims against the remaining "John Doe" defendants were time-barred. Id. (Citing Dkt. Nos. 97, 93, 82). The County Defendants conclude that "after forcing the County Defendants to preliminarily brief fifteen separate causes of action (and under multiple theories of law), ultimately ***Plaintiff substantively maintained one claim***." Id. (emphasis in original).

The County Defendants contend that despite knowing that he would be abandoning "the majority of the pending claims," the plaintiff asked the court for leave to file an oversized brief based on an assertion that he needed the extra pages "to respond to each argument raised by the County Defendants." Id. at 14-15. They argue that "[w]e now know this was not true," because the plaintiff used the longer opposition brief to "fill forty-five pages with arguments on claims for which immunity was conceded, patent misrepresentations of fact,

and complete mischaracterizations of all—all of which the County Defendants were required to respond to." Id. at 15. They argue that the plaintiff asked for, and received, leave to file fifty additional proposed findings. Id. (citing Dkt. Nos. 92, 101). They assert that many of the 150 proposed findings of fact the plaintiff filed contained multiple facts within them, and that the plaintiff also filed fifty-nine additional proposed findings in response to the Medical Defendants' summary judgment motion. Id. (citing Dkt. Nos. 95, 99). The County Defendants say that the plaintiff's proposed findings regarding the Medical Defendants "directly involve, and include accusations against, the County Defendants, and the County Defendants were required to respond to those 59 facts as well." Id. (citing Dkt. No. 107). And they assert that the plaintiff's proposed factual findings mischaracterized facts, "to the extent where many quoted passages are simply wrong, citations lead to nowhere, and text is taken wholly out of context." Id. (citing Dkt. Nos. 106, 107). The County Defendants argue that they were forced to spend time responding to 209 proposed findings of fact. Id.

The County Defendants concede that they cannot seek sanctions under Fed. R. Civ. P. 11(c)(2) because the case now is at the summary judgment stage and because in his brief in opposition to their motion for summary judgment, the plaintiff withdrew claims the County Defendants had argued were frivolous. Id. But they contend that the court may *sua sponte* order the plaintiff's counsel to show cause why their actions do not violate Rule 11(b), and that after giving

the plaintiff's counsel an opportunity to respond, the court could impose sanctions if appropriate. Id. at 16.

In the alternative, the County Defendants seek sanctions (excess costs, expenses and attorneys' fees) under 28 U.S.C. §1927. Id. They argue that the court has inherent, discretionary power to impose sanctions under this statute if "an attorney has acted in an objectively unreasonable manner," such as acting in bad faith or willfully abusing the judicial process. Id. at 16–17 (citing Jolly Grp., Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006)). They argue that the plaintiff had three years during which he could have dismissed the allegedly frivolous claims, but that instead, he "pushed relentlessly forward," causing the defendants to expend resources on "dead-end claims" and the court to expend resources at the expense of other litigants. Id. at 17.

The County Defendants close this way:

> The expenses incurred solely because of Plaintiff's refusal to timely dismiss what he now concedes are meritless claims should not be borne unfairly by the County Defendants. Accordingly, Defendants move the Court pursuant to 28 U.S.C. § 1927 for an Order awarding them their excess costs, expenses, and attorney's fees reasonable incurred because of Plaintiff[']s[] conduct in litigating summary judgment.

Id. at 18.

### 2.    *The Plaintiff's Response*

The plaintiff opposes the motion, calling the County Defendants' request for sanctions "a new low" that "clearly violates the spirit of zealous advocacy as well as any sense of common decency and decorum," asking the court to deny

15

the County Defendants' motion and asking that it "instead sanction the Defendants and their counsel for raising it in the first place." Dkt. No. 113 at 2. The plaintiff asserts that the defendants filed their motion "solely because they had to write a summary judgment brief on certain causes of action, which *after* Plaintiff's counsel read in the context of legal arguments, agreed that Plaintiff would have a difficult time defeating summary judgment and dropped those claims." Id. (emphasis in original). He contends that

> [t]his Court can deny Defendants' motion for one simple reason: Defendants neither identified a single case or legal basis nor filed a motion to dismiss prior to the filing of their summary judgment motions to alert or argue to Plaintiff that they could not win on these certain causes of action. They never argued the actual law in an email, a telephone call, or even through smoke signals prior to filing for summary judgment. Instead, Defendants drop the proverbial nuclear bomb and claim that the mere fact that they *chose* to file summary judgment, which they would have filed regardless, caused them harm and is vexatious.

Id. (emphasis in original) (citing Dkt. No. 110).

The plaintiff asserts that the defendants did not timely respond to his discovery demands. Id. at 4. He explains that he made multiple efforts to depose a Rule 30(b)(6) representative for Kenosha County, in part to help identify the Doe defendants. Id. at 5-6. He disagrees with the County Defendants' assertion that at the last second, he served amended Rule 26(a) disclosures that identified fourteen new witnesses. Id. at 6. He says that he learned the identities of eleven of those witnesses from the defendants' disclosures and from depositions. Id. He says that two of the remaining three witnesses are journalists and the third is the plaintiff's doctor; he argues that

16

none of these witnesses were mentioned by any party in the summary judgment briefing. Id. at 7.

The plaintiff argues that the County Defendants' request for sanctions based on their argument that the fourteen witnesses were "surprise" witnesses "is preposterous and is sanctionable conduct in of itself." Id. at 8. He asserts that the defendants were aware of each of the fourteen witnesses, and explains why—some of the witnesses were or had been defendants, some were named in the defendants' initial disclosures, some had been identified as corporate representatives, some had been deposed, some had been identified as defense experts, one had been a party to text communications disclosed by the defendants in discovery, one had been mentioned by a third-party witness in her deposition and two were journalists whose reporting was publicly available. Id. at 8-10. The plaintiff asserts that the defendants are "grasping at straws" in arguing that the plaintiff "failed to disclose witnesses to them when Defendants were aware of each witness' identity and/or their identity was available to them;" he says that "[t]o suggest otherwise is deplorable and surprisingly dishonest." Id. at 10.

The plaintiff makes several procedural arguments. He says that this court's local rules state that motions to strike are disfavored in summary judgment proceedings. Id. (citing Civil L.R. 56(b)(10)). He argues that the motion to strike is unnecessary because the County Defendants could have made their arguments in their reply brief in support of their motion for summary judgment. Id. at 11. He says that the defendants' arguments do not

17

"even approach the level where a disfavored motion to strike would be an appropriate remedy," and that the defendants have not cited "a scilla [sic] of evidence" in support of the motion. Id. And he objects to counsel for the County Defendants making arguments that he perceives to be on behalf of the Medical Defendants. Id. He also points out that the County Defendants did not object to his request to file an oversized brief, saying that he "rightfully needed additional pages to adequately make its arguments which required substantial analysis of the constitutional issues presented." Id.

The plaintiff argues that there is no evidence that he acted in a deceitful manner in asking for an extension of time to respond to the summary judgment motions. Id. at 11–12. He argues that in their January 20, 2025 proposed findings of fact, the County Defendants mentioned that the plaintiff's municipal trial was scheduled for March 10, 2025, which means that the defendants knew before the plaintiff asked for an extension that his trial date was looming, but did not oppose the extension request. Id. at 12. The plaintiff asserts that it is "insulting, yet somehow flattering, that Defendants construe their own shortcomings and lack of attention to detail as Plaintiff being deceitful." Id. He argues that the request for extension of time truthfully recounted that counsel had several commitments other than the plaintiff's municipal trial, including another federal trial, a Seventh Circuit appellate brief and a scheduled international trip. Id. at 13 (quoting Dkt. No. 88). He again emphasizes that the County Defendants did not object to his request for an extension. Id. (citing Dkt. No. 89). The plaintiff contends that his reasons all

were true and together formed the basis for the extension request, not solely his municipal trial. Id. at 13–15. He accuses the County Defendants of filing the motion to strike in reaction to the fact that he prevailed in the municipal trial; he says that they are trying to discredit one of the witnesses at that trial whose testimony contradicts the defendants' arguments. Id. at 14. The plaintiff also accuses the defense of "prematurely" filing an interlocutory appeal in a different case pending in this district, which "in turn created a timing conflict for Plaintiff's attorneys." Id. at 14–15.

The plaintiff argues that the County Defendants were aware of the five witnesses who testified in the plaintiff's municipal trial (the plaintiff says he disclosed those witnesses in his November 30, 2022 Rule 26(a) disclosures). Id. at 15–16. He asserts that the defendants "are only concerned with the one witness" whom he called in the municipal trial, Judith Devine; he says that the defendants could have taken her deposition but did not. Id. at 15-16. With regard to the transcripts of the municipal trial, the plaintiff argues that he does not have a duty to provide them to the defendants because they are "readily available" to Kenosha County as the prosecuting party in the municipal case, that he is not obligated to disclose the transcript of a third-party witness whom the defendants had identified in their disclosures and that the defendants did not share discovery with him that they shared with the municipal prosecutor. Id. at 16–17.

The plaintiff says that the County Defendants are assuming that he knew that the third-party witness, Judith Devine, would show up at his municipal

19

trial unrepresented, without being subpoenaed, "to refuse Defendant's primary basis for arresting, detaining, and charging" him." Id. at 17. He says that he was as taken aback by Devine's testimony as the defendants, and that the defendants' arguments assume that he somehow planned this series of events. Id. at 17-18. He says it is "ridiculous" to suggest that he requested an extension of time for summary judgment briefing to enable him to use this testimony. Id. at 17–18. He asserts that he would not have even known who Devine was if Kenosha County had not "insisted on arresting and charging" him with "bogus" charges that lacked probable cause. Id. at 18.

The plaintiff argues that the defendants unfairly ask this court to strike the references to the municipal trial from the plaintiff's summary judgment materials when the County Defendants also reference the municipal proceedings in their proposed findings of fact. Id. at 18–19. He argues that the County Defendants "only wish this court to consider portions of the municipal court that suit their defense," which "would prejudice Plaintiff heavily and wrongfully." Id. at 19. The plaintiff summarizes that because the County Defendants knew of the municipal trial and the witnesses at that trial, because the plaintiff had no duty to disclose the identities of witnesses about whom the defendants knew and because he disclosed witnesses already known to the defendants, it would be "an abuse of discretion" for the court to strike any of his proposed findings of fact or opposition brief. Id.

Turning to the motion for sanctions, the plaintiff construes the defendants' argument as a request that the court sanction the plaintiff for

making "a conscious choice to not pursue certain claims *after* the Defendants' [sic] filed their respective motions for summary judgment, and by making them file their motions for summary judgment, Plaintiff 'so multiplie[d] the proceedings.'" Id. at 20 (citing Dkt. No. 110). The plaintiff contends that the County Defendants had two choices for dealing with what they perceived to be frivolous claims: they could have moved to dismiss the claims via a motion under Fed. R. Civ. P. 12(b)(6) or they could have sought summary judgment on the claims. Id. at 20. He asks, "[h]ow would the current position that Defendants now find themselves [sic] be any different than if they had moved for relief under either FRCP 12 or 56?" Id. He contends that because the County Defendants did not move to dismiss any of the five complaints, he "did not have the benefit of defense counsel's wisdom or belief as to why certain causes of action could not serve as the basis of recovery or were not viable claims" until summary judgment. Id. The plaintiff argues that although the County Defendants complain about having to file extensive summary judgment briefing, they could have made the same arguments and cited the same authorities in a motion to dismiss, "and theoretically, would be in the same position as they are now with certain causes of action not being pursued." Id. at 21.

The plaintiff says that the County Defendants also could have sent the plaintiff's counsel a Rule 11 safe harbor letter. Id. at 21–22. He says that if he'd been notified in such a letter of "legal grounds as to why the Plaintiff could not win specific causes of action as pled (i.e. that certain identified causes of action

21

were not appropriate as causes of action, such as punitive damages), Plaintiff could have analyzed Defendants' position and made certain choices at that time." Id.

Regarding the defendants' allegation that he has unreasonably and vexatiously multiplied the proceedings, the plaintiff asserts that the defendants have cited no caselaw imposing sanctions on a party who "acquiesces" in response to a summary judgment motion, or who makes a "tactical decision" in the wake of reviewing an opponent's filing to voluntarily dismiss weaker claims. Id. at 22. The plaintiff uses as an example the defendants' objection to being forced to address different possible iterations of his First Amendment claim against Kenosha County and Sheriff Beth. Id. at 23. He says:

> Defendants do not even consider the thought that perhaps Plaintiff made the conscious choice, after reviewing Defendants' briefs, that fighting the First Amendment Claim against Beth and Kenosha County would be difficult to argue and win (but not impossible), and rather than burdening the Court with deciding an issue that is secondary to stronger issues, like the clear First Amendment violations by the remaining defendants, it was best to concede. While defense counsel may believe that there is no basis for the First Amendment Claims against David Beth and Kenosha County, there is case law that the Plaintiff could have cited in opposition, to support its arguments. But the Plaintiff's ability to cite cases in opposition does not mean that they have to do so.

Id.

The plaintiff says that the defendants were tardy in responding to his discovery demands, requiring him to send notices to cure. Id. at 23-24. He asserts that he "patiently" worked with the defendants to obtain that discovery without involving the court, and that at no time during that process did defense counsel express concerns about the viability of his claims. Id. He also

22

says that only a few weeks before the defendants filed their summary judgment motions, they provided him a large amount of discovery, some of which was important for the plaintiff's First Amendment and <u>Monell</u> claims. <u>Id.</u> at 25. He says:

> Defendants' argument that merely having to file a summary judgment motion on a claim that they never moved to dismiss as frivolous or not grounded in law is vexatious changes the entire dynamics of litigation in this District, and perhaps nationally. Plaintiff can accept that some of his claims have some flaws. But can Defendants do the same?

<u>Id.</u>

The plaintiff asserts that there is no case law supporting the County Defendants' argument for sanctions. <u>Id.</u> at 25–27. He argues that this case was not marked by discovery disputes, motions to compel or other litigation misconduct that would have constituted warning signs of vexatious litigation. <u>Id.</u> at 27. The plaintiff cites <u>Strobehn v. Weltman Weinberg & Reis Co., LPA</u>, 16-CV-0985, 2018 WL 1997989, at *2 (E.D. Wis. April 27, 2018), in which he says Judge Stadtmueller declined to sanction the plaintiff's attorney under Rule 11 because the plaintiff withdrew her claim in response to the defendant's motion for summary judgment. <u>Id.</u> at 28–29. He says that in <u>Strohben</u>, there were many docket entries and the parties had a history of acting unprofessionally. <u>Id.</u> at 29. The plaintiff says that before "besmirching" the reputation of his counsel, the defendants should have conducted a "simple search" of cases in this district, which would have revealed "that the current litigation does not even rise to the label [sic] of sanctions under any circumstances, and the filing of this motion is in and of itself, a sanctionable event." <u>Id.</u>

23

The plaintiff urges this court to consider whether to sanction the defendants for filing the motion to strike. Id. He points to this court's practice tips, in which it explains that courts are not fond of being asked to resolve discovery disputes that the parties could have resolved themselves, or disputes that involve "intemperate exchanges or *ad hominem* attacks," deducing that the court "expects parties to act professionally and where possible to resolve disputes themselves." Id. at 30 (quoting www.wied.uscourts.gov/judge/pamela-pepper, Practice Tips, §III, ¶2). He argues that the defendants could have consulted with his counsel but did not and concludes by stating that the defense "should have given more thought to the motion and should have tried to hear from the other side." Id.

### 3.     *The County Defendants' Reply*

The County Defendants reply that the plaintiff misses the point and either misunderstands or ignores their arguments. Dkt. No. 115 at 2.

Regarding the municipal trial, the defendants assert that they object to "(1) the manner in which Plaintiff went about securing an extension of time; and (2) Plaintiff's surprise tactic use of the testimony that was not subject to cross-examination or further challenge by parties to this case, in violation of Fed. R. Civ. P. 26." Id. at 2-3. They reiterate that they believe that the reason the plaintiff asked for a fifty-five-day extension of time to respond to their summary judgment motion was so that he could gather testimony at the municipal trial—testimony "for which none of the defense counsel were able to conduct cross-examination." Id. at 3. They assert that prior to filing his brief in

24

opposition to their summary judgment motion, the plaintiff did not notify other parties of the municipal trial testimony as required by Fed. R. Civ. P. 26. Id. They emphasize that Rule 26(e) required the plaintiff to timely disclose that testimony, but that although the testimony occurred on March 10, 2025 no party received it until April 15, 2025. Id. at 2-4. The County Defendants state that although Kenosha County was a party in both the municipal trial and this federal civil case, the county was represented by different counsel in the two cases (the District Attorney's Office in the municipal trial and retained counsel in this case) and the claims in the two cases were not the same. Id. at 3–4, n.3. They assert that the plaintiff simply "wove" the municipal trial testimony into his response materials, leaving it to them to "catch" it. Id. at 4.

The County Defendants characterize the plaintiff's basis for seeking leave to file an oversized brief as "chicanery," reiterating that the plaintiff claimed to need forty-five pages and 150 proposed findings based on the number of the defense arguments, then did not respond to roughly two-thirds of those arguments and most of the immunity arguments relating to the other claims. Id.

The County Defendants say that they don't disagree that "certain witnesses exist," but they take issue with "the late amended disclosures" of those witnesses. Id. They assert that the plaintiff also knew about the additional witnesses named in his amended initial disclosures from early in the case but did not timely amend those disclosures until the close of discovery. Id. at 4–5. They ask why, if the plaintiff's November 2022 disclosures were meant

25

to include the named witnesses of other parties, he then amended those disclosures to add witnesses revealed in other parties' disclosures. Id. And they ask why it took the plaintiff so long to amend the disclosures to add witnesses of whom he'd earlier been aware. Id. at 4-5.

The County Defendants agree that they did not object to the plaintiff's motions to extend the summary judgment response deadline or to file an oversized brief, but state that that is because they "took Plaintiff at his word" regarding the reasons for those requests. Id. at 5. They assert that they now know the true reason the plaintiff asked for the extension of time and the additional pages and proposed findings of fact, but that the plaintiff "now blames the County Defendants for being naïve enough to believe Plaintiff's representations to the Court and apparently thinks the County Defendants should have to bear the consequences of Plaintiff's actions." Id.

As for the plaintiff's argument that counsel for the County Defendants is improperly arguing on behalf of the Medical Defendants, counsel say that many—a "vast majority"—of the proposed findings of fact the plaintiff filed in opposition to the Medical Defendants' summary judgment motion contain allegations against the County Defendants. Id. They say that if they cannot seek to strike portions of those proposed facts, it would "encourage litigants to litter pleadings with allegations against one party but title the document as directed towards another—which is exactly what the Plaintiff did here." Id. at 5-6.

The Count Defendants reiterate that the "appropriate solution" is to strike the portions of the summary judgment materials they have identified. Id. at 6.

Turning to the plaintiff's assertion that the County Defendants should have moved to dismiss any of his claims they believed to be frivolous or meritless, the County Defendants argue that the plaintiff fails to acknowledge that the legal standards for motions to dismiss and motions for summary judgment are different. Id. They argue that the plaintiff had a duty to conduct due diligence before filing any claims and to reasonably enquire into the facts and the law before proceeding. Id. (citing Brown v. Federation of State Medical Boards of the United States, 830 F.2d 1429, 1435 (7th Cir. 1987)). They assert that it is not their responsibility to ensure that the plaintiff or his counsel comply with this duty or with the plaintiff's obligation to dismiss claims that "are not viable." Id.

Regarding the plaintiff's suggestion that the defendants should have sent the plaintiff a Rule 11 safe harbor letter, the defendants characterize this as an argument that the County Defendants were responsible for "guess[ing] ahead of time that Plaintiff would forfeit over half of his claims after reviewing the moving briefs on summary judgment; therefore, the County Defendants should have preemptively sent a Rule 11 letter." Id. at 7. They say that this is akin to arguing that in every case, defendants must send a safe harbor letter warning plaintiffs that if they don't have the evidence to support their claims, they should dismiss those claims. Id.

27

In response to the plaintiff's assertion that they cited no case law "establishing that abandoning certain claims in response to summary judgment constitutes vexatious conduct," the County Defendants assert that "[a] similar motion for similar conduct is pending against one of Plaintiff's counsel" in this district, which, they contend, suggests a pattern of vexatious litigation. Id. at 7–9 (citing Schukar, <em>et al.</em> v. Kenosha County, <em>et al.</em>, Case No. 23-CV-880 (E.D. Wis.)). While acknowledging that Judge Stadtmueller (the presiding judge in that case) "has a particular procedure intended to define the scope of litigation early," the County Defendants assert that the language he has used in <u>Schukar</u> and another case sends a message that "plaintiffs may not force litigation on knowingly deadened claims." <u>Id.</u> at 8.

Finally, the County Defendants characterize the plaintiff's request for sanctions as "nothing but a retaliatory, baseless red herring." <u>Id.</u> at 9. Although they agree that parties to federal lawsuits should act professionally, they argue that the plaintiff has not done so here and that he complains because his unprofessional conduct has been revealed. <u>Id.</u> They assert that the court must intervene to stop the plaintiff's counsel's conduct. <u>Id.</u>

B. <u>Analysis</u>

1. *Request to Strike Portions of Plaintiff's Proposed Findings of Fact and Brief*

The County Defendants seek to strike from the plaintiff's proposed findings of fact (both those responding to the County Defendants' summary judgment motion and to the Medical Defendants' summary judgment motion) and opposition brief any reference to the plaintiff's municipal trial on the

28

grounds that the plaintiff did not disclose that information in discovery and that the plaintiff obtained the information through unreasonable means.

Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or by motion of a party made before responding to the pleading or within twenty days of being served with the pleading. The rule refers to "pleadings"—defined as a complaint, counterclaim, crossclaim, third-party complaint or reply to an answer. See S.A. by J.A. v. Aetna Health of Illinois, Case No. 25-cv-790, 2026 WL 280231, at *2 (E.D. Wis. Feb. 3, 2026) (citing WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, §1380; Fed. R. Civ. P. 7(a)). Arguably, Rule 12(f) does not authorize a court to strike documents that are not pleadings, such as proposed findings of fact or briefs. See id., Gomez v. V. Marchese & Co., Case No. 20-cv-1802-pp, 2022 WL 3228047, at *4 (E.D. Wis. Aug. 10, 2022)). And the plaintiff is correct that this court's Local Rule governing summary judgment states that "[c]ollateral motions, such as motions to strike, are disfavored." Civil L.R. 56(b)(1). "Motions to strike are disfavored because often they serve only to delay litigation." S.A. by J.A., 2026 WL 280231, at *2 (citing Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989)).

The defendants concede both these points but argue that at least one court in this district has granted a motion to strike documents other than pleadings, and argue that the fact that motions to strike are "disfavored" does mean that they are prohibited. From the court's perspective, the pertinent questions are (1)

what, if anything, has the plaintiff done that warrants a sanction, (2) if a sanction is warranted, is striking the appropriate sanction and (3) if so, does the court have the authority to impose that sanction.

Rule 26(a)(1)(a) mandates that, without waiting for a discovery request, parties must provide to the other parties in the case "copies—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). That is an "initial disclosure" requirement—parties are *required* by the rule to disclose such documents and information at the outset of the case (at the Rule 26(f) conference or within fourteen days of it unless the court orders otherwise). Fed. R. Civ. P. 26(a)(1)(C). Rule 26 recognizes that parties may later learn that their initial disclosures were not complete; in that circumstance, a party who has made Rule 26(a) disclosure, "or who has responded to an interrogatory, request for production, or request for admission," is required to supplement or correct its initial disclosures. Fed. R. Civ. P. 26(e)(1). The disclosing party must supplement its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). The rule does not say that the obligation to supplement or correct ends at any time. Medline Indus., L.P. v. C.R. Bard, Inc., Case No. 14 CV 3618, 2023 WL 2711433, at *4 (N.D. Ill. March 30, 2023). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that

30

information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004) (citation omitted).

The court's last scheduling order required that "the parties are to complete discovery by the end of the day on January 6, 2025." Dkt. No. 58. The plaintiff's municipal trial took place on March 10, 2025—two months after the close of discovery. Dkt. No. 98-2. The court reporter filed the municipal trial transcript on April 3, 2025. Id. at 79. The transcript reveals that the state was represented at the trial by James T. Sempf, a Kenosha County Assistant District Attorney who is not counsel of record in this federal civil lawsuit. See Dkt. No. 98-2. It reveals that the plaintiff was represented by Attorney Kimberley CY Motley, one of the attorneys representing the plaintiff in this federal civil lawsuit. Id. That means that as of day's end on March 10, 2025, one of the plaintiff's federal lawyers was aware of the evidence that had been presented—including the testimony—at the municipal trial. By April 3, 2025, one of the plaintiff's lawyers had a "document[] . . . in [her] possession, custody, or control" that she "[might] use to support [the plaintiff's] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Under Rule 26(e)(1)(A), she was required to supplement the plaintiff's initial Rule 26(a) disclosures with this document, and to do so "in a timely fashion."

There appears to be no dispute that the plaintiff did not supplement his Rule 26(a) disclosures by disclosing the transcript of the municipal trial. The County Defendants contend that they were not aware that the plaintiff intended to use the transcript to support his opposition to summary judgment until the plaintiff filed his opposition materials on April 15, 2025. The plaintiff does not dispute this. Rather, he argues that he did not "have a duty to provide defendants with court trial transcripts that are readily available to Kenosha County as the prosecuting party," that he did not "have a duty to disclose transcripts from a third-party witness, whom Defendants identified in their initial disclosures" and that defendant Kenosha county "appointed a special prosecutor for the disorderly conduct charges unsuccessfully brought" against him. Dkt. No. 113 at 16-17.

The plaintiff provides no authority for his assertion that he did not have a duty to disclose the trial transcript. Rules 26(a) and (e) do not state that a party must disclose a document only if other parties do not have access to it, or that the party has no duty to disclose if the document or evidence is "from a third-party witness." The rule required the plaintiff to disclose the transcript if he was going to use it to support his claims or defenses. He was going to, and he did. But he did not disclose the transcript.

The plaintiff also argues that the defendants knew of Judith Devine's existence (because the defendants listed her in *their* initial disclosures, Dkt. No. 114-8 at 5), and that they could have deposed her had they chosen to. But the plaintiff also concedes that Devine's trial testimony was different than her

32

previous statements. The point is not whether the defendants knew of Devine or whether they could have deposed her; the point is whether the plaintiff had in his possession, custody or control a document—the transcript—that he might use to support his claims or defenses. He did, but he did not disclose it as required by Rules 26(a) and (e).

The plaintiff's failure to disclose that evidence results in the automatic, mandatory exclusion of the evidence unless the failure was substantially justified or harmless. In assessing whether the failure to disclose is substantially justified or harmless, the court considers "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 417 (7th Cir. 2019) (quoting Tribble v. Evangelides, 670 F.3d 753, 760 (7th Cir. 2012)).

The plaintiff has not established that his failure to disclose the trial transcript was substantially justified or harmless. The County Defendants filed their motion for summary judgment and supporting materials on January 20, 2025. The plaintiff's counsel observed the municipal trial testimony on March 10, 2025—not quite two months later. The transcript became available to the plaintiff's counsel on April 3, 2025. The plaintiff did not disclose the transcript, but he based a large portion of his April 15, 2025 opposition brief on that undisclosed evidence. The County Defendants assert that this surprised and prejudiced them, and the plaintiff's only response to this is that the defendants

33

could have deposed Judith Devine. That response misses the mark; although the defendants could have deposed Devine earlier in the federal case, they could *not* depose her about her testimony at the March 10, 2025 municipal trial, because by that time, federal discovery was closed.

As for the ability to cure the prejudice, the County Defendants could not address the transcript in their opening brief, because it was created after they filed it. They had limited time (fourteen days, Civil L.R. 56(b)(3)) and space (fifteen pages, Civil L.R. 56(b)(8)(A)) in which to address the new evidence in their reply brief, limiting their ability to cure the prejudice. And again, they did not have the ability to depose or cross-examine Judith Devine on the testimony she gave at the municipal trial—that was a criminal proceeding to which they were not parties and by the time they found out that the plaintiff was using the transcript in this federal case, discovery had closed.

Although the failure to disclose the transcript has little likelihood of disrupting the *trial* in this case, it already has disrupted the summary judgment process. Had the plaintiff disclosed the transcript at any time before filing his opposition materials, the County Defendants would have had the opportunity to ask the court to stay summary judgment or to reopen discovery, or at the very least to ask to supplement their initial brief. They did not have that opportunity.

Nor has the plaintiff explained why he did not disclose the transcript (or the substance of the testimony memorialized in the transcript) sooner; he argues only that he was not required to disclose it, which implies that the

failure to disclose the transcript was at least willful if not also in bad faith. The plaintiff has not established that his failure to disclose the trial transcript was substantially justified or harmless.

The parties spill much ink debating whether the reason the plaintiff asked for an extension of time to respond to the County Defendants' summary judgment motion was so that he could file his opposition brief with the benefit of knowing the testimony from and the outcome of the municipal trial. The plaintiff insists that this is ridiculous—he lists multiple reasons he sought the extension of time (including a federal trial of which this court is aware and an attorney's travel obligation), and he says that he could not have known on January 29, 2025, when he requested the extension, how the March 10, 2025 trial would go. The court need not try to figure out what the plaintiff's counsel were thinking when they sought the extension. What is relevant is that the additional time they obtained provided them with additional evidence—the testimony adduced at the municipal trial—but they did not disclose that evidence.

The plaintiff did not comply with Rules 26(a) and (e), and that failure was neither substantially justified nor harmless. Although the County Defendants cited Rule 12(f), Rule 37(c)(1) is the rule that mandates that the court prohibit the plaintiff from using the material he did not disclose to supply evidence on the County Defendants' summary judgment motion. The court construes the County Defendants' motion as a motion for sanctions under Rule 37(c)(1), grants that motion and will order that the portions of the plaintiff's proposed

35

findings of fact and opposition brief identified by the County Defendants must be stricken.

2. *Motion for Sanctions under 28 U.S.C. § 1927*

The County Defendants seek sanctions against the plaintiff's counsel for bringing frivolous claims that he dismissed via his brief in opposition to their motion for summary judgment. Section 1927 of Title 28 states that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." When interpreting §1927, the Seventh Circuit Court of Appeals has explained that

> [i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.

In re TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985). This holding relates to Rule 11's mandate that before filing any pleading, an attorney must perform a reasonable inquiry to determine that both "the factual contentions have evidentiary support" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response." In re TCI, 769 F.2d at 446.

36

A review of the complaints is helpful in evaluating the County Defendants' motion. The original complaint (filed August 23, 2022) and the first amended complaint (filed August 24, 2022) alleged twelve claims for relief: (1) a claim under 42 U.S.C. §1983 that defendants Beth and Kenosha County violated the plaintiff's First Amendment rights by arresting and citing the plaintiff; (2) a claim under 42 U.S.C. §1983 that individual officers retaliated against the plaintiff in violation of the First Amendment by subjecting him to force; (3) a claim under 42 U.S.C. §1983 for "Deliberate Indifference" against defendant Beth; (4) a claim under 42 U.S.C. §1983 alleging that individual officers violated the plaintiff's First Amendment rights via "Excessive Force & Arrest;" (5) a claim under 42 U.S.C. §1983 that individual officers violated the plaintiff's Fourth and Fourteenth Amendment rights by using excessive force; (6) a claim under 42 U.S.C. §1983 that certain officers subjected the plaintiff to cruel and unusual punishment in violation of the Eighth Amendment; (7) a claim under 42 U.S.C. §1983 that certain officers violated the plaintiff's Eighth and Fourteenth Amendment rights by failing to intervene; (8) a claim of excessive detention against John Doe officers; (9) a claim against named and Doe officers for intentional infliction of emotional distress; (10) a state-law indemnification claim against Kenosha County; (11) a "direct action" claim against the insurance companies under Wis. Stat. §623.24; and (12) a Monell claim against Kenosha County. Dkt. Nos. 1, 4.

The second amended complaint (filed February 15, 2023) left intact the first eleven claims. It substituted as the twelfth claim a claim of negligent

37

hiring, training and supervision against NaphCare and Kenosha County, added a thirteenth claim of *respondeat superior* against NaphCare and moved the Monell claim to fourteenth place. Dkt. No. 20. The plaintiff filed this second amended complaint after the County Defendants had answered the first amended complaint.

The plaintiff filed the third amended complaint on August 28, 2023, after both the County Defendants and the Medical Defendants had answered the second amended complaint. In this version, the sixth claim excluded the reference to the Eighth Amendment and asserted that the defendants had subjected the plaintiff to cruel and unusual punishment in violation of the Fourth and Fourteenth Amendments. It excluded reference to the Eighth Amendment in the seventh claim (the failure-to-intervene claim). It replaced the eleventh claim with the negligent hiring, training and supervision claim (now asserted against Visiting Nurse Community Care, Inc., Kenosha Visiting Nurse Association and Kenosha County). It stated the *respondeat superior* claim against the two nursing associations in the twelfth claim. It asserted the Monell claim against the County in the thirteenth claim. In the fourteenth claim, it added an allegation against state and medical defendants for failure to render aid. It moved the Wis. Stat. §632.24 "direct action" claim to fifteenth place, and it added a sixteenth claim that officers and medical professionals had denied the plaintiff equal protection in violation of 42 U.S.C. §1983. Dkt. No. 34.

Finally, the plaintiff filed his fourth amended complaint on June 26, 2024—two months shy of the two-year anniversary of the case.[5] It had been over a year and a half since the court issued the first scheduling order and the parties had begun discovery. This time, the tenth claim for relief alleged deliberate medical indifference in violation of 42 U.S.C. §1983 against the Medical Defendants. The state-law indemnification claim appeared in eleventh place, the negligent hiring claim in twelfth, the *respondeat superior* claim in thirteenth, the Monell claim in fourteenth, the failure-to-render-aid claim fifteenth, the Wis. Stat. §632.24 "direct action" claim sixteenth, the equal protection claim seventeenth and a new breach of contract claim against the two nursing organizations as an eighteenth claim. Dkt. No. 59.

Out of the gate, some of the causes of action alleged in the original and first amended complaints were concerning. The third cause of action appears to be a claim under §1983 alleging "deliberate indifference" but untethered to any articulated constitutional right. To state a claim under §1983, the plaintiff must allege that someone deprived him of a right secured by the Constitution or laws of the United States. The claim makes no mention of any constitutional or statutory provision prohibiting "deliberate indifference" (though there are some). The fourth cause of action purports to state a claim for "excessive force" under the *First* Amendment. But the Supreme Court long has held that courts must analyze excessive force claims under the *Fourth* Amendment. See Graham

---

[5] In the fourth amended complaint, the plaintiff corrected the name of Kenosha County's insurer, from "Wisconsin County Mutual Insurance Company" to "Wisconsin Municipal Mutual Insurance Company." Dkt. No. 59 at 1.

<u>v. Connor</u>, 490 U.S. 386, 388 (1989). The sixth and seventh claims assert that defendants violated the plaintiff's *Eighth* Amendment rights, but the facts alleged in the complaint reveal that the plaintiff was a pretrial detainee at the time of the events he describes. The Eighth Amendment "does not apply to pretrial detainees;" a pretrial detainee's rights "are derived from the Due Process Clause of the Fourteenth Amendment . . . ." <u>Board v. Farnham</u>, 394 F.3d 469, 477 (7th Cir. 2005).

These issues are concerning because at least one of the plaintiff's law firms advertises "Civil Rights Litigation" as a significant practice area. Cade-law.com/civil-rights-litigation. The above issues should be clear to an experienced civil rights practitioner. In one of the subsequent amended complaints, the plaintiff removed references to the Eighth Amendment, added defendants, dismissed certain defendants, added facts. But over three revisions of the original complaint, he did not address the other issues, and he did not dismiss claims.

The plaintiff proceeded on the original twelve claims (with some modification) and, over a two-year period, added six more. He did not "dismiss" any claims until April 15, 2025, when he filed his brief in opposition to the County Defendants' motion for summary judgment. Dkt. No. 97. In a paragraph in the introduction to his brief, the plaintiff stated, "Plaintiff further acknowledges that Kenosha County is responsible for the acts of all Defendants to this matter and that the 11th Claim for Relief of Indemnification is not a 'claim' in and of itself, as well as the 16th Direct Action Claim against the

40

defendant Insurance Company." Id. at 5. Apparently, the plaintiff intended this paragraph as a "voluntary dismissal" of those two claims—claims that had been in every version of the complaint dating back to August 2022.

Then, in a footnote on the same page, the plaintiff stated that he "voluntarily dismisse[d] Counts 1 (First Amendment), 3 (Deliberate Indifference claim), 4 (First Amendment Excessive Force and Arrest claim), 6 (Cruel and Unusual Punishment claim), 8 (Excessive Detention claim), 14 (Monell), 17 (Equal Protection), and Defendant Beth from this action." Dkt. No. 97 at 5 n.2. The plaintiff asserted that he opposes summary judgment only on Counts 2 (First Amendment retaliation), 5 (excessive force), 7 (failure to intervene), 12 (negligent hiring, training and supervision) and 15 (failure to render aid). Id. at 4–5. He provided no explanation for why he was dismissing nine of the eighteen claims in the fourth amended complaint—again, some of which he had been pressing since August 2022. It appears that the plaintiff wishes to proceed against the County Defendants only on Counts 2, 5, 7, 12 and 15 of the fourth amended complaint.[6]

In his April 15, 2025 brief in opposition to the Medical Defendants' summary judgment motion, the plaintiff also "voluntarily dismisse[d]" several of the claims in the fourth amended complaint—again, in a footnote he dropped

---

[6] In his opposition brief to the County Defendants' motion for summary judgment, the plaintiff did not mention Count 9 (intentional infliction of emotional distress). But as the court will explain below, in his brief in opposition to the Medical Defendants' summary judgment he asserted that he was "voluntarily dismiss[ing]" claim 9, so it appears that he does not wish to proceed on that claim against any defendants.

41

at the end of his introduction: "Plaintiff voluntarily dismisses Claims 5 Excessive Force and Arrest, 6 (Cruel and Unusual Punishment claim), 9 (Intentional Infliction of Emotional Distress), 10 (Deliberate Medical Indifference), 15 (Failure to Render Aid), 17 (Denial of Equal Protection), and 18 (Breach of Contract)." Dkt. No. 93 at 6 n.2. In that brief, the plaintiff asserted that he opposes summary judgment only on Counts 7 (failure to intervene) and 12 (negligent hiring, training and supervision). Id. at 6. But in the body of the brief, the plaintiff included argument regarding Count 13 (*respondeat superior*). Id. at 19–20. It appears, then, that the plaintiff wishes to proceed against the Medical Defendants on Counts 7, 12 and 13.

That means that out of the eighteen claims the plaintiff alleged in the fourth amended complaint, he opposes summary judgment on only five claims against the County Defendants and three claims against the Medical Defendants. The plaintiff states that he did not know that the "voluntarily dismissed" claims were legally insufficient until he read them "in the context of legal arguments" made by the County Defendants, and that if the County Defendants believed the claims were not viable, they could and should have filed a motion to dismiss earlier in the case. See Dkt. No. 113 at 2, 20 ("Plaintiff did not have the benefit of defense counsel's wisdom or belief as to why certain causes of action could not serve as the basis of recovery or were not viable claims"), 21–22 ("Had Defendants identified the legal grounds as to why the Plaintiff could not win specific causes of action as pled . . .").

Judge J.P. Stadtmueller considered this same argument in <u>Schukar v. Olson, *et al.*</u>, Case No. 23-cv-880 (E.D. Wis.), Dkt. No. 83. Three of the four plaintiffs' lawyers in the <u>Schukar</u> case also represent (or have represented) the plaintiff in this case. One of the lawyers representing the County Defendants in this case represented Kenosha County defendants in the <u>Schukar</u> case. As the defendants have done here, the defendants in <u>Schukar</u> asked Judge Stadtmueller to impose sanctions under 28 U.S.C. §1297; Judge Stadtmueller said that the "gist" of the defendants' argument was that "Plaintiffs, through the course of this litigation, repeatedly refused to dismiss various claims that they now voluntarily dismiss or concede as unmeritorious or premature in their summary judgment briefing." <u>Id.</u>, Dkt. No. 83 at 49. As did the plaintiff here, the plaintiff in <u>Schukar</u> responded that the plaintiff's counsel "had no reason to believe that these claims were unmeritorious until Defendants provided them with relevant legal authority at summary judgment," and argued that the defendants could have filed a motion to dismiss. <u>Id.</u> at 49-50. The plaintiffs filed the brief containing that argument on March 6, 2025—a little over two months before the plaintiff made the same argument in the brief in opposition to the defendants' motion for sanctions in this case.

Judge Stadtmueller resolved the motion this way:

> The Court will deny Defendants' motion without wading too far into the parties' arguments. On the one hand, the Court is not convinced by Plaintiffs' contention that their attorneys could not have known that many of their claims lacked merit until Defendants' counsel provided authority demonstrating as much. Plaintiffs' counsel are seasoned litigators who focus primarily on civil rights cases in Wisconsin Courts. . . . It is implausible that Plaintiffs' counsel did not know, for example, that monetary damages are not

43

available for claims under the Wisconsin Constitution. . . . On the other hand, the Court agrees with Plaintiffs that Defendants are not significantly worse off for having secured dismissal of certain claims during summary judgment briefing instead of earlier in the case. The same facts underlie Plaintiffs' federal and state claims, so no additional discovery was required. And, like Plaintiffs' counsel, Defendants' counsel routinely defend municipalities in civil rights cases. . . . It is therefore unlikely that they were required to spend a substantial portion of time doing legal research from scratch to secure dismissal of the claims that Plaintiffs concede lack merit, because Defendants' counsel have likely encountered these issues many times in the past. Finally, as demonstrated by the extent of [the court's substantive analysis on summary judgment], this case presented challenging factual and legal issues. Plaintiffs were not litigating frivolous claims and victory for Defendants was not a foregone conclusion. Considering these facts, the Court will not conclude that Plaintiffs' counsel acted in an objectively unreasonable manner or with bad faith and will therefore deny Defendants' motion for sanctions.

Id. at 50-51.

This court shares Judge Stadtmueller's skepticism regarding the plaintiff's assertion that his counsel could not have known that his claims lacked merit until they saw the defense briefing. Experienced civil rights attorneys are familiar with common constitutional claims raised through §1983 and the elements of those claims. They are familiar with the evidence necessary to support such claims. There is a difference between asserting a claim that may be hard to prove and asserting claims that do not exist or for which there are no supporting facts.

The plaintiff argues that the court cannot sanction his counsel for bringing frivolous claims if the sanctions are based on the fact that prior to summary judgment, the defendants did not alert the plaintiff that they believed that his claims were frivolous or otherwise challenge them. But that argument

44

assumes that it is the *defendants'* obligation to ensure that a plaintiff's claims are valid. Although the defendants are not relying on Fed. R. Civ. P. 11(b)(2), it is worth noting that that rule puts the onus on the *plaintiff*, not the defendant, stating that

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contents are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

The Seventh Circuit has explained that

> [t]he principle underlying §1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really *does* bear the costs and does not foist expenses off on its adversaries. One cost of a lawsuit is research. An attorney must ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief. This may be a costly endeavor. Defense against a colorable claim also may be very costly. It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response.

In re TCI, 769 F.2d at 446.

Even if the plaintiff's counsel were not experienced civil rights litigators, a reasonable review of §1983 jurisprudence would have revealed to them that for a defendant to be held liable under §1983, he must have been personally involved in the alleged constitutional violation. It would have revealed that there is no recognized cause of action for excessive force under the *First* Amendment. It would have revealed that there is no independent cause of

45

action for "deliberate indifference." It would have revealed the necessary elements of <u>Monell</u> and official capacity claims that a plaintiff raising those claims must plead. It would have revealed that the Fourteenth Amendment does not restrict its prohibition against punishment of pretrial detainees to "cruel and unusual" punishment.

The plaintiff opted to dismiss his claims in either a short paragraph or footnotes, without any explanation. This implies that he concedes that the claims were not warranted by existing law, or that he did not have a nonfrivolous argument for extending existing law to create such claims. The plaintiff suggests that "there is case law that Plaintiff could have cited in opposition, to support its arguments" on the First Amendment claims against defendants David Beth and Kenosha County, but he has not identified that case law or suggested that any of the other voluntarily dismissed claims are nonfrivolous. At minimum, the plaintiff acted recklessly by failing to conduct an adequate investigation into the law before filing his complaint, then amending it three times over almost two years (adding more claims each time).

The plaintiff argues that the court should not sanction his counsel because the County Defendants would not have had to address so many claims on summary judgment had they filed motions to dismiss rather than answering the various complaints. Again, this argument implies that it is the defendants' burden to ensure that a plaintiff's claims are warranted by the facts and the law. But it also ignores the fact that, as the Seventh Circuit explained in <u>In re TCI</u>, litigation is costly. The County Defendants could have expended resources

46

filing one (or more) motions to dismiss, but those motions may have resulted in only some of the causes of action being dismissed for failure to state a claim. The defendants then might have had to expend more resources seeking summary judgment on the remaining claims. Just as it is the plaintiff's prerogative to decide how to bring his case, it is the defendants' prerogative to decide how to defend it.

The plaintiff also argues that the defendants have not been prejudiced because they would have filed for summary judgment one way or the other. The issue is not whether the defendants would have incurred *some* litigation costs. The issue is whether the plaintiff's conduct caused them to incur *excess* costs. Section 1927 refers to *excess* costs. Had the plaintiff declined to bring the claims he now has dismissed, or had he dismissed them earlier in the litigation, the County Defendants would not have been required to address fifteen claims in their opening summary judgment brief. Had the plaintiff declined to bring those claims, or dismissed them earlier, the County Defendants would have expended less time and resources on their summary judgment motion. It is the cost of that *excess* time and those *excess* resources the County Defendants seek to recover, not the cost of moving for summary judgment entirely. And the purpose of §1927 is not solely to compensate the moving party; the statute also serves to "deter[] the sanctioned attorney and the bar generally from engaging in similar behavior." Tate v. Ancell, 551 F. App'x 877, 895 (7th Cir. 2014).

The court agrees with Judge Stadtmueller that, like the plaintiffs' counsel, defense counsel are experienced civil rights litigators who have an established civil rights practice. https://www.crivellolaw.com/practices/civil-rights-litigation/. But under the circumstances of this case, that fact does not demand the conclusion that the defendants did not incur excess costs due to the plaintiff's conduct. The defendants were forced to prepare a forty-five-page brief, twenty-three pages of proposed statements of fact and numerous exhibits to address fifteen claims, only to have the plaintiff say "never mind" as to ten of them. And, as the defendants argue, because this court granted the plaintiff's request to allow him to file an oversized brief so that he could address the many arguments the defendants raised regarding those fifteen claims, he, too, had forty-five pages within which to make his arguments. But by dismissing ten of his claims in a handful of sentences, the plaintiff was able to use the bulk of his oversized brief to address a far smaller number of claims and arguments than the defendants had been forced to address in the same number of pages.

Finally, the plaintiff is correct that this court "expects parties to act professionally" and "frowns . . . upon *ad hominem* attacks." Dkt. No. 113 at 30. Unfortunately, the briefing of this motion has not met those expectations. The defendants accuse the plaintiff of being "less than forthcoming," dkt. no. 110 at 12, "deceitful," id., lacking in candor, poorly pleading his claims and making "patent misrepresentations," id. at 15. But it is disingenuous for the plaintiff to complain about these characterizations, then call the defendants "deplorable

48

and surprisingly dishonest," dkt. no. 113 at 10, say their arguments are "ridiculous" (twice), id. at 16, 18, claim that they "lack[] attention to detail," id. at 12, and accuse them of violating "any sense of common decency and decorum," id. at 2, for filing the motion to strike.

Mudslinging and name-calling do not equate to zealous advocacy. The defendants' frustration with the plaintiff's conduct bled into their characterization of his motives and intent. The plaintiff responded by chastising the defendants, then engaging in the same conduct. Neither party's conduct represented the professionalism the court would hope to see from these counsel. But it is the plaintiff's counsel who has multiplied the proceedings unreasonably.

The court will grant the County Defendants' request and reward sanctions under 28 U.S.C. §1927. Below the court will set a deadline by which the County Defendants must file an affidavit with supporting documentation describing the costs and fees they incurred preparing summary judgment materials to defend against the plaintiffs' "voluntarily dismissed" claims.

## IV. Motions for Summary Judgment (Dkt. Nos. 70, 81)

Significant portions of the motions for summary judgment filed by both sets of defendants are comprised of argument and analysis regarding claims that the plaintiff revealed in his opposition materials he had decided not to pursue. The Medical Defendants' motion addresses ten claims; the plaintiff is proceeding with only three. The County Defendants' motion addresses fifteen claims; the plaintiff is proceeding on only five.

49

Additionally, significant portions of the plaintiff's materials in opposition rely on evidence the court now has stricken. The court allowed the plaintiff to file an oversized brief and additional proposed findings of fact in opposition to the County Defendants' summary judgment motion specifically to address the large number of claims and arguments in that motion. As explained, the plaintiff addressed only five of those claims but used the entire forty-five pages the court granted him to do so. Because significant summary judgment materials the parties submitted are based on irrelevant or stricken information, the court will deny both motions for summary judgment without prejudice.

If the defendants wish to refile motions for summary judgment on the remaining claims, they must do so by the deadline set at the end of this order. The page limits, response and reply deadlines dictated by Civil L.R. 56 will apply. The court reminds the parties that they must not use the municipal trial testimony that the court has stricken in any refiled summary judgment motion or in any opposition materials.

The court will accept the plaintiff's voluntary dismissal of the claims as stated in his opposition briefs. The court will dismiss Counts 1, 3, 4, 6, 8, 9, 10, 14, 17 and 18 of the fourth amended complaint in their entirety, Counts 5 and 15 against defendant Jessica Bergmann only and all claims against defendant David Beth.

## V. Plaintiff's Motion for Sanctions (Dkt. No. 120)

On September 16, 2025, the plaintiff filed a motion asking the court to impose sanctions against the County Defendants, asserting that the arguments

50

the County Defendants made in their motion for sanctions are frivolous and sanctionable under Federal Rule of Civil Procedure 11. Dkt. No. 120. The plaintiff relies on the same arguments he made in opposition to the County Defendants' motion for sanctions. As discussed in detail above, the court has concluded that the County Defendants' motion had merit. They did not file their motion for any frivolous or improper purpose. The court will deny the plaintiff's motion for sanctions.

## VI.    Conclusion

The court **GRANTS** the County Defendants' motion to strike and for sanctions. Dkt. No. 109.

The court **ORDERS** that by the end of the day on **May 8, 2026**, the County Defendants must submit an affidavit and supporting documentation describing all costs and fees they incurred preparing summary judgment materials to defend against the plaintiff's voluntarily dismissed claims.

The court **ORDERS** that Counts 1, 3, 4, 6, 8, 9, 10, 14, 17 and 18 of the fourth amended complaint are **DISMISSED WITH PREJUDICE** in their entirety. The court **ORDERS** that Counts 5 and 15 against defendant Jessica Bergmann only are **DISMISSED WITH PREJUDICE**. The court **ORDERS** that defendant David Beth is **DISMISSED WITH PREJUDICE**.

The court **ORDERS** that the Medical Defendants' motion for summary judgment is **DENIED WITHOUT PREJUDICE**. Dkt. No. 70

The court **ORDERS** that the County Defendants' motion for summary judgment is **DENIED WITHOUT PREJUDICE**. Dkt. No. 81.

The court **ORDERS** that if the defendants wish to file motions for summary judgment on the remaining claims in the fourth amended complaint, they must do so by the end of the day on **June 12, 2026**. The page limits, response and reply deadlines mandated by Civil L.R. 56 will apply. If the defendants choose not to refile their motions, the parties must file a joint status report by the end of the day on June 12, 2026, advising the court of their anticipated next steps.

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 120.

Dated in Milwaukee, Wisconsin this 31st day of March, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

52